PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

IN RE PATENT OF : Thomas D. Sykes

FOR : **PLATFORM FOR COMPUTER INPUT DEVICE**

PATENT NO. : 6,962,311

ISSUED : November 8, 2005

NOTICE OF ALLOWANCE : August 12, 2004

EXAMINER : Daniel P. Stodola

ART UNIT : 3679

CONFIRMATION NO. : 3799

ATTORNEY DOCKET NO. : JFMZ 2 00028-2

Cleveland, Ohio
November 10, 2005

Mail Stop Patent Ext.
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### PETITION UNDER 37 C.F.R. 1.182 OR IN THE ALTERNATIVE UNDER 1.183

Dear Sir:

An Application for Patent Term Adjustment was submitted in connection with Application Serial No. 08/651,431 filed May 22, 1996, which issued as the above-captioned patent. A copy is enclosed as Exhibit A hereto. The application was timely filed, on November 3, 2004, before the payment of the issue fee on November 10, 2004.

This document was received by the U.S. Patent and Trademark Office as is evident from the copy of the receipt acknowledgement postcard appended hereto as Exhibit B.

EXHIBIT
4
ALL-STATE LEGAL®

Thereafter, applicant submitted a Status Request on March 4, 2005, since nothing had been heard from the U.S. Patent and Trademark Office concerning the Petition or the issuance of the patent. A copy of the Status Request (without its enclosures) is enclosed as Exhibit C hereto. A copy of the receipt acknowledgement postcard concerning the status request is enclosed as Exhibit D hereto. As there was no response to applicant's Status Request, a Second Status Request was faxed to the U.S. Patent and Trademark Office on April 21, 2005. A copy thereof (without its enclosures) is enclosed as Exhibit E hereto. Copies of the facsimile confirmation receipts for the Second Status Request are enclosed as Exhibit F hereto.

Since applicant did not receive a response to the Second Status Request, a Third Status Request was filed with the U.S. Patent and Trademark Office on June 17, 2005. A copy thereof (without its enclosures) is enclosed as Exhibit G hereto. The Third Status Request was also received by the U.S. Patent and Trademark Office as is evident from the copy of the receipt acknowledgement postcard concerning this document, which is enclosed as Exhibit H hereto.

Subsequently, on September 22, 2005, the Office of Petitions mailed a Decision On Petition for Patent Term Adjustment. A copy is enclosed as Exhibit I hereto. In the Decision, the Senior Legal Advisor noted that the Petition was dismissed because no fee was received for filing the Petition. As noted in the Decision, applicant states in the Application that the required fee under 37 C.F.R. 1.18(e) was enclosed. However, the Office found no record of payment. Therefore, the request was dismissed for failure to pay. Applicant was advised that if applicant does not have evidence that the fee was

properly paid, he should submit a petition under either 37 C.F.R. 1.182 or 1.183 with the required fee, within two months of patent issuance. Applicant does so herewith.

Applicant's failure to include the required fee under 37 C.F.R. 1.18(e) was an inadvertent oversight and was done without deceptive intent. Enclosed herewith please find a Declaration from Kathleen A. Nimrichter who mailed the Application for Patent Term Adjustment attesting to this fact.

Enclosed herewith please find the missing fee under 37 C.F.R. 1.18(e). Also enclosed herewith please find the necessary fee under 1.17(f) for the instant Petition. Applicant hereby requests that any additional fees which need to be charged or any overpayments which need to be refunded should be applied to Deposit Account No. 06-0308.

Respectfully submitted,

FAY, SHARPE, FAGAN, MINNICH & MCKEE, LLP

_Jay F. Moldovanyi_

Jay F. Moldovanyi, Reg. No. 29,678
1100 Superior Avenue, Seventh Floor
Cleveland, OH 44114
(216) 861-5582

10 Nov 2005
Date

---

### CERTIFICATE OF MAILING

I certify that this Petition Under 37 C.F.R. 1.182 or in the Alternative Under 1.183 and accompanying documents are being

☒ deposited with the United States Postal Service as First Class mail under 37 C.F.R. 1.8, addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date indicated below.

☐ transmitted to facsimile number _____ under 37 C.F.R. 1.8 on the date indicated below.

☐ deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 C.F.R. 1.10 on the date indicated below and is addressed to: Mail Stop Amendment, Commissioner For Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

| Express Mail Label No.: | Signature _Kathleen A. Nimrichter_ |
|---|---|
| Date: November 10, 2005 | Printed Name: Kathleen A. Nimrichter |

N:\JFMZ\200028\2A\KAN0005069V001.doc

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| IN RE PATENT OF | : | Thomas D. Sykes |
| FOR | : | **PLATFORM FOR COMPUTER INPUT DEVICE** |
| PATENT NO. | : | 6,962,311 |
| ISSUED | : | November 8, 2005 |
| NOTICE OF ALLOWANCE | : | August 12, 2004 |
| EXAMINER | : | Daniel P. Stodola |
| ART UNIT | : | 3679 |
| CONFIRMATION NO. | : | 3799 |
| ATTORNEY DOCKET NO. | : | JFMZ 2 00028-2 |

Cleveland, Ohio
November 10, 2005

Mail Stop Patent Ext.
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### DECLARATION OF KATHLEEN A. NIMRICHTER

Dear Sir:

I am the secretary for Jay F. Moldovanyi, who signed the Application for Patent Term Adjustment dated November 3, 2004 in connection with the above-identified patent. The application was filed on that day by Express Mail.

The Application For Patent Term Adjustment states that "the required fee under 37 C.F.R. 1.18(e) is enclosed". Through an inadvertent oversight, no such fee was enclosed with the Application.

The failure to enclose the necessary fee with the Application for Patent Term Adjustment was made without any deceptive intention.

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements may jeopardize the validity of the patent identified above, declares that all statements made of her own knowledge are true and all statements made on information and belief are believed to be true.

Respectfully submitted,

11-10-05

Date

Kathleen A. Nimrichter

---

**CERTIFICATE OF MAILING**

I certify that this Declaration of Kathleen A. Nimrichter and accompanying documents are being
☒ deposited with the United States Postal Service as First Class mail under 37 C.F.R. 1.8, addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on the date indicated below.
☐ transmitted to facsimile number _____ under 37 C.F.R. 1.8 on the date indicated below.
☐ deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 C.F.R. 1.10 on the date indicated below and is addressed to: Mail Stop Amendment, Commissioner For Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

| Express Mail Label No.: | Signature |
|---|---|
| **Date** <br> November 10, 2005 | **Printed Name** <br> Kathleen A. Nimrichter |

N:\JFMZ\200028\2A\KAN0005070V001.doc

- 2 -

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| IN RE APPLICATION OF | : | Thomas D. Sykes |
| FOR | : | **PLATFORM FOR COMPUTER INPUT DEVICE** |
| SERIAL NO. | : | 08/651,431 |
| FILED | : | May 22, 1996 |
| NOTICE OF ALLOWANCE | : | August 12, 2004 |
| EXAMINER | : | Daniel P. Stodola |
| ART UNIT | : | 3679 |
| CONFIRMATION NO. | : | 3799 |
| ATTORNEY DOCKET NO. | : | JFMZ 2 00028-2 |

Cleveland, Ohio
November 3, 2004

Mail Stop Patent Ext.
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### APPLICATION FOR PATENT TERM ADJUSTMENT

Dear Sir:

Pursuant to 35 U.S.C. § 154(b) and (c), and 37 C.F.R. § 1.705, Applicant hereby applies for a patent term adjustment determination by the Director of the USPTO. The required fee under 37 C.F.R. § 1.18(e) is enclosed.

Applicant submits that he is entitled to a patent term of 17 years, running from the date of the issuance of the patent. Alternatively, Applicant submits that he is entitled to a 20-year patent term under 35 U.S.C. § 154(a)(2) that is adjusted and extended by 1798 days. The bases for the adjustments sought are set out below.

