## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THOMAS D. SYKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06CV0829 (CKK) |
| | ) | |
| JON W. DUDAS, | ) | |
| | ) | |
| Under Secretary of Commerce | ) | |
| for Intellectual Property and | ) | |
| Director of the United States | ) | |
| Patent and Trademark Office | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant respectfully moves to dismiss this case for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, defendant respectfully moves for summary judgment. In support of this Motion, defendant respectfully refers the Court to the accompanying Memorandum of Points and Authorities. A proposed Order is attached.

November 15, 2006

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____
KAREN MELNIK, D.C. Bar #436452
Assistant United States Attorney
Judiciary Center Building
555 4th St, NW Rm E4112- Civil Division
Washington, D.C. 20530
(202) 307-0338

OF COUNSEL:
JOHN M. WHEALAN
Solicitor
NATHAN K. KELLEY
WILLIAM LAMARCA
Associate Solicitors
U.S. Patent and Trademark Office
P.O. Box 15667
Arlington, VA  22215
(571) 272-9035

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THOMAS D. SYKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06CV0829 (CKK) |
| | ) | |
| JON W. DUDAS, | ) | |
| | ) | |
| Under Secretary of Commerce | ) | |
| for Intellectual Property and | ) | |
| Director of the United States | ) | |
| Patent and Trademark Office | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

This case involves patent "term."  The United States Patent and Trademark Office ("PTO") has issued a patent to plaintiff for a computer mouse-pad that can be mounted on a user's thigh (the '311 patent)[1] .  As a result of a law passed in 1994 implementing international agreements under the General Agreement on Tarriffs and Trade (the GATT legislation), plaintiff is entitled to additional patent term - - called a patent term extension ("PTE") - - for certain administrative delays that occurred during the prosecution of plaintiff's patent application that became the '311 patent.  The PTO calculated that additional term to be 1139 days.

_____

[1]  The '311 patent, i.e., U.S. Patent No. 6,962,311, like the majority of patents, is a "utility" patent, as opposed to a "plant" or "design" patent.  Unless otherwise specified, the term "patent" as used herein refers to a utility patent.

Plaintiff wants a longer term.  Plaintiff argues that a subsequent law, the American Inventors Protection Act of 1999 ("AIPA"), passed years after he filed his patent application entitles him to more time.  Because the AIPA does not apply retroactively to applications like plaintiff's, that were pending when it was passed, but instead only applied to applications filed on or after May 29, 2000, plaintiff is not entitled to any additional term.  Plaintiff also cites the AIPA, 35 U.S.C. § 154(b)(4)(A), as the statutory basis for this Court's jurisdiction.  See Complaint at 1.  As with other provisions of that law, § 154(b)(4)(A) only applies prospectively and, therefore, not to plaintiff's application.

Because plaintiff's patent application was filed before the applicability date of the AIPA, which provides both his alleged entitlement to an additional term adjustment as well as his alleged right to bring this civil action, this Court should dismiss plaintiff's complaint for lack of subject matter jurisdiction and failure to state a claim.  Alternatively, this Court should grant summary judgment in favor of the PTO because the PTO is entitled to judgment as a matter of law.

## II.    STATEMENT OF UNDISPUTED FACTS

1.    On May 22, 1996, plaintiff filed application serial no. 08/651,431, entitled "Platform for Computer Input Device" (the '431 application), with the PTO.  A0613.[2]

2.    The '431 application claimed the benefit of the filing date of plaintiff's earlier, now abandoned, application serial no. 08/180,202 (the '202 application) under 35 U.S.C. §§ 120 and 121.  Id.

---

[2]    Citation to "A0613" refers to the page of the administrative record of the '431 application, which was filed with the Court on November 13, 2006.

3.      On June 17, 1998, the examiner issued a final rejection on the majority of claims in the '431 application.  A0457-466.

4.      On September 18, 1998, plaintiff filed a Notice of Appeal to the PTO's Board of Patent Appeals and Interferences (the Board) in the '431 application challenging the examiner's final rejection.  A0450.

5.      On October 30, 2001, the Board issued a decision reversing the examiner and remanding the '431 application to the examiner.  A0232, A0246.

6.      After additional prosecution before the examiner, the PTO issued a Notice of Allowance for the '431 application on August 12, 2004.  A0105.

