# Patent Misuse—The Critical Balance, A Patent Lawyer's View

Joe Potenza, Phillip Bennett, and Christopher Roth[*]

## Introduction

Patent misuse, an equitable defense to the enforcement of a misused patent, appears to be enjoying resurgence. Born out of the judge-made doctrine of contributory infringement, the concept has undergone periodic reshaping by Congress and the courts. Patent misuse may now be one of the most frequently discussed and least frequently upheld defenses in patent law. Yet the doctrine is important to the proper operation of the patent system and the maintenance of a vibrant marketplace for innovation. In overseeing the patent system, the United States Court of Appeals for the Federal Circuit (Federal Circuit) is certain to confront a central issue of public policy as it seeks to both strike and articulate the delicate balance between the proper and improper uses of the patents granted in the Constitutional bargain "*[t]o promote* the [p]rogress of . . . [the] useful [a]rts."[1]

This Article reviews the history and evolution of the doctrine of patent misuse. It is helpful to remember that patent misuse is an equitable doctrine that is intended to prevent a patentee from impermissibly extending the scope or term of the patent beyond its statutory grant.[2] The roots of patent misuse lay in the law of patents (that is, the doctrine of unclean hands),[3] not the law of antitrust. Still, antitrust law provides useful insight into the concepts of reasonableness and balance in measuring the pros and cons of the use, or misuse, of patents. The use of the antitrust rule of reason to determine whether procompetitive effects outweigh anticompetitive effects is an obvious starting point for patent arrangements that are not in themselves per se violations. Even so, the use of the antitrust rule of reason does not require the wholesale importation of antitrust doctrine, nor does it limit additional

---

[*] Banner & Witcoff, Ltd. 1001 G St., NW, Suite 1100, Washington, D.C. 20001.

[1] U.S. CONST. art. I, § 8, cl. 8 (emphasis added).

[2] *See, e.g.*, Dawson Chem. Co. v. Rohm & Haas Co., 448 U.S. 176, 185 (1980); Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 492–93 (1942); C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1372 (Fed. Cir. 1998); B. Braun Med., Inc. v. Abbott Labs., 124 F.3d 1419, 1427 (Fed. Cir. 1997).

[3] *B. Braun Med.*, 124 F.3d at 1427 ("[A] court of equity will not lend its support to enforcement of a patent that has been misused.").

## I. Background

The courts and Congress have continued to deal with new and creative attempts to stretch the patent system and exploit it beyond its Constitutional mandate. For example, prior to 1995, a patent's term could be measured from its date of issuance, while a patent's priority date was measured from its date of filing.[12] Pending applications were not published.[13] This led to the existence of so-called *submarine* patents where the applicant would file an application and then intentionally delay the patent's issuance—buying time to see what the industry adopted.[14] The applicant would then allow the patent to issue, emerging from secrecy like a submarine. This time-shifted patent would enjoy a full seventeen-year term measured from the date of issuance, which in some cases was *decades* after the date of filing.[15] Needless to say, this practice was harmful to innovation because it encouraged the applicant to *prevent* his own patent from issuing—preventing the timely disclosure of inventions that the patent system strives to encourage. As a result, Congress, as part of statutory modifications such as the Uruguay Round Agreements Act,[16] amended 35 U.S.C. § 154 to prevent continuation applications from receiving a seventeen year monopoly from each date of issuance and instead created a fixed twenty year term from the earliest priority date in the series.[17] Additionally, the equitable remedy of prosecution laches was judicially invoked for egregious forms of abuse, particularly in the case of unreasonable delays during prosecution.[18] While statutory modifications and judicial remedies have alleviated some abuses to the patent system, there remain many practices that could give rise to a patent misuse defense.[19]

As a forum that hears a substantial number of patent infringement claims, it is no surprise that the ITC is at the forefront of applying the doctrine of patent misuse to new types of abuses of the patent system that are harmful to innovation. In recent investigations, the ITC has shown that these new

---

[12] Ricoh Co. v. Nashua Corp., No. 97-1344, 1999 WL 88969, at *3 n.3 (Fed. Cir. 1999); 35 U.S.C. §§ 119, 120 (1994).

[13] 35 U.S.C. § 122 (1994).

[14] *Ricoh*, 1999 WL 88969, at *3 n.3.

[15] *See id.*

[16] Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (Dec. 8, 1994).

[17] *Compare* 35 U.S.C. § 154(a)(2) (2000), *with* 35 U.S.C. § 154 (1994).

[18] *See, e.g.*, Symbols Techs. Inc. v. Lemelson Med., 277 F.3d 1361, 1364–66 (Fed. Cir. 2002) (holding that prosecution laches is a viable defense to patent infringement).

[19] *See, e.g.*, *infra* notes 228–38 and accompanying text.