# CHISUM ON PATENTS

A Treatise on the Law of Patentability, Validity and Infringement

## VOLUME 5

**Donald S. Chisum**
Professor of Law
Santa Clara University
Santa Clara, California



LexisNexis™
Matthew Bender®

**PTO EXHIBIT 2**

would expire on the same day as one issued on its parent application, there would be less incentive to use a continuing application for the purpose of delay.

"Measuring the patent term from the earliest domestic filing date will bring U.S. practice into closer conformity with most foreign systems. This would become advantageous if the Paris Convention were to be modified to permit measuring from the earliest foreign filing date asserted . . . ."[7]

Under the proposal, the patent would still be effective in terms of conferring rights only as of the issuance date.

A twenty-year-from-filing patent term, first proposed in 1966, was adopted by Congress in December 1994. Impetus for the change came from a multinational trade agreement and bilateral agreements between the United States and Japan.[8]

In April 1994, countries, including the United States, concluded the lengthy "Uruguay Round" trade negotiations under the General Agreement on Tariffs and Trade (GATT). The Uruguay Round Agreements established the World Trade Organization (WTO) and included an "Agreement on Trade-Related Aspects of Intellectual Property" ("TRIPS").[9] The TRIPS Agreement set forth "Standards Concerning the Availability, Scope and Use of Intellectual Property Rights," including copyright and related rights, trademarks, geographical indications, industrial designs, patents, "layout-designs (topographies) of integrated circuits," "protection of undisclosed information," and "control of anti-competitive practices in contractual licenses." The TRIPS Agreement's Article 33 on patent rights provided: "The term of protection available shall not end before the expiration of a period of twenty years counted from the filing date."

In 1994, United States and Japan representatives entered into "framework" trade negotiations. In January 1994, the Commissioners of the United States Patent and Trademark Office (PTO) and the Japanese Patent Office (JPO) agreed to a quid pro quo: Japan would allow applications to be filed in English; the

[7] See President's Comm'n on the Patent System, *To Promote the Progress of . . . Useful Arts* *in an Age of Exploding Technology* 33-34 (1966).

The delay between application and issuance for some important patents has run as long as 36 years. See Machlup, "An Economic Review of the Patent System," Study No. 15, Subcomm. Pat., Trademark, & Copyright, Jud. Comm., 85th Cong., 2d Sess. 10 (1958).

For a discussion of continuation applications, see Chapter 13 *supra*, For a discussion of the Paris Convention, see § 14.02[1] *supra*.

[8] See generally Burchfiel, "U.S. GATT Legislation Changes Patent Term," 77 J. Pat. & Trademark Off. Soc'y 222 (1995); Van Horn, "Effects of GATT and NAFTA on PTO Practice," 77 J. Pat. & Trademark Off. Soc'y 231 (1995).

[9] GATT Doc. MTN/FA, Part II, Annex 1C, *reproduced in* 33 Int'l Legal Materials: Treaties & Agreements (Am. Soc'y Int'l Law)(1994).

U.S. would adopt a 20-year-from-filing-date patent term. The latter's purpose was to eliminate so-called "submarine patents," granted only after years, even decades, of prosecution in the PTO by use of continuing applications, and after the concerned industry invested in the patented technology unaware of latent dominating patent rights. The agreement provided:

"1. By June 1, 1994, the United States Patent and Trademark Office (USPTO) will introduce legislation to amend U.S. patent law to change the term of patents from 17 years from the date of grant of a patent for an invention to 20 years from the date of filing of the first complete application.

"2. The legislation that the USPTO will introduce shall take effect six months from the date of enactment and shall apply to all applications filed in the United States thereafter.

"3. Paragraph 2 requires that the term of all continuing applications (continuations, continuations-in-part and divisionals), filed six months after enactment of the above legislation, be counted from the filing date of the earliest-filed of any applications invoked under 35 USC 120."[10]

The Clinton administration submitted to Congress a comprehensive bill on GATT, H.R. 5110, the Uruguay Round Agreements Act. Title V (intellectual property), Subsection C (patents), Section 532(a) established a 20-year-from-filing patent term, effective for all patents issuing on applications, including continuing applications relying on earlier applications' filing dates, filed after a date six months from the legislation's enactment date. This provision was consistent with but went beyond the TRIPS agreement, which only required a 20-year-from-filing *minimum* term. It carried out the January 1994 agreement between the USPTO and the JPO.

H.R. 5110 was submitted pursuant to special "fast track" trade legislation procedures, which meant that the House and Senate would vote on it, favorably or unfavorably, without amendments. The Congressional vote took place under unusual political circumstances. In the November 1994 election, Republican Party candidates won majorities in the House and Senate, supplanting the Democratic Party majorities. After the election, the "lame duck" Democratic majority Congress met in special session to vote on the GATT legislation. To secure sufficient votes from Republican senators to offset Democratic senators who intended to vote against the bill, the Clinton Administration negotiated with Republican Minority Leader (soon to be Majority Leader) Sen. Robert Dole (R. Kan.). Senator Dole espoused the view of interests opposed to the 20-year patent term provision. As part of an agreement securing Senator Dole's support for the GATT bill, the Clinton Administration acknowledged Dole's preference and

---

[10] See 47 Pat., Trademark & Copyright J. (BNA) 285 (Jan. 27, 1994).