# U.S. GATT Legislation Changes Patent Term

*Kenneth J. Burchfiel**

## I. Introduction

In adopting the World Trade Organization implementing legislation under GATT,[1] the United States has changed its patent laws in fundamental respects. The changes to U.S. patent law will affect owners of existing patents, as well as pending and future patent applications. It will be necessary for patent owners and applicants to undertake a comprehensive review of pending applications, to plan a strategy that will ensure the maximum term of patents that will issue under the new law, and to prevent serious loss of patent term. For many domestic and foreign corporations, it will be essential to complete this review and to file large numbers of new patent applications before June 8, 1995, in order to preserve the term of patent protection that had been ensured prior to the GATT legislation.[2]

Industries such as biotechnology, in which applications are routinely subject to extended delay in prosecution, and pharmaceuticals, in which the last years of the patent term are often the most commercially important, will be particularly affected by the changes in U.S. law, and should immediately begin to review, plan, and consult with patent counsel to avoid unexpected adverse consequences.[3]

## II. Patent Term Provisions

The United States has now changed the patent term from the former period of 17 years from the date of patent grant, to 20 years from the date of filing an original application, beginning on the date the

Copyright 1995.

* Partner, Sughrue, Mion, Zinn, Macpeak & Seas, Washington, D.C.; A.B., 1973, Amherst College; J.D., 1977, Cornell Law School.

1 Uruguay Round Agreements Act, Pub. L. No. 103-465, tit. V, subtit. C, 108 Stat. 4809, enacted on December 8, 1994 [''Uruguay Round Act''].

2 *See infra* §IV discussing the transitional provisions.

3 The impact of the legislation on the biotechnology industry is discussed in the author's forthcoming book, BIOTECHNOLOGY AND THE FEDERAL CIRCUIT §16.7 (1995), to be published by the Bureau of National Affairs.



PTO EXHIBIT 5

## IV. Transitional Provisions

A most important provision of the GATT legislation is that the change to a 20-year term from date of original filing does not become mandatory until June 8, 1995.[19] After that date, all applications filed in the U.S. (whether original applications, or continuations, divisionals or C-I-Ps of pending applications) will be subject to the 20-year term.[20]

However any application that is filed before June 8, 1995 will be entitled to the **longer** term of (1) 17 years from the date of grant or (2) 20 years from the date of filing of the original application.[21]

Applicants should immediately review all pending patent applications to determine if any applications should be filed or refiled before the June 8, 1995 date, in order to obtain the benefit of the 17-year term. Comprehensive review of corporate patent filings is essential to ensure that patent term is preserved.

### A. *Divisional Applications*

In particular, applicants should consider whether to file divisional applications resulting from earlier restriction requirements. Any divisional applications that are filed before June 8, 1995 will have a 17-year term from the date of grant, even where the restriction requirement was made in a parent, grandparent, or earlier related U.S. application. If such divisional applications are filed on or after June 8, 1995, they

19 The patent term provisions of §532 of the GATT legislation (except for §154(a)(1), which expands the infringement remedy to include offering for sale or importing the invention into the United States) take effect on the date that is 6 months after the date of enactment (December 8, 1994) and apply to all patent applications filed in the United States on or after the effective date. Uruguay Round Act, §534(a)(1).

20 Uruguay Round Act, §534(b)(1). The statute establishes two different effective dates for the patent term changes. The statute first clearly states that the patent term amendments made by §532 take effect on the date that is *6 months* after the date of enactment, and "shall apply to all patent applications filed in the United States on or after the effective date." *Id.* §534(b)(1). However, §534(b)(3) further provides that the term of a patent granted on an application that is filed on or after the effective date "described in subsection (a)" (which is the date *one year* after the date on which the WTO Agreement enters into force with respect to the United States), will be measured from the filing date of the earliest filed application where the application contains a reference to an earlier application filed under 35 U.S.C. §§120, 121, or 365(c). This bizarre conflict appears to result from a typographical error in §154(b)(3), but could be interpreted by the courts to provide an additional 6-month period for filing continuation or divisional applications without application of the 20-year term provision.

21 35 U.S.C. §154(c)(1) (1995) provides:

> DETERMINATION.—The term of a patent that is in force on or that results from an application filed before the date that is 6 months after the date of the enactment of the Uruguay Round Agreements Act shall be the greater of the 20-year term as provided in subsection (a), or 17 years from grant, subject to any terminal disclaimers.

/ISIONS

ATT legislation is that the
.nal filing does not become
ate, all applications filed in
ontinuations, divisionals or
ject to the 20-year term.[20]
efore June 8, 1995 will be
rom the date of grant or (2)
inal application.[21]
all pending patent appli-
ild be filed or refiled before
benefit of the 17-year term.
filings is essential to ensure

er whether to file divisional
on requirements. Any divi-
ne 8, 1995 will have a 17-
e the restriction requirement
ier related U.S. application.
or after June 8, 1995, they

gislation (except for §154(a)(1), which
ale or importing the invention into the
er the date of enactment (December 8,
ed States on or after the effective date.

hes two different effective dates for the
patent term amendments made by §532
actment, and "shall apply to all patent
ective date." *Id.* §534(b)(1). However,
ed on an application that is filed on or
h is the date *one year* after the date on
to the United States), will be measured
the application contains a reference to
365(c). This bizarre conflict appears to
be interpreted by the courts to provide
isional applications without application

that results from an application filed before
ruguay Round Agreements Act shall be the
7 years from grant, subject to any terminal



will be limited to a term that is 20 years from the filing date of the earliest application for which benefit is claimed. This could result in a severe loss of patent term, where prosecution has extended over a number of continuation or divisional applications.

B. *Continuation Applications*

Also, if prosecution has extended significantly beyond 3 years in any chain of continuations claiming benefit under 35 U.S.C. §120, it would be beneficial to consider whether these applications could be refiled or divided into separate applications prior to the effective date.

If any pending application (including an original application) is finally rejected prior to the effective date, it would be advantageous to file an immediate continuation application to ensure the maximum patent term, submitting a later supplemental response, amendment or declaration after the effective date where necessary.

C. *New U.S. Filings under 35 U.S.C. §119*

Where possible, all new U.S. patent filings should be made before June 8, 1995, including applications claiming priority from earlier foreign-filed applications under 35 U.S.C. §119. The eventual loss of patent term resulting from the U.S. legislation in many cases will greatly exceed the loss of priority term, and applicants should make every effort to file in the U.S. before the new term becomes mandatory.

D. *Limited Reexamination and Conditions of Restriction Requirements*

In order to reduce the impact of the patent term provisions on areas such as biotechnology, that are routinely subject to long PTO delay, Congress provided two special provisions applicable to applications that have been pending for 2 years or longer or 3 years or longer as of the effective date.[22] The first provision requires the Commissioner to prescribe regulations for "further limited reexamination" of applications that have been pending for 2 years or longer on June 8, 1995, taking into account any claim to benefit of any earlier U.S. application in a chain of applications.[23] The second provision requires the Commissioner to prescribe regulations to provide for the examination of more than one independent and distinct invention in an application that has

22 The effective date referred to is the effective date of 35 U.S.C. §154(a)(2), which is June 8, 1995. Uruguay Round Act, §534(b)(1).

23 Uruguay Round Act, §532(a)(2)(A).