UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS D. SYKES, | ) |
|            Plaintiff, | ) |
| v. | ) Civil Action No. 06CV0829 (CKK) |
| JON W. DUDAS, | ) |
|      Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office | ) |
|            Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
(1) IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT AND (2) IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiff "asks [this] Court to order the USPTO [to] allow a 17-year term."

(Document 17-2 at 3).[1] Neither this Court nor the PTO has jurisdiction to do so.

Alternatively, plaintiff seeks an adjustment to his patent term that Congress extended

only to applications filed <u>after</u> plaintiff's application was filed. However, plaintiff failed

to file his application (1) before June 8, 1995 (the GATT legislation[2] applicability date)

---

[1]   "Document 17-2" refers to Plaintiff's Memorandum of Points and Authorities (1) in Opposition to Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment and (2) in support of Plaintiff's Cross Motion for Summary Judgment.

[2]   The PTO will continue to refer to the 1994 legislation amended 35 U.S.C. § 154 as the GATT legislation. That legislation is referred to by plaintiff as the "Uruguay Agreements legislation."

or (2) after May 29, 2000 (the AIPA applicability date). Since plaintiff filed his application on May 22, 1996, an adjustment to his patent term would be contrary to law.

If this Court determines that it has jurisdiction, then the ultimate question is which category of patent term applies to plaintiff's '311 patent. See infra at 7 (Chart). Plaintiff argues that either category I or category III applies, however, the defendant submits that the correct analysis requires that category II be applied.

## II.   JURISDICTION

### A.   17-Year Term Theory

There is no jurisdictional basis for this court to review a decision never made by the PTO. As explained in the defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, see Document 13-1 at 20,[3] entitlement to a 17-year term occurs automatically, by operation of law and without any PTO action. See Bayer AG v. Carlsbad Tech. Inc., 298 F.3d 1377, 1380-81 (Fed. Cir. 2002) (explaining that where a patent is entitled to the longer of the two alternative terms, the longer one applies automatically by operation of law). Plaintiff now seems to concede as much, but speculates he might later be disadvantaged because the face of the '311 patent indicates a 1139-day patent term extension. (Document 17-2 at 23). Like all patentees, if plaintiff is concerned with the contents of his patent, he can seek a reissue patent or a certificate of correction. See 35 U.S.C. §§ 251, 254, 255. He has sought neither. Instead, he asks this Court to "order the USPTO [to] allow a 17-year term." (Document 17-2 at 3). The PTO

---

[3]   "Document 13-1" or "Defendant's Motion" refers to the Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment.

cannot comply with such an order, and this Court has no statutory jurisdiction to issue such an order.

In paragraph 3 of the First Amended Complaint, plaintiff cites three statutory sections that purportedly confer this Court with jurisdiction over his complaint: (1) 35 U.S.C. § 154(b)(4); (2) 28 U.S.C. § 1331; and (3) 28 U.S.C. § 1338(a).  None of these provisions provide this Court with jurisdiction.  Section 154(b)(4) was added to Title 35 in 1999, by section 4405 of the AIPA, four years after plaintiff filed his '431 application.  It does not apply to previously filed applications.  Thus, section 154(b)(4) is not an available basis of jurisdiction.  Plaintiff does not challenge the PTO's jurisdictional analysis under § 154(b)(4), but instead points to 28 U.S.C. §§ 1331 and 1338(a) as alternative sources of jurisdiction.  Plaintiff's assumption that either or both of these statutes can independently provide this Court with jurisdiction, however, overlooks sovereign immunity, which the government has not waived with either provision.  Neither section 1331 nor 1338 waives sovereign immunity.

Under the principle of sovereign immunity, the United States, and hence the PTO, may only be sued where it has expressly waived its immunity by statute.  Block v. North Dakota, 461 U.S. 273, 287 (1983).  Whether the United States has waived its immunity is a question of this Court's subject matter jurisdiction.  United States v. Sherwood, 312 U.S. 584, 586 (1941) ("[T]he terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.").  Waivers of sovereign immunity must be unequivocally expressed and are to be strictly construed in favor of the sovereign.  United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992).