# EXHIBIT A

Applicant's original patent application Serial No. 08/180,202 was filed on January 11, 1994 (the parent case).   In the parent case, a restriction was required between a number of patentably distinct species, including Species I drawn to Figures 1-5. That Species was not elected in the Response to the Restriction Requirement dated May 4, 1995 and filed in connection with the parent  case. Instead, Applicant filed the instant "divisional application" on May 22, 1996. The divisional application was directed solely to the subject matter described and claimed in the original application.

Ten claims were eventually allowed in the instant divisional application, but 15 were disallowed. Applicant then challenged these disallowances in an appeal taken to the Board of Patent Appeals and Interferences (BPAI) under a Notice of Appeal filed on June 17, 1998. In that Appeal, Applicant challenged the Examiner's disallowance of the fifteen claims (consisting of five independent claims and ten dependent claims), by way of a brief filed by Applicant, now appearing pro se, on January 16, 1999. On March 15, 1999, the Examiner objected to Applicant's pro se brief, contending that it did not contain certain statements required by 37 C.F.R. § 1.192(c). On April 12, 1999, Applicant, still appearing pro se, filed an amended brief, but pointed out that the Examiner's invocation of 37 C.F.R. § 1.192(c) was erroneous because that provision, by its terms, does not apply to an applicant who appears pro se. The Examiner then filed an Answer on May 24, 1999.

Oral argument was held before the BPAI on October 9, 2001 (after having been rescheduled from its original date of September 13, 2001 – a rescheduling that Applicant had requested because of the disruptions in Washington, D.C., where he was employed, that were occasioned by the terrorist attacks of September 11, 2001).

On October 30, 2001, the BPAI reversed all of the Examiner's objections and remanded the case for the Examiner to "determine whether any of the above-listed claim language was not disclosed in the application as filed" – a reference to the original application.

On remand, the Examiner tested the claim language against the disclosures made in the original application, and issued numerous rejections respecting the claim language on September 30, 2002. That date was 11 months after the date of the Board's decision.

On January 29, 2003, under a one-month extension, Applicant filed Amendment C, further amending claims in this matter. The claims as amended in this document were drafted by Applicant's counsel (who was brought back into the case again after it was remanded by the BPAI) *after* counsel had conducted a telephonic interview with the Examiner. At that interview, counsel and the Examiner agreed that the claims would all be allowed after agreed-upon amendments had been made. The interview was intended to speed along the examination process.

On July 25, 2003, after waiting for almost six months for the Examiner to act on the agreed-upon claims submitted on January 29, 2003, Applicant's counsel filed a Status Inquiry concerning the status of the claims. The Examiner responded on July 30, 2003, by asserting that Applicant had failed to file anything in the response to the Office Action of September 30, 2002 (despite the interview at which claims were agreed to), so the examiner deemed the divisional application abandoned.

Applicant responded on August 5, 2003, via a Response showing the Examiner that Applicant had indeed responded on January 29, 2003 -- thereby establishing that the USPTO had lost or misplaced Applicant's Amendment C dated January 29, 2003.

In the wake of this saving, Applicant's counsel repeatedly inquired by phone about the status of the claim allowances that had been agreed to. Five months later on December 17, 2003, the Examiner issued an Office Action in which he stated that the reply filed on August 8, 2003, which was a replacement copy of the Response originally transmitted via facsimile on January 29, 2003 and was lost at the USPTO is not fully responsive because the top margin of the pages of the Amendment is insufficient so that the first line has lost lettering due to hole punching in Applicant's copy to secure the amendment into the file. Therefore, a new copy of the claims was requested. Applicant filed a Response to that Office Action on December 30, 2003 by submitting a clean copy of the Amendment dated January 29, 2003.

Over the next three months, Applicant's counsel made follow-up phone calls inquiring about the status of the agreed allowance of the instant application. The Examiner responded to none of these phone calls. On March 26, 2004, Applicant submitted a written Status Inquiry regarding the case. No response was received to that Status Inquiry.

On May 14, 2004, Applicant submitted a Second Status Inquiry. The Examiner did not respond.

On July 26, 2004, Applicant submitted a Third Status Inquiry. At this time, Applicant also submitted a copy of the document to John Love, one of the Examiner's supervisors.

Almost eight months after the submission of the clean copy of the Amendment dated January 29, 2003, on August 12, 2004, the USPTO finally issued a Notice of Allowance with respect to the amended claims. Again, the claims had originally been submitted on an agreed basis on January 29, 2003 – thus, a delay of 19 months had been incurred.

The Notice of Allowance stated that the term of Applicant's patent would be 20 years from the 1994 parent application's filing date with an 1139-day extension for time spent before the BPAI. The Notice of Allowance allowed no extension for the USPTO's mishandling and delay of Applicant's case in the wake of the remand from the BPAI. In that Applicant's original application was filed on January 11, 1994, it appears to be the position of the USPTO that Applicant's patent term should expire in late February 2017. Thus, Applicant is being allowed only about 12 years of patent coverage (assuming that issuance occurs within the next few months) from the date of issuance.

Applicant's patent is not subject to a terminal disclaimer. There were no circumstances during the prosecution of the patent that constitute a failure to engage in reasonable efforts to conclude processing or examination as set forth in 37 C.F.R. § 1.704.

Moreover, the only reason the term extension legislation at issue herein even comes into play is because of the restriction requirement promulgated by the U.S. Patent and Trademark Office. Otherwise, there would be no issue whether Applicant is entitled to a term of 17 years from the issue date of this patent.

## LAW AND ARGUMENT

### A. Applicant Is Entitled to a 17-Year Term from the Date of the Issuance of the Patent

Important legislation addressing the terms of utility patents was enacted in 1994 by §§ 531 through 534 of the Uruguay Round Agreements Act, Pub. L. 103-465, 103rd Cong., 2nd Sess., 108 Stat. 4809 ("Uruguay Agreements legislation"). Section 534 set out the effective date of the patent provisions of the legislation, providing as follows (italics added):

### SEC. 534. EFFECTIVE DATES AND APPLICATION.

(a) IN GENERAL. -- Subject to subsection (b), the amendments made by this subtitle [concerning patents] take effect on the date that is one year after the date on which the WTO Agreement enters into force with respect to the United States.

(b) PATENT APPLICATIONS. --

   (1) IN GENERAL. -- Subject to paragraph (2), the amendments made by section 532 take effect on the date that is 6 months after the date of the enactment of this Act and shall apply to all patent applications filed in the United States on or after the effective date.

   (2) SECTION 154(a)(1). -- Section 154(a)(1) of title 35, United States Code, as amended by section 532(a)(1) of this Act, shall take effect on the effective date described in subsection (a).

   (3) EARLIEST FILING. -- The term of a patent granted on an application that is filed on or after the effective date described in subsection (a) and that contains a specific reference to an earlier application filed under the provisions of section 120, 121, or 365(c) of title 35, United States Code, shall be measured from the filing date of the earliest filed application.

Because Applicant's divisional application was filed on May 22, 1996, § 534(b)(1) makes the Uruguay Agreements legislation applicable to Applicant's proceeding.[1] That conclusion, however, in no way suggests that that Applicant's patent is to have a 20-year

---

[1] Section 534(b)(3) has no control over whether Applicant is entitled to a 17-year term as opposed to a 20-year term. This transition-rule provision merely addresses *when* the clock for a 20-year term begins to run under the transition rules -- *how* a 20-year term is measured or calculated -- not *whether* a 20-year term is applicable under the transition rules.

term, as determined by the U.S. PTO. Instead, as was shall be the case, the Agreements legislation provides for Applicant's patent to have a 17-year term.

Under 35 U.S.C. § 154(c)(1), entitled *"Continuation . . . Determination"* (emphasis added) and enacted by § 532(a) of the Uruguay Agreements legislation, an applicant whose patent application is governed by the Uruguay Agreements legislation is entitled to a patent term that is *the greater of* the 20-year term as provided in § 154(a) or 17 years from the "grant" (issuance) of the patent, in the case of a patent "that is in force on or *that results from an application* filed before the date that is 6 months after the date of the enactment of the Uruguay Round Agreements Act." (Emphasis added.)