7.      Attached to that Notice of Allowance was a communication entitled "Determination of Patent Term Extension under 35 U.S.C. 154(b) (application filed after June 7, 1995 but prior to May 29, 2000)," which informed plaintiff that any patent to issue from the '431 application would have its term extended by 1139 days.  A0107.

8.      On November 8, 2004, plaintiff filed a petition entitled "Application For Patent Term Adjustment" under 37 C.F.R. § 1.705, but did not include the required fee. A082.

9.      On September 22, 2005, the PTO dismissed plaintiff's petition for failure to pay the required fee.  A0050.

10.     On November 8, 2005, the PTO issued the '431 application as U.S. Patent No. 6,962,311 (the '311 patent).  Complaint at Exhibit 1.  The face of the '311 patent contains a notice indicating the 1139-day patent term extension.  Id.

11.     On November 14, 2005, plaintiff filed a new petition including all the proper fees, and asserting that the earlier failure to include the required petition fee was an inadvertent oversight, done without deceptive intent.  A0009.

12.     On May 3, 2006, plaintiff filed this lawsuit challenging the PTO's calculation of the 1139-day patent term extension.

13.     On July 11, 2006, the PTO issued a decision rejecting plaintiff's request to add more days to the 1139-day extension.  Because plaintiff's '431 application was filed before enactment of the legislation under which plaintiff was seeking the additional days, and because that legislation was not retroactive, plaintiff was not entitled to the additional days he was seeking.  A0006-08.

14.     On November 9, 2006, plaintiff filed his First Amended Complaint, adding a paragraph numbers 10 and 13, referencing the July 11, 2006, PTO decision.

## III.    SUMMARY OF PETITION DECISION

In the July 11, 2006, petition decision, the PTO determined that plaintiff's '311 patent was entitled to 1139 days of term extension.  A0007.  This was based on the 1994 GATT legislation that provided for term extension for three specific administrative delays if they occur during prosecution.  Specifically, the '311 patent was entitled to this term extension to compensate for the time it took to appeal the examiner's rejection which was reversed by the Board.

Plaintiff did not dispute the calculation of the number of days for this delay.  Rather, plaintiff argued that a law passed years after he filed his application, the AIPA, applied.  While the AIPA provides for term adjustments[3] for additional categories of

---

[3]     The GATT legislation uses the phrase "term extension" while the AIPA uses the phrase "term adjustment."  Both phrases refer to additional time added on to the term of a patent to compensate for various delays that might occur during prosecution.

4

delay beyond those identified in the GATT legislation, the AIPA also has an express effective date provision that limits its effect to those patent applications filed on or after May 29, 2000.  A0007 (petition decision discussing the AIPA's effective date).  Because plaintiff's application was filed four years before the AIPA's May 29, 2000, applicability date, the PTO determined that the '311 patent was not entitled to additional time.

The petition decision also addressed plaintiff's unusual request for a determination that the pre-GATT 17-year patent term applied to the '311 patent.  As discussed below in part IV(D), the PTO has no role in determining whether a patent is entitled to a 17-year term.  Nevertheless, the petition decision explained that because plaintiff's application was filed after June 8, 1995, it is not eligible for a 17-year patent term by the clear language of the statute.  A0008.

## IV.    ARGUMENT

As a threshold matter, plaintiff's First Amended Complaint (complaint) is facially inadequate because it fails to show why he is entitled to relief.  Instead, plaintiff's complaint explains why he is dissatisfied with the PTO's decision.  He then points this Court to his earlier petition filed with the PTO, and the "reasons appearing in the whole record."  In short, because plaintiff's complaint contains nothing more than conclusory allegations of legal error, it fails to state a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6).

If the Court credits plaintiff's complaint with the various legal theories he urged before the PTO, then the Court must consider whether certain provisions of the AIPA reach plaintiff's '311 patent.  The AIPA was passed in 1999, and its provisions relevant to this lawsuit apply to all patent applications filed on or after May 29, 2000.  Plaintiff's

'311 patent issued from his '431 application, which was filed on May 22, 1996, more than four years before the AIPA's 2000 applicability date.  Thus, the AIPA does not apply to plaintiff's '311 patent.

Because the AIPA does not apply to plaintiff's '311 patent, he cannot rely on the AIPA's adjustment provisions.  Likewise, plaintiff cannot rely on the AIPA's provision for judicial review, the basis he cites for this Court's jurisdiction.  Thus, this Court should dismiss plaintiff's complaint either for lack of jurisdiction or failure to state a claim.