In this case, neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1338(a), provides a waiver of the government's immunity from suit. See Swan v. Clinton, 100 F.3d 973, 981 (D.C. Cir. 1996) (stating that the general federal question statute, section 1331, does not itself waive sovereign immunity); Cermak v. Babbitt, 234 F.3d 1356, 1361 (Fed. Cir. 2000) ("[I]t is well-established that § 1331 does not by itself operate as a waiver of sovereign immunity.") (internal quotes and citation omitted); Turton v. United States, 212 F.2d 354, 355 (6th Cir. 1954) ("[28 U.S.C. § 1338] is merely a general provision vesting jurisdiction over certain types of action in the district courts. It does not contain any consent by the United States, express or implied, permitting the institution of suits against it for copyright infringement."). Cf. Hallmark Cards v. Lehman, 959 F. Supp. 539, 542 (D.D.C. 1997) (explaining that section 1338(a) does not create any right of civil action in the first instance.).

Further, the Administrative Procedures Act (the APA) does not provide a basis for jurisdiction over plaintiff's 17-year term theory. Petition decisions are normally challenged under the APA, 5 U.S.C. §§ 702-706, and 28 U.S.C. § 1338(a), where no other cause of action is provided in the statute. See, e.g., Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (reviewing, under the APA, a challenge involving the Director's duties during the course of examination). Here, the APA does not provide a cause of action because there is no agency action to challenge under plaintiff's 17-year term theory. Even if Plaintiff had raised the APA as a jurisdictional basis, his 17-year term theory does not amount to a real controversy. Therefore, this Court does not have jurisdiction.

### B.   AIPA Term Adjustment Theory

This Court also lacks jurisdiction to address plaintiff's request for a patent term adjustment under the AIPA because that statute was passed four years after plaintiff filed his application.[4] As explained in Defendant's Motion, "plaintiff cannot rely on the AIPA's provision for judicial review, the basis he cites for this Court's jurisdiction." (Document 13-1 at 6). This Court's jurisdiction over plaintiff's alternative AIPA adjustment theory is intertwined with the merits of that theory. Section 4405 of the AIPA limits the applicability of (I) its new term adjustments and (ii) judicial review of any such adjustment to applications filed <u>on or after</u> May 29, 2000. Because plaintiff's '431 patent application was filed <u>before</u> May 29, 2000, the AIPA, including its provision for judicial review, does not apply to his '311 patent.

Further, as with his 17-year term theory, the APA cannot make up for the lack of section 154 jurisdiction. The APA cannot confer jurisdiction for review where Congress specifically provides for review by another statute. "As a jurisdictional source . . . the APA is of the 'gap-filling' variety. It does not give a blanket grant of jurisdiction, but merely provides it where necessary. . . . Thus, before the APA becomes an independent basis of jurisdiction . . . there must be no other adequate remedy in a court." <u>Oljato Chapter of Navajo Tribe v. Train</u>, 515 F.2d 654, 663-64 (D.C. Cir. 1975) (internal quotations omitted). Because the AIPA includes its own review provision, and dictates which applications are eligible for that review, the APA does not provide an alternative avenue for review.

---

[4]   Contrary to plaintiff's arguments, the PTO does challenge the Court's jurisdiction under plaintiff's AIPA adjustment theory. <u>See</u> Document 17-2 at 4.

Finally, even if the APA could provide jurisdiction for plaintiff's complaint, the District of Columbia is the wrong venue. See 35 U.S.C. § 1 ("The [PTO] shall be deemed, for purposes of venue in civil actions, to be a resident of the district in which its principal office is located, except where jurisdiction is otherwise provided by law."). Because the PTO's principal office is located in Alexandria, Virginia, venue is not proper in the District of Columbia. See Boundy v. U.S. Patent and Trademark Office, No. 01-879, 2002 WL 32166534, at *1 (D.D.C. Oct. 2, 2002) (under the general venue provision for suits against the United States, venue for lawsuits against the PTO is proper in the Eastern District of Virginia and not in the District of Columbia). While 35 U.S.C. § 154(b)(4) specifically provides for jurisdiction and venue in this Court, the APA does not.[5]