In terms of statutory interpretation, the crucial issue is whether Applicant's patent "results from" Applicant's original application filed on January 11, 1994 (a date that is almost a year before the Uruguay Agreements legislation was enacted (in December 1994)). If Applicant's patent "results from" that original application within the meaning of 35 U.S.C. § 154(c)(1), as Applicant contends, Applicant is entitled to a 17-year term.

The patent that has been allowed is intended to provide protection for the invention disclosed in the Application filed on January 11, 1994 – and no other invention. The scope of the claims allowed was determined by the disclosures made in that original application – and no other application. The divisional application filed on May 22, 1996 – entitled "Preliminary Amendment for Divisional Application" -- contains no disclosures of any new invention; it merely references the specification (disclosure) in the original application. In fact, because the divisional application was directed solely at the invention described and claimed in the original application as filed, Applicant was not required to sign or execute the divisional application. *See* 35 U.S.C. § 121.

The BPAI's directive in this matter on remand underscores that a patent results from "results from" the disclosures made *in the original application.* In its opinion issued on October 30, 2001, the BPAI directed the examiner to "determine whether any of the above-listed claim language was not disclosed in the application as filed" – a reference to the original application -- and none other.

Of course, even a cursory review of the patent that ultimately issues in this proceeding will confirm that that patent results from the original application: the patent itself will recite the specification and drawings that were presented in the original application – and none other.

Expressed in the familiar terms of a bedrock doctrine of patent law, Applicant's patent "results from" his original application because disclosure is the *quid pro quo* for the grant of the patent. "The *quid pro quo* which supports the patent grant is the requirement of a full *disclosure* regarding the invention; indeed the very purpose of the patent system is to encourage disclosures." *A.F. Stoddard & Co. Ltd. v. Dann, 564 F.2d 556, 563 (D.C. Cir. 1977) (Markey, J., sitting by designation). University of Rochester v. G.D. Searle & Co., Inc.,* 358 F.3d 916, 922 (Fed. Cir. 2004) ("The 'written description' requirement serves a teaching function, as a 'quid pro quo' in which the public is given 'meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time'"). *See also Universal Oil Prod. Co. v. Globe Oil. & Refining Co.,* 322 U.S. 471, 484 (1944) (noting that disclosure is the *quid pro quo* for the monopoly provided by a patent).. Applicant's patent was given by the sovereign *in exchange* for the disclosure Applicant made *in the original application.* Accordingly, Applicant's patent resulted from the original application.

application, for it did nothing beyond refer to the original application and set out proposed claims. There is no reason for proposed claims in Applicant's divisional to be given any effect in establishing the patent term, especially given that the divisional's claims were later amended extensively, both before and after the trip to the BPAI. What will be set forth in the patent that issues here is the specification from the original patent application – not the claims set out in the divisional application. Yet the USPTO's position is that the patent that will issue "results from" the divisional application for purposes of the transition rule provided in § 154(c)(1). At the same time, the original application is given controlling effect with respect to the measurement of the 20-year term under §§154(a)(2) and 154(c)(1), as discussed below. The twists in this reasoning are stunning and untenable.

The USPTO conflates a patent that "results from" an application with a patent that is "granted on" (or "issued on") an application. Section 154(c)(1) frames the crucial issue in the instant proceeding in terms of whether Applicant's patent "results from" his original application, on one hand, or a continuation or divisional application, on the other. The *quid pro quo* principle, and the fact that an inventor who invents and makes disclosure under a statutory scheme that promised a 17-year term, provided a strong incentive for Congress to frame the legal standard as it did. Had Congress intended what the USPTO contends, Congress could easily have used the phrase "granted on an application" instead of the phrase "that results from an application."

Moreover, it would have been simple for Congress to dictate the result for which the USPTO now contends, had Congress intended that. Congress could have simply enacted § 534(b)(1) of the Uruguay Agreements legislation -- and stopped there. That legislation provides that "the amendments made by section 532 take effect on [May 29, 1995] and shall

- 9 -

apply to *all* patent applications *filed in the United States on or after the effective date of the*
legislation. (Emphasis added.) This short sentence, when read in conjunction with §
154(a)(2), would have made a 20-year term applicable to Applicant's divisional application
(the result for which the USPTO contends); no other statutory provision was necessary. But
Congress did not stop with § 534(b)(1). Instead, it also enacted §154(c)(1), which gives a
patentee the greater of a 20-year term or a 17-year term for a patent that "results from" an
application filed before June 8, 1995.

The USPTO's view thus renders §154(c)(1) superfluous. A statutory interpretation
that renders a part of the statute superfluous is disfavored, however. *See, e.g., Duncan v.
Walker,* 533 U.S. 167, 174-175 (2001) (observing that this is a "cardinal rule" of statutory
construction). The USPTO is obliged to interpret §154(c)(1) in a way that gives it effect, if
possible. To do that, the USPTO must interpret the provision to provide Applicant with a 17-
year or a 20-year term, whichever is greater.

Although it is not a transition rule, § 154(a)(2) provides additional support for the
Applicant's position. Enacted as part of the Uruguay Agreements legislation, § 154(a)(2)
provides that the date on which the original application was filed is to control in measuring
the 20-year term in situations in which a divisional or continuation application was filed.
Section 154(a)(2) views the filing date of the original application as controlling for purposes
of measuring the 20-year term (when applicable) – which strongly implies that patent
coverage in a situation involving a divisional application does not "result[] from" the
divisional application. The divisional application is viewed, by this statute, as irrelevant to
the term of the coverage – a view that is consistent with the bedrock principle, discussed
above, that patent coverage is a *quid pro quo* for disclosure (which is made in the original
application).

- 10 -

As statutes addressing the same subject-matter and having been enacted at the same time, §§ 154(c)(1) and 154(a)(2) must be construed *in pari materia*. It is inconceivable that Congress in the same breath provided that an original application's filing date should have controlling effect for purposes of measuring the patent term under 35 U.S.C. § 154(a)(2) but should be irrelevant for purposes of determining whether an applicant whose disclosure were made entirely before the effective date of the Uruguay Agreements legislation should qualify for a 17-year term under the transition rule.

The transition rule set out in § 154(c)(1) is part of a scheme that is plainly intended to be *broadly* remedial. The great breadth of the remedial intent is illustrated by the fact that an inventor making an invention, say, four months *after* the passage of the Uruguay Agreements (say, in early April 1995) and who files a patent application 45 days later (say, in mid-May 1995) is indisputably entitled, under §154(c)(1), to the longer of a 17-year term or a 20-year term. A powerful Congressional purpose to protect inventors – including some inventors who made and disclosed their inventions *after* the enactment of the Uruguay Agreements legislation and *after* Applicant made and disclosed his invention -- is obvious and indisputable. The broad remedial purpose is also shown by § 154(c)(1)'s directive that patents addressed by the provision are to have a patent term that is "the greater of" a 20-year term (running from the application) or a 17-year term (running from issuance). As a remedial provision, § 154(c)(1) must be liberally construed in favor of Applicant. *See, e.g., State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 533 (1967) (remedial statutes are to be liberally construed); *SEC v. C. M. Joiner Leasing Corp.,* 320 U.S. 344, 353 (1943) (same); *Fleisher Engineering & Construction Co. v. United States,* 311 U.S. 15, 18 (1940) (same). The phrase "results from," found in § 154(c)(1), may not be given the narrow, illogical, and unfair construction that the Examiner presumes.

In the Examiner's view, Applicant, who made his invention in January 1994 and made his

original application in January 1994, making at that time all of the disclosures that are the

quid pro quo for the issuance of his patent, is not permitted by the USPTO to have a 17-year

term -- despite the fact that the only reason applicant was forced to file a divisional

application was a restriction requirement promulgated by the USPTO. The Examiner's

position is tendentious, unfair to inventors, and it twists the relevant statutes beyond

recognition. The position also denies Applicant rights that are of Constitutional dimension.