If the Court addresses the merits of plaintiff's requested relief, the sole issue before the court is whether the term adjustment provisions added by the AIPA apply to his '311 patent.  Quite simply, if they do, then plaintiff's patent is entitled to additional term adjustments, and if they do not, as the PTO held, then plaintiff's patent is not entitled to any additional term adjustments.

Finally, the PTO's role does <u>not</u> include determining whether plaintiff's application is a pre-GATT or post-GATT application.  Put differently, the PTO does not determine whether any given patent is entitled to a 17- or 20-year term.  While Congress has charged the PTO with calculating patent term extensions and adjustments in specific contexts, it has not, either in the GATT legislation, the AIPA, or anywhere else, given the PTO authority to determine whether a patent is entitled to a 17-year term.  Because the PTO has no role in determining plaintiff's entitlement to a 17-year term, this Court has nothing to review in this action.  In essence, plaintiff is seeking an advisory opinion.

A.    **The Applicable Legal Standards**

1.    Lack of Jurisdiction (12(b)(1))

"On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." Fed. Election Comm'n v. Club for Growth, Inc., 432 F. Supp. 2d 87, 99 (D.D.C. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). "The Court may dismiss a complaint for lack of subject-matter jurisdiction only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 315 F.3d 338, 343 (D.C. Cir. 2003)).

2.    Failure to State a Claim (12(b)(6))

This Court may dismiss a claim pursuant to Fed. R. Civ. P. 12(b)(6) if it appears that the plaintiff "'can prove no facts in support of the claim which would entitle the plaintiff to relief.'" Redd v. Rubin, 34 F. Supp. 2d 1, 4 (D.D.C. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). While the Court must accept the factual allegations in the complaint as true when evaluating a motion to dismiss, the Court need not accept the plaintiff's legal conclusions. See Nichols v. Truscott, 424 F. Supp. 2d 124, 132 (D.D.C. 2006) (citing Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1996). If the Court considers matters outside the pleadings in ruling on a motion to dismiss, the Court may treat the motion to dismiss as a motion for summary judgment. See Fed. R. Civ. P. 12(b); Evans v. District of Columbia, 391 F. Supp. 2d 160, 164 (D.D.C. 2005) (citing Currier v. Postmaster Gen., 304 F.3d 87, 88 (D.C. Cir. 2002)).

3.    <u>Summary Judgment</u>

Summary judgment is appropriate where there are no genuine issues of material

fact, and the moving party is entitled to judgment as a matter of law.  <u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  In determining whether

a genuine issue of material fact exists, a court must view all facts, and draw all

reasonable inferences, in the light most favorable to the non-moving party.  <u>Matsushita</u>

<u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The party opposing

summary judgment "may not rest upon the mere allegations or denials of the adverse

party's pleadings, but . . . must set forth specific facts showing that there is a genuine

issue for trial."  Fed. R. Civ. P. 56(e).  "Summary Judgment is an appropriate procedure

for resolving a challenge to a federal agency's administrative decision when review is

based upon the administrative record."  <u>Bloch v. Powell</u>, 227 F. Supp. 2d 25, 30-31

(D.D.C. 2002).

4.    <u>Deference to the PTO</u>

The PTO's statutory interpretation of a law it is charged with administering is

entitled to deference.  <u>See</u> <u>Lacavera v. Dudas</u>, 441 F.3d 1380, 1383 (Fed. Cir. 2006)

(explaining that the PTO is entitled to <u>Chevron</u> deference when Congress has charged it

with administering the statute) (citing <u>United States v. Mead Corp.</u>, 533 U.S. 218 (2001);

<u>Chevron U.S.A., Inc. v. Natural Res. Def. Council</u>, 467 U.S. 837 (1984)).  Likewise, the

PTO's interpretation of its own regulations is entitled to substantial deference.  <u>See</u>

<u>Custom Computer Servs., Inc. v. Paychex Props., Inc.</u>, 337 F.3d 1334, 1336 (Fed. Cir.

2003) ("[T]he PTO's interpretation must be given controlling weight unless it is plainly

erroneous or inconsistent with the regulation.") (internal quotes and citation omitted) (citing Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)).

### B.    Background on Relevant Patent Law and Regulations

The PTO provides the following brief discussion for the Court's convenience.

In order to receive a patent, an inventor must first file a patent application with the PTO.  There are generally two parts to a patent application: the specification, or "disclosure," and the claims.  See 35 U.S.C. §§ 111, 112.  Prosecution of a patent application can take several years.