## III. THE '311 PATENT HAS A 20-YEAR TERM AND IS NOT ENTITLED TO ANY EXTRA ADJUSTMENTS UNDER THE AIPA

As explained in Defendant's Motion, Congress twice amended the patent term statute, 35 U.S.C. § 154. The statute was amended first in 1994, with the GATT legislation, and then again in 1999 with the AIPA. See Document 13-1 at 11-16. Thus, there are three possible windows to consider when determining a patent's term based on application filing date: (I) pre-GATT legislation (term is 17 years measured from issue date as a matter of law with no term extension or adjustment provisions for PTO delay); (II) between the GATT legislation and the AIPA (term is 20 years measured from filing date as a matter of law with limited extensions available for certain PTO delays); and

---

[5]   The PTO notes that if plaintiff were directly challenging the PTO's calculation of the 1139-day extension properly given to the '311 patent under the GATT legislation, i.e, the category II extension, as opposed to seeking the additional AIPA adjustments, i.e., the category III adjustments, jurisdiction and venue would be proper for an APA action in the United States District Court for the Eastern District of Virginia.

6

(III) post-AIPA (20-year term with numerous adjustments available for a variety of PTO delays).  The following chart summarizes the three categories of patent terms:

| Application Filing Date | Resulting Patent Term | Extensions/Adjustments |
|---|---|---|
| (I) Before June 8, 1995 | 17 years from issue | Automatically entitled to a 20-year term from filing if its longer than 17-year term (§ 154(c)(1) (1994)) |
| (II) June 8, 1995 – May 28, 2000 | 20 years from earliest effective filing date | GATT legislation extensions for 3 specific reasons not including general PTO delay (§ 154 (b) (1994)) |
| (III) On or after May 29, 2000 | 20 years from earliest effective filing date | AIPA adjustments for additional reasons including general PTO delay (§ 154 (b)(1)(A) (1999)) |

Mapping the above chart to the specific facts of this case results in the following time line, which includes plaintiff's filing dates, as well as the dates of amendment to section 154.



A comparison of that time line to the preceding chart demonstrates that plaintiff's '311 patent is entitled only to a 20-year term with limited term extensions, because the '431 application was filed within the category II window.  The '431 application is a distinct patent application, filed after the applicability date of 35 U.S.C. § 154 (a)(2) (1994), i.e., June 8, 1995.  That fact, when assessed under the rubric of section 154(a)(2),

7

confirms that the '311 patent is only entitled to a twenty-year term and the limited term extensions provided by the GATT legislation.

### A.   THE '311 PATENT IS NOT ENTITLED TO A 17-YEAR TERM

Plaintiff's theory that his '311 patent is entitled to a 17-year term centers on his construction of the statutory phrase, "results from an application filed before [June 8, 1995]." See 35 U.S.C. § 154(c)(1) (1994) (emphasis added); Document 17-2 at 9-13. The defendant's position is that plaintiff's '311 patent resulted from the '431 application. Plaintiff argues instead that his '311 patent resulted from his earlier '202 application, which he abandoned, see A0615 ("[p]lease abandon the prior application"). Further, because the statutory phrase at issue contemplates that only a single application is involved, i.e., "result from an application" (emphasis added), plaintiff's construction means that his '311 patent results only from his earlier '202 application. Thus, while the defendant maintains that a patent results from the immediate application associated with it, plaintiff argues that a patent results from the first filed application related to the patent. Only one of two things can happen to a patent application: (1) it can be issued as a patent, or (2) it can be abandoned. See 35 U.S.C. §§ 131, 133. When the PTO allows an application, it issues only a single patent. Despite the principle that a patent cannot result from an abandoned patent application, plaintiff argues that a patent "results from" any earlier application it can claim "priority" to under 35 U.S.C. §§ 120 and 121.