*See A.F. Stoddard & Co. Ltd. v. Dann,* 564 F.2d at 563-564.

Further support for Applicant's position, if any were needed, is suggested by 35

U.S.C. § 121. It provides that an applicant filing a divisional application is entitled to the

benefit of the filing date of the original application. There is no dispute that Applicant's

divisional application is entitled to the benefit of the filing date of the original application

filed on January 11, 1994. For applicant to have the benefit of the original filing date, as

stipulated by § 121, Applicant must be given the benefit of a 17-year term when that term is

greater than a 20-year term would be. The result that follows from a natural reading of § 121

should not be changed unless there is a plain indication to the contrary from Congress.

An additional, powerful reason for broadly construing a transition rule respecting a

patent term is that the rule, if construed to reduce the patent coverage that would have been

available to Applicant under the regime in place before the enactment of the Uruguay

Agreements legislation, would deprive Applicant of rights that are of Constitutional

dimension. Once Applicant had made his invention *and* made disclosure under the 17-year

regime (so as to avail himself of the promised *quid pro quo* – 17 years of patent coverage),

any statutory provision that is interpreted to give Applicant less patent coverage than the

coverage statutorily promised when he made and disclosed the invention is Constitutionally

- 12 -

dubious -- not only because of the invention provisions of the Constitution but also because of the Constitution's prohibition against the taking of property without just compensation.

It is well established that legislation should not be interpreted in a way that raises serious Constitutional issues respecting the validity of the legislation. Section 154(c)(1) should be interpreted in the way that Applicant suggests, so as to avoid the serious Constitutional issues that are raised by the USPTO's interpretation.

Finally, Applicant's interpretation of 35 U.S.C. § 154(c)(1) is supported by the harsh result that 37 C.F.R. §§ 1.701 and 1.702(f) purport to dictate if Applicant's analysis is not correct. In the patent-term provisions of the Uruguay Agreements legislation, Congress sought to move the U.S. patent system away from a 17-year term running from the patent issue date, toward a 20-year term running from the date of the filing of the application and adjustments for delays occurring in the process of issuing the patent. Congress did not intend to reduce the coverage received by the average inventor under the new scheme, once it was completely in place, to be below the 17-year term provided by existing law. Under the new scheme, Congress intended that the 20-year term be measured from the date of application, with adjustments for delays identified by 35 U.S.C. § 154(b) as enacted in Uruguay Agreements legislation, should approximate the 17-year term that was previously available.

Thus, it is implicit in the Uruguay Agreements legislation that the USPTO examination process respecting a patent application, *including any continuation or divisional applications,* should take only *three years,* exclusive of the adjustments found in 35 U.S.C. § 154(b) as enacted by Uruguay Agreements legislation. Here, however, that process has taken over *ten years* – more than triple the intended period. Thus, if the treatment suggested by 37 C.F.R. §§ 1.701 and 1.702(f) is correct, the inequity of that treatment suggests that Congress intended that inventions made and disclosed before six months after the passage of the

legislation should be allowed a greater-than 17-year term or a 20-year term, regardless
of whether the patent is granted on a divisional or continuation application. Congress could
not have intended to treat inventors in Applicant's position, who made and disclosed
inventions long before the passage of the Uruguay Agreements legislation, with the
remarkable harshness that the USPTO proposes in the instant case.[2]

Thus, Applicant's reading of 35 U.S.C. § 154(c)(1) is supported by its language and
by the language of surrounding provisions enacted at the same time; by § 121; by policy and
equity; by Constitutional considerations; and by cardinal rules of statutory construction.
Accordingly, Applicant is entitled to a 17-year term running from the date of issuance.

**B. If Applicant Is Not Entitled to a 17-Year Term Running from the Date of Issuance,
Applicant Is, in the Alternative, Entitled to Additional Adjustments to the 20-Year
Term for Delays Occurring Before the Examiner.**

1. The Effective Date of the Patent Term Guarantee Act of 1999. Applicant has
shown above that he is entitled to a 17-year term, running from the date on which coverage is
granted. But if it somehow is determined that Applicant is entitled only to the 20-year term,
the adjustments to that term that were made by the USPTO in the Determination of Patent
Term Extension (PTOL-85) were insufficient. Under the USPTO's analysis, none of the
extraordinary delay[3] occurring during the examination process was permitted to extend the
term of Applicant's patent, leaving Applicant with a patent term that extends for only about

---

[2] The *Uruguay Round Agreements: Statement of Administrative Action*, H.R. Doc. 103-316, at 1002-1004, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4295-4297, does not aid the USPTO. The Statement mentions the transition rule in a single sentence that certainly does not support the USPTO's position. Notably, the Statement says nothing suggesting an intent to deprive inventors who made and disclosed an invention before the enactment of the Uruguay Agreements legislation of patent coverage for inventions previously made and disclosed. Surely action of that consequence – an action with Constitutional implications -- would have been discussed in considerable detail.

[3] Applicant will set out the most significant features of the examination process. Applicant requests the Director to examine the entire procedural history of this extraordinary matter, and to make it part of the record.

12 years from the date of (an... patent) issuance. That view cannot be correct, and it is not equitable.

The USPTO's view seems to be that the only delay that may be taken into account to extend the 20-year term is the delay that is explicitly described in 35 U.S.C. § 154(b) as it existed before amendment by the Patent Term Guarantee Act of 1999, Pub. L. 106-113, 106th Cong., 1st Sess., 113 Stat. 1501A-557 ("Term Guarantee legislation"). In particular, the USPTO seems to hold the view that the only extensions of term that may be granted to Applicant are those found in 37 C.F.R. § 1.701, which sets out the USPTO's interpretation of 35 U.S.C. § 154(b) as it existed before amendment by the Term Guarantee legislation. Under the USPTO's view, the only adjustments that can be made to Applicant's 20-year term are adjustments for delays attributable to appellate review by the BPAI.

The USPTO's view is incorrect. The correct view (if Applicant is not entitled to a 17-year term) is that Applicant is entitled not only to the extensions for delays attributable to appellate review as provided by former 35 U.S.C. § 154(b)(2) and by current 35 U.S.C. § 154(b)(1)(C), but also to the extensions provided for the violation of the "[g]uarantee of prompt Patent and Trademark Office responses," set out in 35 U.S.C. § 154(b)(1)(A) as amended by § 4402 of the Term Guarantee legislation.

When the guarantee of prompt responses, conferred by the Term Guarantee legislation, is applied to Applicant's situation, it is clear that Applicant is entitled to a term extension of 1798 days, as set out below.

There is no merit to the USPTO's original view that the guarantee of prompt responses (found in current 35 U.S.C. § 154(b)(1)(A)) is inapplicable to Applicant's patent because his application was filed before May 29, 2000. *See* 37 C.F.R. §§ 1.701 and 1.702(f)

(purporting to limit the applicability of the statutory guarantee of prompt responses to patent applications filed on or after May 29, 2000).

First, the Term Guarantee legislation is obviously remedial. The guarantee of prompt responses, set out in 35 U.S.C. § 154(b)(1)(A), was designed to remedy the unfairness of reducing the effective term of an Applicant's patent by unwarranted delays by the USPTO. Statutes that are remedial are to be liberally construed to achieve their remedial purposes. *See, e.g., State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. at 533 (remedial statutes are to be liberally construed in favor of the beneficiary); *SEC v. C. M. Joiner Leasing Corp.,* 320 U.S. at 353 (same); *Fleisher Engineering & Construction Co. v. United States,* 311 U.S. at 18 (same). This is especially true for statutes that have implications for an applicant's Constitutional rights. Applicant's case provides a perfect illustration of the type of egregious delays that were targeted by the statutory guarantee of prompt responses.