When the PTO does issue a patent, the result is a grant to the patentee of the right to exclude others from making, using, selling, or offering for sale the claimed invention throughout the United States for a limited period of time, i.e., the "term" of the patent. 35 U.S.C. § 154(a).  When the patent term expires, the public is free to practice the invention.  This case involves the term of plaintiff's '311 patent, and in particular, the time added on to the statutorily proscribed term.

The term of a patent, which always begins on the day the patent issues, was historically seventeen years.  Beginning in 1861, U.S. patents were granted for a term of "seventeen years from the date of issue."  Act of March 2, 1861 ch. 88 § 16, 12 Stat. 246. The current statutory provision setting patent term is 35 U.S.C. § 154.  Since the 17-year term did not start to run until the patent issued, the time it took to prosecute the patent (from application to issuance) did not diminish the term of the patent.  Thus, even if prosecution took a decade, the patentee would still receive a 17-year term starting on the issue date of the patent.  Although one might think an applicant wants to obtain its patent quickly, the 17-year-term-from-issue scheme encouraged certain applicants to delay

prosecution, allowing the industry to develop, and then having the patent issue with a 17-year term.  See Joe Potenza, Patent Misuse–The Critical Balance, A Patent Lawyer's View, 15 Fed. Cir. B.J. 69, 72 (2005) (explaining that the 17-year term "led to the existence of so-called submarine patents where the applicant would file an application and then intentionally delay the patent's issuance--buying time to see what the industry adopted") (PTO Exhibit 1).

In the early 1990s, efforts were made to amend 35 U.S.C. § 154 in order to harmonize U.S. patent law with other countries that measure patent term from the date of application, rather than the date of issue.  One goal of those efforts was the elimination of "submarine" patents.  When the patent term is measured from an application's filing date, rather than the issue date of the patent, there is less incentive to prolong patent prosecution.

In 1994, the United States entered into international agreements under the General Agreement on Tariffs and Trade (GATT).  These agreements eliminate submarine patents and harmonize U.S. patent law with much of the world, by switching to a patent term that was measured from a patent application's earliest effective filing date.  See 5 Donald S. Chisum, Chisum on Patents, § 16.04[1] (1997) (PTO Exhibit 2).  To implement those agreements into U.S. law, Congress passed the Uruguay Round Agreements Act, Public Law 103-465, 108 Stat. 4809 (1994) (the GATT legislation[4]), signed by the President on December 8, 1994.

---

[4]    The PTO will refer to the Uruguay Round Agreements Act (the URAA) as the "the GATT legislation" because that is how patent practitioners normally refer to that act.

1.    GATT Legislation (URAA)

Of particular relevance to this lawsuit are the changes the 1994 GATT legislation

made to 35 U.S.C. § 154.[5]   Section 532 of that legislation amended 35 U.S.C. § 154 so

that it reads as follows:

**§ 154 Contents and term of patent**

(a)  IN GENERAL.—

. . . .

(2)  TERM.—Subject to the payment of fees under
this title, such grant shall be for a term beginning on the
date on which the patent issues and ending 20 years from
the date on which the application for the patent was filed in
the United States, or if the application contains a specific
reference to an earlier filed application or applications
under section 120, 121, or 365(c) of this title, from the date
on which the earliest such application was filed.

. . . .

(c)  CONTINUATION.—

(1)  DETERMINATION.—The term of a patent
that is in force on or that results from an application filed
before the date that is 6 months after the date of the
enactment of the Uruguay Round Agreements Act shall be
the greater of the 20-year term as provided in subsection
(a), or 17 year from grant, subject to any terminal
disclaimers.

(PTO Exhibit 3 at 108 Stat. 4983-84)  Thus, under the heavily revised 1994 version of

section 154, a patent term still began on the issue date, but ended on a date twenty years

from the earliest effective filing date of the patent application.  See 35 U.S.C. § 154(a)(2)

(1994) (PTO Exhibit 4).  That term is commonly referred to as a "20-year term," though

an actual term of twenty years is impossible because prosecution necessarily takes more

than a day.

---

[5]    Prior to the GATT legislation, 35 U.S.C. § 154 simply provided a 17-year term from
issue.  See 35 U.S.C. § 154 (1993).