Priority is a mechanism created by Congress that allows an inventor to show that a later-claimed invention was invented earlier. The effect of priority is simply to claim an invention date, i.e., a priority date, earlier than the filing date of one's current application. See Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1373 (Fed. Cir. 2005)

(explaining that a proper priority claim under 35 U.S.C. §§ 120 and 121, will provide an earlier date for assessing validity against the prior art).  Because plaintiff's '431 application claimed priority to his earlier '202 application, the later-filed application was examined only against "art" that had a date before the '202 application.  Thus, if the examiner had found evidence that someone else had invented plaintiff's computer mouse platform before the filing date of the '431 application, but after the filing date of the '202 application, the PTO would not have rejected plaintiff's application because of the priority claim to his earlier abandoned application.

Although plaintiff devotes much of his pleading discussing priority, there is no priority dispute in this case.  Plaintiff argues that the purpose of a priority claim supports his position that Congress did not mean to deny his '311 patent a 17-year term.  To the contrary, plaintiff's ability to make a priority claim, i.e., to file a new application with the effective date of an earlier application, is the very scenario that gave rise to submarine patents, a key reason behind Congress' elimination of the 17-year term.  See John F. Duffy, Rethinking the Prospect Theory of Patents, 71 U. Chi. L. Rev. 439, 491 (2004) (explaining that under the 17-year term, "[p]atent applicants had an incentive to file early to gain priority in the patent race, but then to delay issuance of their patents as long as possible to capture the larger rents associated with later periods of time.  Some of these so-called 'submarine' patents would surface decades after they were filed").

The statutory language itself evinces Congress' intent to use the filing date of the earlier application as the starting point for the new 20-year term:

> (2) Term.—Subject to the payment of fees under this title, such grant shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed in the

9

> United States <u>or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121</u>, or 365(c) of this title, from the date on which the earliest such application was filed.

35 U.S.C. § 154(a)(2) (1994) (emphasis added). Thus, in crafting the GATT legislation, Congress clearly understood how to refer to applications with priority claims under §§ 120 and 121, and clearly meant to start the patent-term clock with the filing dates of the earlier applications referenced under those sections. Section 154(a)(2) contemplates that a patent might be associated with the additional filing dates of any earlier applications to which the patent claimed priority under sections 120 and 121. Thus, Congress understood the distinction between a patent's application and the separate earlier applications to which the patent may have claimed priority to under sections 120 and 121.

Under plaintiff's theory, the very applications that concerned Congress would be entitled to a seventeen year term under section 154(c)(1). Section 154(c)(1) states:

> The term of a patent that is in force on or <u>results from an application filed before</u> [June 8, 1995] shall be the greater of the 20-year term as provided in subsection (a), or 17 years from grant, subject to any terminal disclaimers. (emphasis added).

To accept plaintiff's theory, that the "results from" language refers to any earlier application to which an application can claim priority, requires one to assume that in section 154(c)(1), Congress meant to undue what it just did in section 154(a)(2). Under plaintiff's construction, a 17-year term measured from issue date would be preserved indefinitely for all patents, in a family that could claim priority to any application filed before June 8, 1995. Thus, under plaintiff's theory, the 20-year term of section 154(a)(2) would not apply to the submarine patents Congress meant to stop with that section. Therefore, plaintiff's construction is fatally flawed.

10

As correctly construed, 35 U.S.C. § 154(c)(1) merely extends the terms of those 17-year patents that would benefit from the new 20-year term, but are not otherwise limited to such a term under section 154(a)(2) (i.e., category I patents). In other words, section 154(c)(1) is "remedial" only in the sense that it is the reverse of a grandfather provision in that it allows 17-year term patents (falling under category I) to take advantage of the new patent term. That construction is confirmed by the specific context in which the phrase "results from" is used. Plaintiff wrongly assumes that the phrase "results from" is specifying a relationship between a patent and an application. In fact, "results from" refers to the relationship between a patent <u>term</u> and an application. Section 154(c)(1) begins with the following language: "The term of a patent that is in force on or that results from an application filed before . . . shall be the greater of . . . ." The phrase "that results from" is referring back to the earlier phrase, "[t]he term," and not the earlier phrase "a patent." Further, Congress did not use the phrase "granted on" in section 154(c)(1) because the PTO does not "grant" particular "terms." Finally, the title of the subsection, "Continuation," refers to the continuation of <u>term</u>–confirming that the object of the language used in the subsection is patent term. Thus, in section 154(c)(1), Congress was referring to "[the term] that results from" a pre-June 8, 1995 application.