A careful reading of the effective date provision governing § 4402 of the Term Guarantee legislation provides powerful support for Applicant's view that he is entitled to the benefit of the statutory guarantee of prompt responses as well as to extensions for the delay associated with Applicant's appeal to the BPAI. In pertinent part, that provision states as follows (italics added):

Sec. 4405. **EFFECTIVE DATE.**

(a) AMENDMENTS MADE BY SECTIONS 4402 AND 4404.— *The amendments made by sections 4402 and 4404 shall take effect on the date that is 6 months after the date of the enactment of this Act and,* except for a design patent application filed under chapter 16 of title 35, United States Code, shall apply to any application filed on or after the date that is 6 months after the date of the enactment of this Act.

The interpretation of § 4405(a) to which the USPTO and 37 C.F.R. §§ 1.701 and 1.702(f) adhere completely ignores the first clause of § 4405(a) – all of the italicized words of the statute that appear before the word "and." This construction of § 4405(a) cannot be correct because it violates two fundamental tenets of statutory construction. First, a statutory interpretation that renders a part of the statute superfluous is disfavored. *See, e.g., Duncan v. Walker,* 533 U.S. 174-175 (observing that this is a "cardinal rule" of statutory construction). Second, statutes that have a remedial purpose are to be liberally construed in favor of the intended beneficiaries.

The interpretation implicitly given to § 4405(a) by 37 C.F.R. §§ 1.701 and 1.702(f) is not entitled to any deference at all. Sections 1.701 and 1.702(f) are invalid because they establish substantive rules. The rules set out in these regulations could hardly be more substantive – they purport to control the term of an applicant's patent coverage, the scope of the monopoly. The USPTO, however, has no power to establish substantive regulations; its rulemaking power is limited to regulations, "not inconsistent with law," that are directed to "the conduct of proceedings in the [USPTO]." 35 U.S.C. § 2(b)(2)(A). Of course, this must be the law because the Constitution gives *Congress,* not the Executive, the power to establish the scope of the patent monopoly, and any effort by Congress to delegate that authority to the Executive would be of very dubious legality. The most that the USPTO can argue is that its regulations should be entitled to such minimal respect as arises from the thoroughness of its consideration of the statute and the validity of its reasoning. *See Merck & Co. et al. v. Kessler,* 80 F.3d 1543, 1549-1550 (Fed. Cir. 1996). But as we shall see, these regulations reflect consideration that was plainly insufficient and reasoning that is plainly incorrect, so the Constitutional point is mooted.

- 17 -

sections (c) and (f) take the simplistic view that the statutory guarantee of

prompt responses applies only to applications filed on or after the date that is 6 months after

the date of the enactment of the Term Guarantee Act legislation (that is, any application filed

on or after May 29, 2000). But § 4405(a) does not say that. Instead, it says that the Act

"shall take effect on [May 29, 2000] *and . . .* shall apply to any application filed on or after

[May 29, 2000]." (Emphasis added.)

Had Congress intended that the Act should have no effect upon applications filed

before May 29, 2000, Congress would have said simply that it "shall apply to any application

filed on or after [May 29, 2000]" – and stopped there. But Congress did not do that. Instead,

Congress *also* provided, in the first half of the provision, that the Act "shall take effect on

[May 29, 2000]." The interpretation of § 4405(a) offered by these regulations and the

examiner thus renders the first half of § 4405(a) – all of the language before the word "and" -

- superfluous.

Applicant reads § 4405(a) in a very different way – a way that gives effect to *all* of

the words of the statute. In Applicant's view, the statute provides for all of the various

guarantees and adjustments provided by the Term Guarantee legislation to be effective upon

the a date that was six months after enactment -- except for those guarantees and adjustments

that focus upon the pendency of the application (i.e., upon the lapse of time after its filing

date). Applicant's reading thus gives effect to *both elements* of § 4405 -- and avoids treating

the first half of the statute as surplusage.

Applicant's reading makes sense when viewed against the structure of the Term

Guarantee legislation. Section 4402(a) of the legislation consists of three elements that

provides protection to applicants.[4] Some of the elements focus upon the days that are measured from the filing date of the application. For example, 35 U.S.C. § 154(b)(1)(A)(i) sets out a 14-month deadline that is measured from the filing date of the application. Similarly, the entire guarantee of no more than a three-year application pendency is keyed directly to the filing date of the application.

Most of delays addressed by the Term Guarantee legislation, however, are not measured from the filing date of an application. Thus, the guarantees set out in § 154(b)(1)(A) (ii), (iii), and (iv), are not keyed to the filing date of the application. Likewise, none of the guarantees or adjustments set out in § 154(b)(1)(C)(i), (ii), and (iii) is keyed to the filing date of the application.

The largest new guarantee and adjustment provided by the Term Guarantee legislation was found in three-year "pendency guarantee" respecting the time within which the USPTO must issue patent (set out in 35 U.S.C. § 154(b)(1)(B) as amended). Presumably, Congress recognized that the USPTO would have to make significant operational changes to enable it to routinely meet the three-year pendency guarantee, so it decided to make that guarantee purely prospective by providing that the legislation was effective with respect to patent applications filed on or after six months from the date of the enactment of the new legislation. (Another element of the new legislation that is keyed to the filing date of the application is found in 35 U.S.C. § 154(b)(1)(A)(i).)

---

[4] The first element is the "[g]uarantee of prompt Patent and Trademark Office responses," found in current § 154(b)(1)(A) (as enacted by § 4402(a)). The second element is the "[g]uarantee of no more than 3-year application pendency" found in current § 154(b)(1)(B) (as enacted by § 4402(a)). The third element consists of a "[g]uarantee or adjustment for delays due to interferences, secrecy orders, and appeals," found in current § 154(b)(1)(C) (as enacted by § 4402(a))

By contrast, other guarantees provided by new legislation did not appear likely to have a significant impact on the USPTO's operations. The guarantees and adjustments found in 35 U.S.C. § 154(b)(1)(C) were found largely, if not wholly, in prior law, so the USPTO was well prepared to meet the requirements of these guarantees. Similarly, the guarantees of prompt responses, found in 35 U.S.C. § 154(b)(1)(A), would not be expected to require large changes in the USPTO's operations (except the element requiring a response to the application within 14 months), as those guarantees merely codified standards that should have been practiced by the USPTO all along. These guarantees were not keyed to the filing date of the application.

Thus, there was a good reason for Congress to distinguish, in § 4405(a), between the guarantees and adjustments in the Term Guarantee legislation that were keyed to the *filing date of the application* -- and those that were not. It is this distinction that § 4405(a) appears to recognize.

The interpretation of § 4405(a) adhered to by the examiner and set out in 37 C.F.R. §§ 1.701 and 1.702(f) renders superfluous a large part of the language § 4405(a), even though there was good reason for Congress express itself in the way it did. As noted above, it is a *cardinal rule* of statutory construction that statutes are to be interpreted in a way that does not render any of their words superfluous. *See, e.g., Duncan v. Walker,* 533 U.S. at 174-175.

Just as important, there was good reason for Congress <u>not</u> to have written § 4405(a) in the way that the examiner and 37 C.F.R. §§ 1.701 and 1.702(f) appear to interpret it. The delays experienced by Applicant, especially in the period following the remand from the

BPAI, are egregious. It is inconceivable that Congress intended that applicants in these circumstances should not have the benefit of this remedial legislation. As noted, remedial legislation is to be interpreted liberally in favor of the beneficiaries of the legislation. *See, e.g., State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 533 (1967) (remedial statutes are to be liberally construed in favor of beneficiaries); *SEC v. C. M. Joiner Leasing Corp.,* 320 U.S. 344, 353 (1943) (same); *Fleisher Engineering & Construction Co. v. United States,* 311 U.S. 15, 18 (1940) (same).