Section 534 of the GATT legislation established that it would become effective six months after enacted, i.e., on June 8, 1995, and that it would apply to all applications filed on or after that effective date. See GATT legislation, § 534 (PTO Exhibit 3 at 108 Stat. 4990). As a result, under the revised 35 U.S.C. § 154, "[n]o patent issued on an application filed after June 8, 1995, has a guaranteed 17-year term." Merck & Co. v. Kessler, 80 F.3d 1543, 1552-53 (Fed. Cir. 1996). Practitioners were well aware of the significance of that date, and the importance of filing patent applications prior to that date. See, e.g., Kenneth J. Burchfiel, U.S. GATT Legislation Changes Patent Term, 77 J. Pat. & Trademark Off. Soc'y 222, 228 (1995) ("Applicants should immediately review all pending patent applications to determine if any applications should be filed or refiled before the June 8, 1995 date, in order to obtain the benefit of the 17-year term.") (PTO Exhibit 5).

Because the GATT legislation had the effect of subtracting from a patent's term the time spent during prosecution at the PTO, 35 U.S.C. § 154 was also amended to give back to patentees, in the form of a "term extension," the time associated with three very specific delays that can occur during prosecution: (1) delays caused by secrecy orders; (2) delays caused by interferences; and (3) delays caused by successful appeals. See § 154(b)(1)-(2) (1994) (PTO Exhibit 4). Only the third type of delay is at issue here. After enactment of the GATT legislation, the PTO issued 37 C.F.R. § 1.701, which provided for a day-for-day extension of patent term for those patents issued from applications filed after June 8, 1995, to account for delays covered by the newly revised section 154.

2.    AIPA

During the years after enactment of the GATT legislation, it became apparent that

the limited provisions for patent term extensions did not account for many other delays

that occur during patent prosecution.  See H.R. Rep. No. 106-287(I), at 48 (1999)

(explaining that the original limited grounds for patent term extensions failed to

compensate patent applicants for PTO-caused administrative delay) (PTO Exhibit 6).

Partly as a result of those concerns, Congress passed the American Inventors Protection

Act of 1999.  Public Law 106-113, 113 Stat. 1501, 1501A-552 through 1501A-591

(1999) ("AIPA").  Section 4402 of the AIPA provided for adjustment of patent terms for

additional administrative delays that can occur during prosecution.  Examples of those

additional adjustments include an adjustment (i) for any delay beyond four months

corresponding to the time it takes the PTO to take action after a decision by the Board,

and (ii) for any delay beyond four months corresponding to the time it takes the PTO to

act on a response from an applicant.  See AIPA, § 4402 (PTO Exhibit 7 at 113 Stat.

1501A-557-60); 35 U.S.C. § 154(b)(1)(A) (1999) (PTO Exhibit 8).

Section 4402 of the AIPA also amended section 154 by adding a provision for

challenging the PTO's adjustment determination in this Court:

> An applicant dissatisfied with a determination made by the
> Director under paragraph (3) shall have a remedy by a civil
> action against the Director filed in the United States
> District Court for the District of Columbia within 180 days
> after the grant of the patent. . . .

AIPA, § 4402(a) (adding 35 U.S.C. § 154(b)(4)(A)) (PTO Exhibit 7 at 113 Stat. 1501A-

560).  Section 4402 of the AIPA provided both the additional grounds for patent term

adjustments and the jurisdiction of this Court to review adjustment decisions made by the

13

PTO.  Thus, Congress specifically provided a right of appeal to this Court for term

adjustment challenges by patentees whose patent applications are covered by the AIPA.

As with the GATT legislation, Congress was explicit in the AIPA as to which

patent applications could be entitled to term adjustments based on the additional

administrative delays in section 4402.  The effective date provision, section 4405, states

the following:

> **SEC. 4405. EFFECTIVE DATE**
>
>    (a)  AMENDMENTS MADE BY SECTIONS 4402 AND
> 4404.—The amendments made by sections 4402 [which
> provides for adjustments in response to administrative
> delays] and 4404 shall take effect on the date that is 6
> months after the date of the enactment of this Act and,
> except for a design patent application filed under chapter
> 16 of title 35, United States Code, <u>shall apply to any
> application filed on or after the date that is 6 months after
> the date of the enactment of this Act.</u>

AIPA, § 4405 (emphasis added) (PTO Exhibit 7 at 113 Stat. 1501A-560).  Thus,

while the AIPA amended 35 U.S.C. § 154 to provide adjustment of patent terms

shortened by administrative delay, it explicitly provided that those adjustments would

only apply to applications filed on or after May 29, 2000, <u>i.e.</u>, the date six months after

the November 29, 1999, enactment date of the AIPA.  In contrast, Congress separately

specified that a different provision of the AIPA, section 4403, would have the same

effective date, but would apply to all applications filed after <u>June 8, 1995</u>.