In sum, section 154(c)(1) has no effect on patent terms resulting from applications filed on or after June 8, 1995. The terms of such patents are <u>always</u> 20-year terms measured from the earliest claimed domestic priority date. There is nothing superfluous about section 154(c)(1) as properly interpreted by the PTO.

The following provision of the GATT legislation confirms that a post-June 8, 1995, application is not entitled to a seventeen-year term:

11

> The term of a patent granted on an application that is filed on or after [June 8, 1995] and that contains a specific reference to an earlier application filed under the provisions of section 120, 121, or 365(c) of title 35, United States Code, <u>shall</u> be measured from the filing date of the earliest filed application.

GATT legislation, § 534(c) (emphasis added). By its unambiguous language, section 534(c) requires all patents like plaintiff's, <u>i.e.</u>, those granted on applications filed after the GATT legislation effective date and with a reference to an earlier application, to have terms measured from the filing date of the earliest filed application. By setting the running of the term by the "filing date" rather than by the issue date, that section is fundamentally inconsistent with plaintiff's theory that his patent is entitled to a seventeen-year term.

Further evidence that Congress intended to cut off a later application's access to a seventeen-year term, where the earlier priority application was filed before the enactment of the GATT legislation, is reflected in Congress' authorization of provisional practices. Section 532(a)(2) of the GATT legislation states:

> (2) Provision of further limited reexamination and conditions of restriction requirements.—(A) . . .
>
> (B) The Commissioner of Patents and Trademarks shall prescribe regulations to provide for the examination of more than 1 independent and distinct invention in an application that has been pending for 3 years or longer as of [June 8, 1995], taking into account any reference made in such application to any earlier filed application under section 120, 121, or 365(c) of such title. The Commissioner may establish appropriate fees for such examination.

The purpose of section 532(a)(2) is to ensure that patent applicants, whose applications had been pending for more than three years when the GATT legislation was enacted, would not be disadvantaged by a subsequent restriction requirement, that might otherwise

12

cause them to file a divisional application <u>and lose entitlement to a 17-year term</u>.[6]  <u>See</u> <u>The Uruguay Round Agreements Act Statement of Administrative Action</u>, H.R. Doc. No. 103-316, at 1005-1006 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4298-99 (explaining that the purpose of the GATT legislation Sec. 532(a)(2) is to prevent the USPTO from forcing applicants into filing divisional applications if their original applications were already pending for three years when the GATT legislation was enacted); GATT legislation, § 102(d) (establishing that the Statement of Administrative Action shall be an authoritative interpretation of the GATT legislation in any judicial proceeding).  Under plaintiff's proposed construction, any applicant required to file a divisional application would not be disadvantaged, because the resulting patent would still be entitled to the longer of the 17- or 20-year terms, thereby eliminating the need for Section 523(a).  That construction must fail because it is inconsistent with the very existence of the GATT legislation, and it would render the latter section surplusage.  <u>See</u> <u>Qi-Zhuo v. Meissner</u>, 70 F.3d 136, 139 (D.C. Cir. 1995) (distinct statutory provisions in a single act must be interpreted so as to give meaning to both).

  Plaintiff repeatedly makes the argument that he disclosed his invention once, in the '202 application, and that as <u>quid</u> <u>pro</u> <u>quo</u> for that disclosure, he should be entitled to the 17-year patent term in effect at the time his '202 application was filed.  <u>See</u> Document 17-2 at 13.  Plaintiff goes so far as to assert that the specific term of his '431 patent raises Constitutional questions.  <u>See</u> <u>id.</u> at 17-18.  Patents and the operation of the PTO are

---

[6] 35 U.S.C. § 121 permits the PTO to restrict a patent application to a single invention, i.e., the PTO may issue a "restriction requirement" that requires an applicant who has claimed multiple inventions to pick one for examination.  Section 121 also permits an applicant who has received a restriction requirement an opportunity to pursue the additional invention(s) in a subsequently filed application called a "divisional" application, which is afforded "the benefit of the filing date," i.e., the priority, of the original application under section 120.