Accordingly, the Applicant is entitled to the benefit of all guarantees and adjustments provided by 35 U.S.C. § 154(b) that are not measured from the filing date of the application. In that the Examiner failed to allow Applicant the benefit of these guarantees, the Examiner's computation of the term extension is faulty.[6]

2. The Proper Computation of a 20-Year Term. The proper computation of the adjustments to the 20-year term to which Applicant is entitled (in the event it is determined that Applicant is not entitled to the 17-year term requested above) is set out below.

37 C.F.R. § 1.703(a) sets out a number of the factors to be considered in determining the period of adjustment under 1.702(a). Like 37 C.F.R. § 1.701(c)(3), 37 C.F.R. § 1.703(b)(4), sets forth the calculation that the term extension should be the number of days in the period beginning on the date on which the Notice of Appeal to the Board of Patent Appeals and Interferences was filed and ending on the date of the last decision by the Board

---

[5]  The egregious pattern of delays experienced by Applicant at the hands of the USPTO also constituted a violation of Applicant's constitutional rights to receive patent protection for his inventions. *See A.F. Stoddard & Co. Ltd. v. Dann,* 564 F.2d at 563-564.

[6]  The Examiner appears to have allowed the days that are due under former 35 U.S.C. § 154(b)(2) and current 35 U.S.C. § 154(b)(1)(C) – the provisions addressing delay due to appellate review by the BPAI or a federal court. Applicant does not dispute that it is entitled to 1139 days for review by the BPAI, but contends that he is entitled, in addition, to 659 days for delay occurring before the Examiner.

of Patent Appeals and Interferences or a Federal court. That amount, correctly calculated in the Determination of Patent Term Extension under 35 U.S.C. 154(b) is 1,139 days.

In addition to the foregoing, there were, as mentioned above, significant delays in the prosecution of this proceeding, through no fault of the applicant. After the Board reversed the rejections on October 30, 2001, it took the USPTO eleven months, until September 30, 2002, to issue the next Office Action. In this connection, 37 C.F.R. 1.703(a)(5) states that the patent term is adjusted for any number of days that are larger than a date that is four months after the date of the final decision by the Board of Patent Appeals and Interferences and ending on the date of mailing of an action under 35 U.S.C. § 132. According to Applicant's calculation, that number of days is 215

In response to the Office Action dated September 30, 2002, Applicant filed an Amendment on January 29, 2003. 37 C.F.R. § 1.703(a)(3) states that the patent term is to be extended by the number of days in the period beginning on the day after a date that is four months after the date of a reply in compliance with § 1.113(c) and ending on the date of the mailing of a Notice of Allowance. In the present circumstances, a Notice of Allowance should have issued, and ultimately did issue, from the Amendment dated January 29, 2003. Unfortunately, it took almost nineteen months. Excluding four months from that time span, by Applicant's calculation, is an additional 444 days.

Thus, Applicant's calculation leads to 1,139 days, plus 215 days, plus 444 days, totaling 1,798 days. A revision of the determination of patent term extension from 1,139 days to 1,798 days is thus respectfully requested (in the event that Applicant is somehow is ultimately determined not to be entitled to a 17-year term).

CONCLUSION

Applicant is entitled to a 17-year term, running from the date of issuance.  In the alternative, Applicant is entitled to a 20-year term, running from the date of first filing of this application, that is extended by a total of 1798 days, as set out above.

Respectfully submitted,

FAY, SHARPE, FAGAN,
MINNICH & MCKEE, LLP

Jay F. Moldovanyi
Reg. No. 29,678
1100 Superior Avenue
Seventh Floor
Cleveland, OH  44114
(216) 861-5582

"EXPRESS MAIL" Mailing Label Number  EV 471023323

Date of Deposit   November 3, 2004
I hereby certify that this paper or fee is being deposited with the United
States Postal Service "Express Mail Post Office to Addressee" service
under 37 CFR 1.10 on the date indicated above and is addressed to the
Mail Stop Patent Ext., Commissioner for Patents, P.O. Box  1450,
Alexandria, VA  22313-1450.

Kathleen A. Nimrichter

L:\JFM\DATA\WORD\Patent-Extension-Memo.doc
L:\JFM\DATA\WORD\ JFM3-033-2705 Revisions Nov 1st.doc
(KANOOD 5068)

NO. *1309*

Inventor/Applicant: *Thomas D. Signes*    Pat. No. _____
Ser. No. *08/651,431*
Title: *Solution for Compact Sorbent Bed* _____ Filed *05/29/96*
Attorney Docket No. *17183_JAKOW-5* Initials *14 mikan* ____ Date *11-3-04*

☐ **PATENT/DESIGN APPLICATION**
_____ New Application Transmittal
_____ Cont. _____ Div. _____ C-I-P _____ Provisional
_____ CPA Transmittal _____ PCT Request
_____ Declaration/Power of Atty.
_____ pgs. Specification
_____ pgs. Claims
_____ _____ total _____ independent
_____ pgs. Abstract
_____ Sheet(s) of drawing(s)  Figs. _____
_____ _____ formal _____ informal
_____ Preliminary Amendment
_____ Request and certification under
       35 U.S.C. 122(b)(2)(B)(i)
_____ Claim for Right of Priority
_____ Appln. _____
_____ Filed _____
_____ Priority document(s)
_____ Small Entity Statement(s)
_____ Final Fee _____ Publication Fee
_____ Response to missing parts
☐ **ASSIGNMENT**
_____ Transmittal _____ Confirmatory
☐ **INFORMATION DISCLOSURE STATEMENT**
_____ PTO Form 1449 _____ Refs.

☐ AMENDMENT (Due _____)
_____ Transmittal(s)
_____ Extension of Time (For _____ month(s))
☐ NOTICE OF APPEAL
☐ PCT DEMAND (Due _____)
☐ CHECK(S) in Amount $ _____
☑ OTHER *application for*
   *patent from application*

**RECEIPT IS HEREBY ACKNOWLEDGED**

NOV 0 3 2004

"DOCKETED"

# EXHIBIT B

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| IN RE APPLICATION OF | : | Thomas D. Sykes |
| FOR | : | **PLATFORM FOR COMPUTER INPUT DEVICE** |
| SERIAL NO. | : | 08/651,431 |
| FILED | : | May 22, 1996 |
| CONFIRMATION NO. | : | 3679 |
| EXAMINER | : | D. Stodola |
| ART UNIT | : | 3505 |
| NOTICE OF ALLOWANCE | : | August 12, 2004 |
| ATTORNEY DOCKET NO. | : | **JFMZ 2 00028-2** |

### STATUS REQUEST

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

Applicant submitted the issue fee concerning this case by Express Mail on November 10, 2004. Enclosed herewith as Exhibit A, please find a copy of the receipt acknowledgement postcard from the U.S. Patent and Trademark Office acknowledging receipt of the issue fee payment.

Also enclosed with the payment of the issue fee was a submission of the formal drawings, Figures 1-37. This is also acknowledged in the receipt acknowledgement postcard shown in Exhibit A.

CERTIFICATE OF FACSIMILE TRANSMISSION AND FIRST CLASS MAIL

I hereby certify that this Status Request is being forwarded to Examiner Stodola at the U.S. Patent and Trademark Office via facsimile (1-703-305-7687) and first class mail and to Director John Love at the U.S. Patent and Trademark Office via facsimile (1-703-872-9306) and first class mail on this 4th day of March 2005.

*Kathleen A. Nimrichter*
Kathleen A. Nimrichter

# EXHIBIT C

Moreover, applicant further submitted an application for patent term adjustment on November 3, 2004. This document was also received by the U.S. Patent and Trademark Office, as acknowledged in via a receipt acknowledgment postcard. A copy of this is enclosed as Exhibit B hereto.

It has been nearly four months since the payment of the issue fee and over four months since the submission of the application for patent term adjustment. Therefore, applicant inquires as to the status of this application with the U.S. Patent and Trademark Office.

The favor of a reply is respectfully requested.