> (b)  AMENDMENTS MADE BY SECTION 4403.—The
> amendments made by section 4403—
>
>    (1) shall take effect on the date this 6 months after
> the date of the enactment of this Act, and <u>shall apply to all
> applications filed under section 111(a) of title 35, United
> States Code, on or after June 8, 1995</u>, and all applications
> complying with section 371 of title 35, United States Code,

> that resulted from international applications filed on or
> after June 8, 1995.

AIPA, § 4405 (emphasis added) (PTO Exhibit 7 at 113 Stat. 1501A-560).  Thus,

Congress specified that while the two provisions, sections 4402 and 4403 would have the

same effective date, section 4402 would apply prospectively, only to newly filed

applications, while section 4403 would apply retroactively, to applications filed as early

as June 8, 1995.

Following enactment of the AIPA, the PTO issued regulations to implement that

act.  See  Changes to Implement Patent Term Adjustment under Twenty-Year Patent

Term, 65 FR 56366 (Sept. 18, 2000).  The current applicable regulation relevant to

plaintiff's complaint is 37 C.F.R. § 1.702 (Rule 702) (emphasis added):

> The provisions of this section and §§ 1.703 though
> 1.705 [the regulations implementing the AIPA patent term
> adjustments and judicial review] apply only to original
> applications, except applications for a design patent, filed
> on or after May 29, 2000, and patents issued on such
> applications.

Rule 702 was promulgated pursuant to the PTO's general authority under 35

U.S.C. § 2(b) to issue rules governing proceedings before it, as well as the specific

direction to issue regulations provided in Section 154.  See § 154(b)(3)(A) (1999) ("The

Director shall prescribe regulations establishing procedures for the application for and

determination of patent term adjustments under this subsection.").

The GATT legislation, the AIPA, and specifically the evolution of 35 U.S.C. §

154, results in the following three categories of patents, divided by the filing date of the

particular application from which the patent issues:

| Application Filing Date | Resulting Patent Term | Extensions/Adjustments |
|---|---|---|
| (I) Before June 8, 1995 | 17 years from issue | Automatically entitled to a 20-year term from filing if its longer than 17-year term (§ 154(c)(1) (1994)) |
| (II) June 8, 1995 – May 28, 2000 | 20 years from earliest effective filing date | URAA extensions for 3 specific reasons not including general PTO delay (§ 154 (b) (1994)) |
| (III) On or after May 29, 2000 | 20 years form earliest effective filing date | AIPA adjustments for additional reasons including general PTO delay (§ 154 (b)(1)(A) (1999)) |

Plaintiff's '311 patent falls into category II because it issued from the '431 application, which was filed on May 22, 1996.  In his petition, plaintiff argued in the alternative that either he is entitled to the AIPA term adjustment (category III), or his '431 application qualifies as a pre-GATT application and the 17-year term from issue applies (category I).  Plaintiff is incorrect as to both claims.

## C.    Since Plaintiff's Complaint Is Insufficient, It Should Be Dismissed Pursuant to 12(b)(6)

Plaintiff has failed to state a claim upon which relief may be granted, not only because the applicable law does not apply to plaintiff's patent, which will be discussed below, but also because plaintiff's complaint is facially inadequate.  Plaintiff's Complaint does not provide a short and plain statement of events.[6]  Plaintiff's complaint does not identify any particular error in the PTO's petition decisions.  Moreover, plaintiff does not explain why he should prevail.  Instead, he merely alleges that he is "dissatisfied," First Amended Complaint ¶ 7, and that the PTO's determination is "erroneous and unlawful or

---

[6]    Although Plaintiff is proceeding pro se, he is not like the pro se litigants who typcially appear before this Court, i.e., having no prior acquaintance with the law.  See Plaintiff's Motion for Leave to Use CM/ECF Filing System at 2, filed with the Court on 5/4/2006 ("Plaintiff is an active trial lawyer in the federal courts.").

[sic] the reasons set out in the Petition and the exhibits thereto, and for reasons appeal

appearing in the whole record . . . ." <u>See</u> First Amended Complaint ¶ 11.