13

governed by statute. Plaintiff's attempt to argue policy must yield to the actual controlling laws passed by Congress. See McClurg v. Kingsland, 42 U.S. (1 How.) 202, 206 (1843) ("[T]he powers of Congress to legislate upon the subject of patents is plenary by the terms of the Constitution.").

Morever, plaintiff seems to misunderstand the quid pro quo theory. The hypothetical contract is not with the PTO, it is with the public. That is, in exchange for disclosing an invention to the public, a patentee gets exclusive right to that invention for a limited time. Thus, the disclosure that counts in the quid pro quo analysis is the disclosure to the public, not the applicant's disclosure of his invention to the PTO. Under the specific facts of this case, if plaintiff had never filed the '431 application, the '311 patent would never have issued and no public disclosure would have resulted.

Plaintiff's assumption that the Constitution entitles him to any particular patent term is also incorrect. The Constitution merely authorizes Congress to enact the patent laws. See id. (explaining that Congress may modify patent laws "at their pleasure"); Boyden v. Comm'r of Patents, 441 F.2d 1041, 1043 (D.C. Cir. 1971) ("No person has a vested right to a patent.") (citing McClurg, 42 U.S. (1 How.) at 206); In re Bergy, 596 F.2d 952, 958-59 (C.C.P.A. 1979) (cert. granted and appeal dismissed, Diamond v. Bergy, aff'd as to related case sum nom Diamond v. Chakrabarty, 447 U.S. 303 (1980) ("[T]he Constitution . . . neither gave to nor preserved in inventors . . . any rights and set no standards for the patentability of individual inventions; it merely empowered Congress, if it elected to do so, to secure to inventors an exclusive right for an unstated limited time for the stated purpose of promoting useful arts.") (internal quotes and footnotes omitted).

In short, the interpretation plaintiff urges this Court to adopt is not only inconsistent with the plain meaning of the statute, but is also inconsistent with other provisions of the GATT legislation, as well as the very purpose of the act. Contrary to plaintiff's position, the GATT legislation was not a "remedial" act intended to benefit patentees. See Merck & Co., 80 F.3d at 1547 ("The purpose of the [GATT legislation] was not to extend patent terms, although it has that effect in some cases, but to harmonize the term provision of United States patent law with that of our leading trading partners which grant a patent term of 20 years from the date of filing of the patent application.") The effect of the GATT legislation on patent terms is both clear and simple:

> Applications that were filed on or after June 8, 1995, have a twenty year term measured from the date of filing. All patents that were in force on June 8, 1995, or that issued on an application that was filed before June 8, 1995, have a term that is the greater of the twenty year term or seventeen years from the patent grant.

Golan v. Pingel Enter., Inc., 310 F.3d 1360, 1364, n.1 (Fed. Cir. 2002) (citing 35 U.S.C. 154(c)(1) (2000)).

### B.  THE '311 PATENT IS NOT ENTITLED TO THE AIPA ADJUSTMENT PROVISIONS

In addition to the 1139-day GATT extension already provided, plaintiff seeks an additional adjustment of 659 days to which he claims entitlement under 35 U.S.C. 154(b)(1)(A) (1999), which was enacted as part of the AIPA. See Document 17-2 at 28. The applicability provision of the AIPA is clear. It states that changes "shall apply to any application filed on or after the date that is 6 moths after the date of the enactment of this Act." AIPA, § 4405. Despite that clarity, plaintiff argues that the AIPA was remedial and so should liberally be construed to apply to his application. See Document 17-2 at 28.

Plaintiff also argues that the PTO's interpretation of the applicability provision in the AIPA renders the AIPA's effective date language superfluous. See id. at 30. Neither argument has merit.

Plaintiff confuses statutory "applicability" with "effectiveness." Section 4405 of the AIPA specifies the effective date and applicability of section 4402, the section that adds the patent term adjustment provisions at issue. Section 4405 states (emphasis added):

> SEC. 4405. EFFECTIVE DATE
>
> (a) Amendments Made by Sections 4402 and 4404.—The amendments made by sections 4402 and 4404 <u>shall take effect</u> on [May 29, 2000] and, except for a design patent application filed under chapter 16 of title 35, United States Code, <u>shall apply</u> to any application filed on or after [May 29, 2000].