Respectfully submitted,

FAY, SHARPE, FAGAN, MINNICH & McKEE, LLP

4 Mar 2005

_____
Date

_____
Jay F. Moldovanyi, Reg. No. 29,678
1100 Superior Avenue, Seventh Floor
Cleveland, OH 44114-2518
216/861-5582

N:\JFMZ\200028\2A\KAN0003549V001.doc

NO. _1384_

Pat. No. _____
Ser. No. _____
Filed _____
Date _____

Inventor/Applicant: _____
Title: _____ Initials _____
Attorney Docket No. _____

☐ AMENDMENT (Due _____
    Transmittal(s)
    Extension of Time (For _____ month(s))

☐ **PATENT/DESIGN APPLICATION**
    ___ New Application Transmittal
    ___ Cont. _____ Div. _____ C-I-P _____ Provisional
    ___ CPA Transmittal _____ PCT Request
    ___ Declaration/Power of Atty.
    ___ pgs. Specification
    ___ pgs. Claims
    ___ ____ total ____ independent
    ___ pgs. Abstract
    ___ Sheet(s) of drawing(s) Figs. ____
    ___ ____ formal ____ informal
    ___ Preliminary Amendment
    ___ Request and certification under
        35 U.S.C. 122(b)(2)(B)(i)
    ___ Claim for Right of Priority
    ___ Appln. _____
    ___ Filed _____
    ___ Priority document(s)
    ___ Small Entity Statement(s)
    ___ Final Fee ____ Publication Fee
    ___ Response to missing parts

☐ NOTICE OF APPEAL
☐ PCT DEMAND (Due _____
☐ CHECK(S) in Amount $ _____

☐ OTHER _____

RECEIPT IS HEREBY ACKNOWLEDGED

DOCKETED        MAR 1 4 2005

☐ **ASSIGNMENT**
    ___ Transmittal ____ Confirmatory
☐ **INFORMATION DISCLOSURE STATEMENT**
    ___ PTO Form 1449 ____ Refs.

# EXHIBIT D

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| IN RE APPLICATION OF | : | Thomas D. Sykes |
| FOR | : | **PLATFORM FOR COMPUTER INPUT DEVICE** |
| SERIAL NO. | : | 08/651,431 |
| FILED | : | May 22, 1996 |
| CONFIRMATION NO. | : | 3679 |
| EXAMINER | : | D. Stodola |
| ART UNIT | : | 3505 |
| NOTICE OF ALLOWANCE | : | August 12, 2004 |
| ATTORNEY DOCKET NO. | : | **JFMZ 2 00028-2** |

### STATUS REQUEST

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

As Status Request concerning the above-identified patent application was filed on March 4, 2005.  That document was received by the U.S. Patent and Trademark Office as is evident from the receipt acknowledgement post card thereof, enclosed as Exhibit A.  This application was submitted more than 10 years ago.  It has been over 5 months since the payment of the issue fee and over 5 months since the submission of the application for patent term adjustment.  Therefore, applicant inquires as to the status of this application with the U.S. Patent and Trademark Office.

CERTIFICATE OF FACSIMILE TRANSMISSION

I hereby certify that this Status Request is being forwarded to Examiner Stodola at the U.S. Patent and Trademark Office via facsimile (1-703-305-7687) and first class mail and to Director John Love at the U.S. Patent and Trademark Office via facsimile (1-703-872-9306) and first class mail on this 21st day of April 2005

_Kathleen A. Nimrichter_
Kathleen A. Nimrichter

# EXHIBIT E

The favor of a reply is respectfully requested.

Respectfully submitted,

FAY, SHARPE, FAGAN, MINNICH & McKEE, LLP

21 Apr 2005
Date

Jay F. Moldovanyi, Reg. No. 29,678
1100 Superior Avenue, Seventh Floor
Cleveland, OH 44114-2518
216/861-5582

FILENAME \p N:\JFMZ\200028\2A\KAN0003836V001.doc

* * * Transmission Result Report (Memory TX) ( Apr.21 2005 4:03PM ) * * *

1)
2)

Date/Time: Apr.21. 2005  4:01PM

| File No. Mode | Destination | Pg (s) | Result | Page Not Sent |
|---|---|---|---|---|
| 2867 Memory TX | #458917033057687 | P. 4 | OK | |

--------------------------------------------------------------------------------

Reason for error
E.1) Hang up or line fail          E.2) Busy
E.3) No answer                     E.4) No facsimile connection

---

### FAY, SHARPE, FAGAN, MINNICH & McKEE, LLP

PATENT TRADEMARK AND COPYRIGHT LAW
1100 SUPERIOR AVENUE
SEVENTH FLOOR
CLEVELAND, OHIO 44114-2579
TELEPHONE (216) 861-5582
FAX (216) 241-1666 and (216) 241-5147

DATE:             April 21, 2005

TO:               U.S. Patent and Trademark Office

ATTENTION:        Examiner D. Stodola - Art Unit 3634

FACSIMILE NO.:    1-703-305-7687

FROM:             Jay F. Moldovanyi

RE:               U.S. Serial No. 09/651,431

                  Our Reference No.:  JFMZ 2 00028-2

Total number of pages (including this cover sheet):   3

Please call us immediately at (216) 861-5582 if the telecopy you receive is incomplete
or illegible. Our facsimile numbers are (216) 241-1666 and (216) 241-5147.

# EXHIBIT F

The documents accompanying this facsimile transmission include information from the firm of Fay, Sharpe, Fagan, Minnich & McKee, LLP that might be legally privileged and/or confidential. The information is intended for the use of only the individual or entity named on this cover sheet. If you are not the intended recipient, any disclosure, copying, or distribution of these documents, or the taking of any action based on the contents of this transmission, is prohibited. If you have received this transmission in error, these documents should be returned to this firm as soon as possible, and we ask that you notify us immediately by telephone so we can arrange for their return to us without cost to you.
N:\Pending\Pending\Pending\KAN0300A.doc

* * * Transmission Result Report (MemoryTX) ( Apr.21. 2005 4:02PM ) * * *
1)
2)

Date/Time: Apr.21. 2005  4:00PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 2866 Memory TX | #883917038729306 | P. 4 | OK | |

--------------------------------------------------------------------------------

Reason for error
E.1) Hang up or line fail          E.2) Busy
E.3) No answer                     E.4) No facsimile connection

### FAY, SHARPE, FAGAN, MINNICH & McKEE, LLP
PATENT TRADEMARK AND COPYRIGHT LAW
1100 SUPERIOR AVENUE
SEVENTH FLOOR
CLEVELAND, OHIO 44114-2579
TELEPHONE (216) 861-5582
FAX (216) 241-1666 AND (216) 241-5147

| | |
|---|---|
| DATE: | April 21, 2005 |
| TO: | U.S. Patent and Trademark Office |
| ATTENTION: | Director John Love - Art Unit 3634 |
| FACSIMILE NO.: | 1-703-872-9306 |
| FROM: | Jay F. Moldovanyi |
| RE: | U.S. Serial No. 08/651,431 |
| | Our Reference No.: JFMZ 2 00028-2 |

Total number of pages (including this cover sheet):  __3__

Please call us immediately at (216) 861-5582 if the telecopy you receive is incomplete or illegible. Our facsimile numbers are (216) 241-1666 and (216) 241-5147.