The complaint thus fails to satisfy the requirement of "a short and plain statement

of the claim <u>showing that the pleader is entitled to relief</u>."  Fed. R. Civ. P. 8(a)(2)

(emphasis added).

> Liberal construction has its limits, for the pleading must at
> least set forth sufficient information for the court to
> determine whether some recognized legal theory exists on
> which relief could be accorded the pleader.  If it fails to do
> so, a motion under Rule 12(b)(6) will be granted.

2 Moore's Federal Practice § 12.34[1][b] (3d ed. 2002) (citing <u>Wilson v. Civil Town of

Clayton</u>, 839 F.2d 375, 378 (7th Cir. 1988)).  Dismissal is appropriate if the complaint

fails to set forth any required element necessary to obtain relief.  <u>See</u> <u>Campbell v. City of

San Antonio</u>, 43 F.3d 973, 975 (5th Cir. 1995).  In the present case, the complaint does not

set forth any theory of recovery whatsoever, much less any of the required elements.

Plaintiff's complaint also runs afoul of the principle that "'conclusory allegations

or legal conclusions masquerading as factual conclusions will not suffice to prevent a

motion to dismiss.'"  <u>Campbell</u>, 43 F.3d at 975 (citation omitted).

> [W]hile the plaintiff's "facts" must be accepted as alleged,
> this does not automatically extend to "[b]ald assertions,
> subjective characterizations and legal conclusions," . . . .
> [T]he price of entry, even to discovery, is for the plaintiff to
> allege a factual predicate concrete enough to warrant further
> proceedings, which may be costly and burdensome.
> Conclusory allegations in a complaint, if they stand alone,
> are a danger sign that the plaintiff is engaged in a fishing
> expedition.

<u>DM Res., Inc. v. College of Am. Pathologists</u>, 170 F.3d 53, 55 (1st Cir. 1999) (quoting decision below).  Here, the complaint consists of nothing but conclusory allegations.  That being so, plaintiff has failed to state a claim upon which relief may be granted, and defendant is entitled to judgment on the pleadings pursuant to Rule 12(b)(6).

>    **D.    The AIPA Term Adjustments and the Right to Appeal Those Adjustments to This Court Do Not Apply to the '311 Patent**

Plaintiff seeks an additional adjustment of 659 days which he claims to be entitled to under the AIPA, <u>i.e.</u>, 35 U.S.C. 154(b)(1)(A) (1999).  <u>See</u> First Amended Complaint at 3.  Because plaintiff's '431 application was filed four years before, and not on or after, May 29, 2000, the additional term adjustments of section 4402 of the AIPA do not apply to the '311 patent.

As discussed above, section 4405 of the AIPA clearly limits the applicability of the additional section 4402 term adjustments to those applications "filed on or after the date that is 6 months after the date of the enactment of this Act."  AIPA, § 4405 ( PTO Exhibit 7 at 113 Stat. 1501A-560).  Plaintiff's '311 patent issued from an application filed on May 22, 1996, more than four years <u>before</u> the May 29, 2000, applicability date of section 4405.  Thus, plaintiff's patent cannot benefit from the AIPA adjustments.  Likewise, because AIPA § 4402 also adds the provision for bringing a civil action in this Court to review the AIPA adjustments, this Court lacks jurisdiction to hear the merits of this case.

The PTO regulations make this matter perfectly clear: 37 C.F.R. 1.702 states that the PTO's rules implementing the AIPA adjustments apply only to applications "filed on or after May 29, 2000."  37 C.F.R. 1.702 (2006).  As discussed above, Rule 702 was

specifically authorized by Congress in the AIPA itself, see 35 U.S.C. § 154(b)(3)(A) (1999), and thus is entitled to deference by this Court. See Lacavera v. Dudas, 441 F.3d 1380, 1383 (Fed. Cir. 2006). Because plaintiff's '431 application was filed before May 29, 2000, the term adjustments added by the AIPA are not available to plaintiff.

Finally, if Congress meant the AIPA's provisions to apply to applications filed before its effective date of May 29, 2000, as plaintiff imagines, it would have simply used the language in AIPA § 4405 relevant only to section 4403 of that act. See AIPA, § 4405 ("The amendments made by section 4403 . . . shall apply to all applications filed under section 111(a) of title 35, United States Code, on or after June 8, 1995."). Instead, Congress specified the 1995 date for section 4403, but used a different date, May 29, 2000, for the applicability language relevant to section 4402. Therefore, Plaintiff is not entitled to rely on the provision of AIPA section 4402 because his application was filed before, and not on or after, May 29, 2000.