Section 4405 establishes the effective date of the identified amendments, and it identifies the class of applications to which those amendments shall apply. The plain meaning of section 4405 is that section 4402 applies to applications filed on or after its effective date, May 29, 2000. Contrary to plaintiff's position, that construction renders neither part of section 4405 superfluous.

Section 4402, a subject of the section 4405 effective date provision, does not simply include provisions relevant to patent applications, it also directs the PTO to issue new regulations, and it provides for judicial review. See AIPA, § 4402(a) (adding 35 U.S.C. §§ 154(a)(3)(A) ("The Director shall prescribe regulations . . .") and 154(a)(4)(A) (providing judicial review in this Court)). The effective date language of section 4405 is necessary to trigger those provisions. Likewise, if section 4405 included only an effective date provision, there would be considerable confusion about whether it applies to

16

applications pending on its effective date.  There is nothing superfluous or ambiguous about section 4405.

Rather than propose a construction of section 4405 based on the language of that section, plaintiff suggests an applicability rule that distinguishes among the various types of patent term adjustments available.  Plaintiff argues that only those patent term adjustments in the AIPA that are measured from the filing date of the application are within the scope of the section 4405 applicability provision.  See Document 17-2 at 31-32.  No language in section 4405 supports plaintiff's theory.  The only reasonable meaning of section 4405 is that its applicability provision limits all the AIPA amendments to those applications filed on or after the AIPA's effective date.  See AIPA, § 4405 ("The amendments made by section[] 4402 . . . shall take effect on the date that is 6 months after the date of the enactment of this Act and . . . shall apply to any application filed on or after the date that is 6 months after the date of the enactment of this Act.").

Finally, plaintiff asserts that the PTO's rules that implement the AIPA, 37 C.F.R. §§ 1.701 and 1.702, are invalid because they "establish substantive rules" and go beyond the PTO's rule making powers under 35 U.S.C. § 2(b)(2)(A).  See Document 17-2 at 21-22.  Plaintiff fails to consider the actual language of the AIPA's amendments to 35 U.S.C. § 154.  Those amendments direct PTO to issue implementing regulations.  See § 154(b)(3)(A) (1999) ("The Director shall prescribe regulations establishing procedures for the application for and determination of patent term adjustments under this subsection.").  Even absent Congressional direction, plaintiff's argument fails because the PTO's regulations do not establish patent terms.  The PTO's regulations merely implement the statutory provisions for extending or adjusting patent terms, as a result of various

Congressionally-identified delays that may occur at the PTO. Thus, the PTO's general authority under 35 U.S.C. § 2(b), to issue rules governing proceedings before it, and the specific authorization in § 154(b)(3)(A)(1999), encompass rules 701 and 702, which do nothing more than control the manner in which the PTO extends and adjusts patent terms pursuant to 35 U.S.C. § 154.

**IV.   CONCLUSION**

Based upon the foregoing, defendant respectfully requests that the Court grant him judgment on all claims herein and dismiss plaintiff's complaint with prejudice.[7]

January 10, 2007                    Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar. #434122
Assistant United States Attorney


_____/s/_____
KAREN MELNIK, D.C. Bar #436452
Assistant United States Attorney
555 4th St, NW Rm E4112- Civil Division
Washington, D.C. 20530
(202) 307-0338

---

[7] To the extent plaintiff argues his complaint was sufficiently particular to put the PTO on notice of his legal theories, the defendant disagrees. The First Amended Complaint merely refers to "the reasons appearing in the whole record." See First Amended Complaint at ¶¶ 11-13. Plaintiff's reference to a record in excess of 800 pages, without particularly identifying his legal theories, is not adequate notice to avoid the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Neither the defendant nor this Court should have to scour the 800 page record for any and all legal theories plaintiff could raise.

OF COUNSEL:
JOHN M. WHEALAN
Solicitor

NATHAN K. KELLEY
WILLIAM LAMARCA
Associate Solicitors
U.S. Patent and Trademark Office
P.O. Box 15667
Arlington, VA  22215
(571) 272-9035