The documents accompanying this facsimile transmission include information from the firm of Fay, Sharpe, Fagan, Minnich & McKee, LLP that might be legally privileged and/or confidential. The information is intended for the use of only the individual or entity named on this cover sheet. If you are not the intended recipient, any disclosure, copying, or distribution of these documents, or the taking of any action based on the contents of this transmission, is prohibited. If you have received this transmission in error, these documents should be returned to this firm as soon as possible, and we ask that you notify us immediately by telephone so we can arrange for their return to us without cost to you.
N:\Pending\Pending\Pending\KANI30GA.doc

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| IN RE APPLICATION OF | : | Thomas D. Sykes |
| FOR | : | PLATFORM FOR COMPUTER INPUT DEVICE |
| SERIAL NO. | : | 08/651,431 |
| FILED | : | May 22, 1996 |
| CONFIRMATION NO. | : | 3679 |
| EXAMINER | : | D. Stodola |
| ART UNIT | : | 3505 |
| NOTICE OF ALLOWANCE | : | August 12, 2004 |
| ATTORNEY DOCKET NO. | : | JFMZ 2 00028-2 |

**THIRD STATUS REQUEST**

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

A Second Status Request concerning the above-identified patent application was faxed to the U.S. Patent and Trademark Office to Examiner D. Stodola - Art Unit 3634 and to Director John Love - Art Unit 3634 on April 21, 2005. That document was received by the U.S. Patent and Trademark Office as is evident from the facsimile confirmation receipts enclosed as Exhibit A. A First Status Request concerning the above-identified patent application was filed on March 4, 2005. That document was received by the U.S. Patent and Trademark Office as is evident from the receipt acknowledgement post card thereof, enclosed as Exhibit B.

CERTIFICATE OF FACSIMILE AND FIRST CLASS MAIL TRANSMISSION

I hereby certify that this Third Status Request is being forwarded to Examiner Stodola at the U.S. Patent and Trademark Office via facsimile (1-703-305-7687) and to Director John Love at the U.S. Patent and Trademark Office via facsimile (1-703-872-9306) and by first class mail on this 17th day of June 2005.

_Kathleen A. Nimrichter_
Kathleen A. Nimrichter

**EXHIBIT G**

No reply has been received to either status request. It is difficult to see how failing to communicate with an applicant fulfills the U.S. Patent and Trademark Office's mission statement of encouraging investment in innovation and fostering entrepreneurial spirit. Moreover, it flies in the face of the U.S. Patent and Trademark Office's vision to be a responsive organization (see the U.S. Patent and Trademark Office Vision and Mission Statement contained in the U.S. Patent and Trademark Office Performance and Accountability Report, Fiscal Year 2004, dated January 25, 2005).

This application was submitted more than 10 years ago. It has now been over six (6) months since the payment of the issue fee and over 6 months since the submission of the application for patent term adjustment. Therefore, applicant inquires, again, as to the status of this application with the U.S. Patent and Trademark Office.

The favor of a reply is respectfully requested.

Respectfully submitted,

FAY, SHARPE, FAGAN, MINNICH & McKEE, LLP

17 June 2005

Date

Jay F. Moldovanyi, Reg. No. 29,678
1100 Superior Avenue, Seventh Floor
Cleveland, OH 44114-2518
216/861-5582

N:\JFMZ\200028\2A\KAN0004169V001.doc

NO. _145-1_

Inventor/Applicant: _Thomas A. Sebus_
Title: _Walking Improvement_                     Initials _R. W. Lam_
Attorney Docket No. _____

Pat. No. _____
Ser. No. _08/_____
Filed _____
Date _6-17-05_

☐ **PATENT/DESIGN APPLICATION**
____ New Application Transmittal
____ Cont. ____ Div. ____ C-I-P ____ Provisional
____ CPA Transmittal ____ PCT Request
____ Declaration/Power of Atty.
____ pgs. Specification
____ pgs. Claims
____ ____ total ____ independent
____ pgs. Abstract
____ Sheet(s) of drawing(s) Figs. ____
____ ____ formal ____ informal
____ Preliminary Amendment
____ Request and certification under
     35 U.S.C. 122(b)(2)(B)(i)
____ Claim for Right of Priority
     Appln. _____
     Filed _____
____ Priority document(s)
____ Small Entity Statement(s)
____ Final Fee ____ Publication Fee
____ Response to missing parts
☐ **ASSIGNMENT**
____ Transmittal ____ Confirmatory
☐ **INFORMATION DISCLOSURE STATEMENT**
____ PTO Form 1449 ____ Refs.

☐ AMENDMENT (Due _____)
____ Transmittal(s)
____ Extension of Time (For ____ month(s))
☐ **NOTICE OF APPEAL**
☐ PCT DEMAND (Due _____)
☐ CHECK(S) in Amount $ _____
☑ OTHER _____

OIPE JC
JUN 2 0 2005
PATENT & TRADEMARK OFFICE

RECEIPT IS HEREBY ACKNOWLEDGED

"DOCKETED"

**EXHIBIT H**

UNITED STATES PATENT AND TRADEMARK OFFICE

*JFmz 2 000028-2*

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

SEP 2 6 2005

FAY, SHARPE, FAGAN,
MINNICH & McKEE, LLP

JAY F. MOLDOVANYI
FAY, SHARPE, FAGAN, MINNICH & McKEE, LLP
1100 SUPERIOR AVENUE
SUITE 700
CLEVELAND OH 44114-2518

COPY MAILED

SEP 2 2 2005

OFFICE OF PETITIONS

In re Application of
Stodola
Application No. 08/651,431
Filing Date: May 22, 1996
For: PLATFORM FOR COMPUTER INPUT
DEVICE

: Decision on Petition for
: Patent Term Adjustment
:
:
:
:

The above-identified application has been forwarded to the undersigned for consideration on a petition under 35 U.S.C. 154(b) and (c) and 37 CFR 1.705, titled "Application For Patent Term Adjustment" received on November 3, 2004. See 35 U.S.C. § 154(b)[1] and 37 CFR §§ 1.701 and 1.705.

The petition under 37 CFR 1.705 is dismissed.

Petitioner notes that the above-identified application was initially filed on January 11, 1994 and should thus be eligible for a 17-year patent term or alternatively be eligible for a patent term adjustment of 1798 day.

35 U.S.C. § 154(b)(as amended by the "Uruguay Round Agreements Act," enacted December 8, 1994, as part of Public Law 103-465) provides for patent term extension for appellate review, interference and secrecy order delays in applications filed on or after June 8, 1995 and before May 29, 2000. 35 U.S.C. § 154(b)(as amended by the "American Inventors Protection Act of 1999," enacted November 29, 1999, as part of Public Law 106-113) provides for patent term adjustment for these administrative delays and others in applications filed on or after May 29, 2000.

The rules and statutory provisions governing the operations of the U.S. Patent and Trademark Office require payment of a fee on filing each petition. See 35 U.S.C. § 41(a)(7). Applicant states the required fee under 37 CFR 1.18(e) was enclosed with the request, however there is no record of payment in the Office records. The request is dismissed for failure to pay the required fee under 37 CFR 1.18(e). If applicant has evidence that the fee was paid, applicant should submit a request for

---

[1] 35 U.S.C. § 154 was amended by the "American Inventors Protection Act of 1999," which was enacted on November 29, 1999 as part of Public Law 106-113 (Consolidated Appropriations Act for Fiscal Year 2000). Since this amendment is effective May 29, 2000 and applies to applications filed on or after that date, the prior patent term adjustment provisions of 35 U.S.C. § 154 continue to apply to the above-identified application.

# EXHIBIT I

Application No. 08/651,431

reconsideration along with the evidence within two months of patent issuance. If applicant does not have evidence that the fee was properly paid, he should submit a petition under either 37 CFR 1.182 or 1.183 with the required fee within two months of patent issuance.

With respect to petitioners arguments concerning the eligibility of the 17-year patent term and the patent term provisions, see *Changes to Implement 20-Year Patent Term and Provisional Applications*, 60 FR 20195 (April 25, 1995). With respect to petitioners arguments concerning the eligibility of patent term adjustment provisions, see *Changes to Implement Patent Term Adjustment under Twenty-Year Patent Term*, 65 FR 56366 (Sept. 18, 2000) 1239 *Off. Gaz. Pat. Office Notices* 14 (Oct. 3, 2000).

After mailing of this decision, the above-identified application will be returned to the Office of Publications.

Telephone inquiries with regard to this communication should be directed to Mark O. Polutta at (571) 272-7709.

Mark O. Polutta
Senior Legal Advisor
Office of Patent Legal Administration
Office of the Deputy Commissioner
for Patent Examination Policy