### E.    Neither This Court Nor the PTO Has the Jurisdiction to Issue An Advisory Opinion as to Whether the Pre-GATT 17-Year Term Applies to the '311 Patent

Lastly, and in the alternative, plaintiff asks for this Court to issue an order directing the PTO to give the '311 patent a 17-year term. See Complaint at 3. Since the only jurisdiction plaintiff cites in his complaint is the AIPA, as codified at 35 U.S.C. § 154(b)(4)(A), and since that statute does not apply to his patent, this Court has no jurisdiction over plaintiff's request for a 17-year term.

Although a patentee could challenge the PTO's determination of a GATT legislation patent term extension under the Administrative Procedures Act ("APA"), and an AIPA patent term adjustment under the AIPA itself, those challenges are far different

from asking a court to issue an advisory opinion on whether a pre-GATT (17-year) or post-GATT (20-year) term applies. Otherwise, every patentee could ask the PTO and this Court for such a determination.

It is beyond the role of the PTO to grant requests for a 17-year term. Whether a patent is entitled to a 17- or 20-year term is not decided by the PTO, instead, it occurs automatically by operation of law. See Bayer AG v. Carlsbad Tech. Inc., 298 F.3d 1377, 1380-81 (Fed. Cir. 2002) (explaining that where a patent is entitled to the longer of the two alternative terms, the longer one applies automatically by operation of law) (citing with approval Changes to Implement 20-year Patent Term and Provisional Applications, 60 Fed. Reg. 20,195, 20,207 (April 25, 1995) ("Patentees need not make any election to be entitled to the longer term.")). Thus, no act by the PTO is required to confer a 17-year term to a deserving patent, i.e., if a patent is entitled to such a term, it is secured by operation of law. Furthermore, patent term extensions or adjustments have no applicability to the term of a patent measured from issue date because prosecution delays do not affect the 17-year term. Thus, plaintiff's desire for an adjustment that would extend his 20-year term, so as to result in an actual 17-year term appears to stem from his improper mingling of the two distinct types of patent terms.

When it comes to patent terms, the PTO's role is simply to calculate patent term extensions under the 1994 version of 35 U.S.C. § 154 (the GATT version), or to calculate patent term adjustments under the 1999 version of 35 U.S.C. § 154 (the AIPA version), depending on the filing date of the application in question. It is never the PTO's role to declare whether a certain patent is entitled to a 17- or 20-year term. Disputes may sometimes arise between plaintiffs and third parties regarding the enforcement of a patent,

and at that time, the entitlement to a 17-year term might be an issue. Now, however, any decision by this Court regarding plaintiff's entitlement to a 17-year term would amount to an advisory opinion.

## V.    CONCLUSION

This Court should dismiss plaintiff's complaint under Rule 12(b)(6) because it contains nothing more than conclusory allegations of legal error. If the Court credits plaintiff's complaint with the specific assertions of error raised before the PTO, the complaint should still be dismissed because the statutory basis for both this Court's jurisdiction and the patent term adjustments sought by plaintiff, i.e., the AIPA, does not apply to plaintiff's patent. Finally, because the PTO's statutory duties do not include a determination of whether a patent is entitled to a 17-year term, this Court should not consider plaintiff's alternative request for relief, which amounts to a request for an advisory opinion. Thus, for the foregoing reasons, this Court should dismiss plaintiff's motion to dismiss, or in the alternative, grant summary judgment in favor of the PTO.

November 15, 2006                    Respectfully submitted,


                                     _____

                                     JEFFREY A. TAYLOR, D.C. Bar #498610
                                     United States Attorney


                                     _____

                                     RUDOLPH CONTRERAS, D.C. Bar #434122
                                     Assistant United States Attorney

_____

KAREN MELNIK, D.C. Bar #436452

Assistant United States Attorney

Judiciary Center Building

555 4th St, NW Rm E4112- Civil Division

Washington, D.C. 20530

(202) 307-0338


OF COUNSEL:

JOHN M. WHEALAN

Solicitor

NATHAN K. KELLEY

WILLIAM LAMARCA

Associate Solicitors

U.S. Patent and Trademark Office

P.O. Box 15667

Arlington, VA  22215

(571) 272-9035