IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THOMAS D. SYKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06CV0829 (CKK) |
| | ) | |
| JON W. DUDAS, IN HIS OFFICIAL | ) | |
| CAPACITY AS DIRECTOR OF THE | ) | |
| UNITED STATES PATENT AND | ) | |
| TRADEMARK OFFICE, AN AGENCY IN | ) | |
| THE UNITED STATES DEPARTMENT | ) | |
| OF COMMERCE, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Nothing that Defendant has said in his opposition to Plaintiff's motion for summary judgment (Documents 21 and 22) indicates that Plaintiff is not entitled to the summary judgment that he seeks. To the contrary, the arguments that Defendant has advanced confirm the correctness of Plaintiff's position.

### I. Defendant's Persistent Contention that Plaintiff's Complaint Fails to State a Claim Is Frivolous

Defendant continues to contend that Plaintiff's First Amended Complaint was not sufficient to put the PTO on notice of Plaintiff's legal theories. Defendant asserts, "[t]he First Amended Complaint *merely* refers to 'the reasons appearing in the whole record.'" Defendant's Memorandum of Points and Authorities (1) in Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, Or, In the Alternative, for Summary Judgment and (2) in Opposition to

Plaintiff's Cross-Motion for Summary Judgment (Documents 21 and 22; hereinafter "Deft. Opp. Mem."), p 18.n.7 (emphasis added).

This assertion is plainly false. After describing (paras. 6-10 of the First Amended Complaint (Doc. 10)) the USPTO determinations with which he his dissatisfied, Plaintiff sets out his reasons "why" the USPTO's various determinations are, as alleged, "erroneous and unlawful" Paragraphs 11, 12, and 13 of the First Amended Complaint aver that the "reasons [are] set out in the Petition [Under 37.C.F.R. 1.182 Or In The Alternative Under 1.183] and the exhibits thereto," and that the reasons "appear[] in the whole record (including USPTO Serial Nos. 08/180,202 and 08/651,431)." A copy of that Petition, to which paragraphs 11, 12, and 13 of the First Amended Complaint expressly refer, is *attached to the Complaint* as Exhibit 4. That Exhibit is 23 pages long and reads like a legal brief.

Nothing else was required -- and considerably less would have been sufficient. *See, e.g., Kirksey v. Reynolds Tobacco Co.,* 168 F.3d 1039, 1041 (7th Cir. 1999) (Posner, C.J., stating that "[t]he courts keep reminding plaintiffs that they don't to [sic] have to file long complaints, don't have to plead facts, don't have to plead legal theories").

Moreover, this is a record review, not a case in which there were no antecedent administrative proceedings. Plaintiff's legal arguments were set out in detail in the administrative proceedings below. A0014 through A0036.

Finally, Defendant chose to move for summary judgment. He neither answered nor moved for more definite statement. That Defendant chose to file a summary-judgment motion by itself establishes that Defendant possessed sufficient information to enable Defendant to respond to Plaintiff's First Amended Complaint.

We thus see that it is both false and frivolous for Defendant assert that "[p]laintiff's reference to a record in excess of 800 pages, *without particularly identifying his legal theories*, is not adequate notice to avoid the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (Emphasis in original.)  Deft. Opp. Mem. 18 n.7.  We see that it is false and frivolous for Defendant to assert that "[t]he First Amended Complaint *merely* refers to 'the reasons appearing in the whole record'" and that "[n]either the defendant nor this Court should have to scour the 800 page record for any and all legal theories plaintiff could raise." *Ibid.* (emphasis added).  Finally, we see that it is frivolous for Defendant to seek dismissal of this case on the basis that Plaintiff's First Amended Complaint has failed to state a claim. *See* Rule 11, Fed. R. Civ. P.; 28 U.S.C. § 1927.

**II.  Under 35 U.S.C. § 154(c)(1), Plaintiff Is Entitled to a 17-Year Term from the Date of the Issuance of the '311 Patent Because That Patent "Results From" the '202 Application, Filed on January 11, 1994**

Plaintiff's arguments supporting his entitlement to a 17-year term, running from the date of issuance of the '311 patent, are set out in detail at pages 4 through 22 of his opening brief (Document 17-2).  Those  arguments will not be repeated in detail here.  Plaintiff will, however, respond to  the core points set out in Defendant's memorandum in opposition.

**A.**  Seeking to establish that Plaintiff's '311 patent does not "result from" the '202 application, Defendant argues that "[o]nly one of two things can happen to a patent application: (1) it can be issued as a patent, or (2) it can be abandoned." Deft. Opp. Mem. 8.

Not so.  An application can also be the necessary predicate for a continuation application, as was done here.  "A continuation is a second application for the same invention claimed in a prior nonprovisional application and filed before the original prior application

becomes abandoned or patented." *Biogen IDEC MA Inc. v. The Trustees of Columbia University in the City of New York,* 332 F. Supp. 2d 286, 292 (D. Mass. 2004) (quoting § 201.07 of the USPTO's Manual for the Prosecution and Examination of Patents). The '202 Application was a nonprovisional application. *See* A0613; A0621 through A0686; and A0693-A0694 (copy of '202 Application). The '431 Application was filed before the '202 Application was abandoned. See A0600; A0615. The '431 Application was a "continuation" and is addressed by 35 U.S.C. § 154(c)(1).

The '431 Application filed on May 22, 1996, in response to the USPTO's restriction requirement, states that it "elects the species drawn to Figures 1-5 [of the '202 Application] for prosecution in this application and presents certain claims drawn to that species." A0611. Translated, that means the '431 Application seeks the allowance of claims for the species of the invention shown in Figures 1-5 of the drawings contained in the '202 Application.[1]  *See generally Gerber Garment Technology, Inc. v. Lectra Systems, Inc.,* 916 F.2d 683 (Fed. Cir. 1990) (generally discussing restriction requirements under 35 U.S.C. § 121.).

The '311 patent "result[ed] from" the '202 application. The '311 Patent discloses the specification and drawings[2] that were presented in the '202 Application (filed January 11, 1994)

---

[1]  "Claims" are the part of the issued patent that define the scope of the monopoly granted by the patent. *See, e.g., Universal Oil Prod. Co. v. Globe Oil. & Refining Co.,* 322 U.S. 471, 485 (1944) ("The claim is the measure of the grant").

[2]  To be sure, the drawings included in the '311 Patent have been refined and now incorporate printed reference numbers. *See* A0108 (requiring "corrected [refined] drawings"). The only change to the "specification" of the patent is found in the introductory sentence of the '431 Application: "This application is a divisional of U.S. patent application Ser. No. 08/180,202, which was filed on Jan. 11, 1994" – a recital that was required by 35 U.S.C. §§ 120 and 121. Indeed, no change in the disclosures made by '202 Application was permitted if the '311 Patent was to retain the benefit of the earlier filing date of the '202 Application. *See* 35 U.S.C. § 120. (continued...)

– and none other. The '311 Patent provides protection for the invention disclosed in the '202

Application – and none other. The scope of the claims granted (and permitted to be granted) by

the '311 Patent was entirely determined by – and limited to -- the disclosures made in the '202

Application – and none other. *See Universal Oil Prod. Co. v. Globe Oil. & Refining Co.,* 322

U.S. at 484 (noting that disclosure of the invention – sufficient to enable one to practice the

invention one the period of monopoly has expired -- is the *quid pro quo* for the monopoly

provided by a patent). The '431 Application – entitled "Preliminary Amendment for

Divisional Application" -- contained no new disclosures; it merely references the invention

disclosed in the '202 Application. Because the '431 Application was directed solely at the

invention disclosed in the '202 Application, Plaintiff was not required to sign or execute the '431

Application under penalty of perjury – a requirement for the original '202 Application. *See* 35

U.S.C. § 121; A0665-A0665 (Declaration of Thomas D. Sykes, executed in support of the '202

Application).[3]

"The *quid pro quo* which supports the patent grant is the requirement of a full *disclosure*

regarding the invention; *indeed the very purpose of the patent system is to encourage*

_____

[3]  In the USPTO proceedings respecting the '311 Patent, the Board of Patent Appeals and
Interferences (BPAI) issued a directive that further confirms that the patent coverage granted in
the '311 Patent results from the disclosures made in the Parent Application. In its opinion issued
on October 30, 2001, the BPAI directed the USPTO examiner to "determine whether any of the
above-listed claim language [addressed by the BPAI in its opinion] was not disclosed in the
application as filed." A0246. The examiner evidently satisfied himself that there was no failure
to disclose with respect to the claims that the BPAI approved. In that the Divisional Application
made no new disclosures, the issuance of the '311 patent (in the wake of the BPAI's directive)
confirms that all of the claims in the '311 Patent are based upon the disclosures made in the
Parent Application. *See generally Reiffin v. Microsoft Corp.,* 214 F.3d 1342, 1346 (Fed. Cir.
2000) (discussing the use of disclosures made in an ancestor application to obtain the benefit of
the earlier filing date of the ancestor application).

*disclosures*." *A.F. Stoddard & Co. Ltd. v. Dann*, 564 F.2d 556, 563 (D.C. Cir. 1977) (Markey, J.,

sitting by designation) (emphasis added). *See also University of Rochester v. G .D. Searle &*

*Co., Inc.*, 358 F.3d 916, 922 (Fed. Cir. 2004) ("The 'written description' requirement serves a

teaching function, as a 'quid pro quo' in which the public is given 'meaningful disclosure in

exchange for being excluded from practicing the invention for a limited period of time'");

*Universal Oil Prod. Co. v. Globe Oil. & Refining Co.,* 322 U.S. at 484 (noting that disclosure of

the invention is the *quid pro quo* for the monopoly provided by a patent).

    In sum, disclosure is exchanged for a Government-granted monopoly.  The '311 Patent

was awarded by the United States of America *in exchange for* – as specific a "result of" -- the

disclosure made by the '202 Application.  Sadly, Defendant (and the USPTO and the

Department of Justice) appear to be doing everything they can to break the fundamental

commitment made to Plaintiff when he made his disclosure in January 1994:   that if he

disclosures of a useful, novel, and nonobvious device or process to the public by way of a patent

application, the United States of America will, in exchange for that wholly voluntary act, provide

the inventor with a monopoly that runs for 17 years from the date of the issuance of the patent

granting the monopoly.

    **B.**   Defendant's memorandum makes no attempt to refute the argument, set out in

Plaintiff's opening brief (Pltf. Mem. 14-15), that his position renders 35 U.S.C. §154(c)(1)

superfluous.  That is, Plaintiff contended that it would have been simple for Congress to dictate

the result for which Defendant contends, had Congress intended that:  Congress could have

simply enacted § 534(b)(1) of the Uruguay Agreements legislation -- and stopped there.  That

legislation provides that "the amendments made by section 532 take effect on [June 8, 1995] and

shall apply to *all* patent applications *filed* in the United States on or after the effective date" of

the legislation. (Emphasis added.) This short sentence, when read in conjunction with 35 U.S.C. § 154(a)(2), would have made a 20-year term applicable to Plaintiff's '311 patent – the result for which Defendant contends.

But Congress did not stop with § 534(b)(1); instead, it also enacted 35 U.S.C. § 154(c)(1) – a transition rule that uses a phrase ("results from") that is highly uncommon in the patent statutes. Defendant's failure to offer any explanation why Congress did not simply enact § 534(b)(1) of the Uruguay Agreements legislation -- and stop there – is telling.

**C.** Defendant's attempt to explain why Congress chose to use the phrase "results from" in 35 U.S.C. § 154(c)(1), rather than the pervasive statutory phrases, "granted on" or "issued on,"[4] is unpersuasive. In fact, § 154(c)(1) itself refers to the "grant" of a patent.

Putting aside the fact that Defendant misquotes § 154(c)(1) on page 10 of its memorandum (by omitting from his block quote the "that" that appears immediately before the critical phrase "results from"), Defendant reads this key statute as having *two* separate nouns (or subjects) that are modified by a subsequent phrase. According to Defendant, the first noun that is modified (by the first element of the subsequent phrase) is *term.* The second noun that is modified (by the second element of the subsequent phrase) is *patent.* Deft. Opp. Mem. at 11 (emphasis added).

---

[4]    *See* 35 U.S.C. § 102(e)(2) (referring to a "patent granted on an application"); 35 U.S.C. § 119(a) (referring to a patent "granted on any application"); 35 U.S.C. § 121 (referring to patents "issuing on" an application); § 534(b)(3) of the Uruguay Agreements legislation (set out at page 7 of Plaintiff's opening brief, and addressing *how* the 20-year term is measured for purposes of applying transition rules to patents "granted on" a divisional or continuation application).

The reading is unnatural. The subsequent phrase is continuous ("that is in force on or that results from an application filed before [June 8, 1995]"). This continuous phrase follows immediately on the heels of the word "patent." Under Defendant's reading the second element of this phrase must skip over the noun/subject "patent" before attaching itself to (i.e., modifying) the noun/subject "term." That "skip-over" is capricious and violates the parallelism that is obvious from the phrase's use, twice, of "that." Both of these "that elements" of the phrase should modify the noun and subject – "patent" -- that is present immediately before the phrase.

That Defendant feels compelled to engage in these verbal gymnastics demonstrates, at least, that the statue is ambiguous. Ambiguity is fatal to Defendant's position: several rules of statutory construction require this remedial transition rule to be liberally construed in Plaintiff's favor. See Plaintiff's opening brief (Document 17-2) at 16-19.

**D.** Defendant also asserts that "the title of the subsection, 'Continuation,' refers to the continuation of term -- confirming that the object of the language used in the subsection is patent term." Deft. Opp. Mem. 11 (emphasis in original).

That is a stretch. A "continuation" is a term of art in the patent arena. It is a type of patent application. "A continuation is a second application for the same invention claimed in a prior nonprovisional application and filed before the original prior application becomes abandoned or patented." *Biogen IDEC MA Inc. v. The Trustees of Columbia University in the City of New York,* 332 F. Supp. 2d 286, 292 (D. Mass. 2004) (quoting § 201.07 of the USPTO's Manual for the Prosecution and Examination of Patents). Section 154(c)(1) addresses the term of patents issued before June 8, 1995, or patents issued on (or granted on) on an application that is a continuation of an application filed before June 8, 1995.

The Congressional intent that appears behind § 154(c)(1) can be understood best if one

considers the type of "continuations" that exist:

> **[b] Continuation Applications – Improvements.**  An application filed during
> the pendency of a prior application can gain the benefit of a prior application's filing date
> if it meets Section 120's four conditions:  disclosure continuity, cross-referencing,
> copendency, and inventorship.  The benefit of an earlier application's filing date may
> serve to avoid prior art references or statutory bars or establish invention priority in an
> interference.
>
> [i]  *Types.*  A continuation application carries forward identically a prior
> application's disclosure.  It may be used to secure further examination if some or all
> claims are under final rejection and the application does not wish to pursue an appeal or
> wishes to add or amend claims.
>
> A continuation-in-part ("CIP") application repeats a substantial part of a prior
> application and adds new matter.  A CIP may be used to add improvements developed
> after a prior application's filing date or to overcome insufficient disclosure problems.  A
> CIP application (or patent issuing thereon) may have two effective filing dates, one for
> the originally disclosed material and one for new matter.  Claims dependent upon the new
> matter are entitled only to the later CIP filing date.

Donald S. Chisum and Michael A. Jacobs, *Understanding Intellectual Property Law,* § 2D[4][b],

p. 2-180 (1992) (copy attached as page 23a).

Good reason therefore appears for Congress to have chosen the phrase "results from" in §

154(c)(1).  If protecting legitimate expectations is the function of a transition rule, not all types

of continuation applications should qualify for favorable treatment under the transition rule

found in § 154(c)(1).  Continuation-in-part applications include disclosures that go beyond the

disclosure made in the original application.  If a continuation-in-part application is filed as a

follow-on to an application filed before June 8, 1995, the patent granted on that continuation-in-

part application should qualify for the favorable grandfather treatment provided by § 154(c)(1) –

but only to the extent that the granted patent "results from" the disclosures made in original

application.  If, on the other hand, the patent is granted on a continuation application (which

"carries forward identically a prior application's disclosure"), the patent granted in exchange for

the disclosure plainly "results from" an application filed before June 8, 1995, so favorable

grandfather treatment should be available. Attempting to tailor the transition rule to legitimate

expectations, Congress had good reason to use the "results from" phrase in § 154(c)(1).

Thus, we have seen that Defendant again tortures the text of the statute when he asserts

that "the title of [§ 154(c)(1)], 'Continuation,' refers to the continuation of <u>term</u> -- confirming

that the object of the language used in the subsection is patent term." Deft. Opp. Mem. 11

(emphasis in original).

**E.** Defendant argues that Plaintiff's reading of 35 U.S.C. § 154(c)(1) "requires one to

assume that in section 154(a)(1), Congress meant to undue [sic] what it just did in section

154(a)(2) [i.e., to provide for patents to have a 20-year term rather than a 17-year term]." Deft.

Opp. Mem. 10. See also *ibid.* at 9 (stating that "plaintiff's ability to make a priority claim, i.e., to

file a new application with the effective date of an earlier application, is the very scenario that

gave rise to submarine patents, a key reason behind Congress' elimination of the 17-year term"[5]).

Of course, a transition rule *always* yields results that are at odds with the new statutory

regime. Transition rules are designed to protect reasonable expectations of persons who

otherwise would be adversely affected by the move away from the old regime. That Congress

had an intention to move the patent system away from 17-year terms, and toward 20-year terms,

tells us nothing about the specific meaning of § 154(c)(1).[6] The Supreme Court has aptly

---

[5]    It should be noted that this characterization of Plaintiff's argument – as an argument that
"make[s] a priority claim" – is 180 degrees opposed to Defendant's argument a few sentences
earlier: "there is no priority dispute in this case." Deft. Opp. Mem. 9. Again, we have a display
of verbal gymnastics – but surely no "10.".

[6]    Defendant evidently does not see the irony that attends its discussion of "submarine patents."
In the case at hand, the USPTO did not issue the '311 patent until November 8, 2005 – almost
9.5 years after plaintiff filed his continuation in May 1996. If the USPTO wanted to accelerate

(continued...)

observed that the "application of 'broad purposes' of legislation at the expense of specific

provisions ignores the complexity of the problems Congress is called upon to address and the

dynamics of legislative action." *Board of Governors of Federal Reserve System v. Dimension*

*Financial Corp.*, 474 U.S. 361, 373-74 (1986).

**F.** Defendant contends that "section 154(c)(1) is 'remedial' only in the sense that it is

the reverse of a grandfather provision in that it allows 17-year term patents . . . to take advantage

of the new [20-year] term." Deft. Opp. Mem. 11. This (remarkable) sentence seems to assert

that an inventor with a 17-year patent (because it was granted on an application filed before June

8, 1995) is entitled to a 20-year term, if that term is greater – but no other relief is provided by

the transition rule.

Plaintiff certainly agrees that § 154(c)(1) displays remarkable generosity toward

inventors who received patents June 8, 1995: it allows them to have either a 17-year term or a

20-year term, whichever is greater -- going well beyond the expectations existing on the original

filing date, when disclosure of the invention was made.

Plaintiff disagrees, however, with Defendant's position that Congress intended not to

protect the original-filing-date expectations of inventors who (a) filed an original application

before June 8, 1995 and (b) received a patent granted upon a related continuation application

filed on or after June 8, 1995. Defendant posits that Congress, in a single breath, intended to (1)

go well beyond protecting the original-filing-date expectations of the first class of inventors

addressed by the statute and (2) severely undercut the original-filing-date expectations of the

_____

the termination of the monopoly provided by a 17-year term, it should have accelerated its
handling of the continuation.

second class of inventors addressed by that same statute. A view that finds it necessary to attribute such incoherence to Congress is itself incoherent.

      **G.**   In sum, as the Supreme Court and Federal Circuit have held, disclosure is made as a *quid pro quo* for a Government-granted monopoly. The '311 Patent was awarded by the United States of America *in exchange for* – and thus "result[ed] from" -- the disclosure made by the '202 Application. Accordingly, § 154(c)(1), a transition rule that is designed to protect the reasonable expectations of inventors, and that must be liberally construed in Plaintiff's favor, entitles Plaintiff to a 17-year term, running from the date of the grant of the '311 patent.[7]

### III. Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction Is Meritless

      **A. Jurisdiction Exists under § 154(b)(4).**  Defendant argues that there is no subject-matter jurisdiction under § 154(b)(4). Deft. Opp. Mem. 2-6. Specifically, Defendant points out that § 154(b)(4) was enacted in 1999 as § 4402 of the American Inventors Protection Act of 1999, Pub. L. 106-113, 113 Stat. 1501 (hereinafter the "AIPA"). Deft. Opp. Mem. 3. Defendant also points out that § 4405 of the AIPA applies to "any application filed on or after the date that is 6 months after the date of the enactment of this Act." *Ibid.*

---

[7]   Defendant concludes its argument regarding § 154(c)(1) by setting out a block quote from *Golan v. Pingel Enter., Inc.,* 310 F.3d 1360, 1364 n.1. Def. Opp. Mem. 15. That quote, taken from a footnote to the "Background" portion of the opinion, is pure dicta. The case could not have addressed the issue presented in the case at bar because those patents were issued long before June 8, 1995. The quote cites only the statute – nothing else – and it makes no effort to discuss the use of the uncommon phrase "result[ing] from" (as opposed to "granted on" or "issued on"). For all we know, the quote may simply have been lifted out of a brief, for background purposes. The quote simply *assumes* that all three of these phrases are synonymous. That Defendant would make this block quote the pinnacle of its argument as to the meaning of § 154(c)(1) confirms the vacuity of its technical analysis.

Defendant's view that judicial review is not available under § 154(b)(4) because

Plaintiff's continuation was filed before May 29, 2000, is incorrect, for a combination of reasons.

First, a careful reading of the effective date provision governing § 4402 of the AIPA

(which enacted § 154(b)(4)) is required.  In pertinent part, that provision states as follows (italics

added):

### Sec. 4405.  EFFECTIVE DATE.

(a) AMENDMENTS MADE BY SECTIONS 4402 AND 4404.— *The amendments made by sections 4402 and 4404 shall take effect on the date that is 6 months after the date of the enactment of this Act and*, except for a design patent application filed under chapter 16 of title 35, United States Code, shall apply to any application filed on or after the date that is 6 months after the date of the enactment of this Act.

But the interpretation of § 4405(a) to which Defendant adheres completely ignores the first

clause of § 4405(a) – all of the italicized words of the statute that appear before the word "and."

Instead, Defendant relies entirely upon the words that follow the word "shall."  *See* Deft. Opp.

Mem. 3 (stating that "[s]ection 154(b)(4) was added to Title 35 in 1999, by section 4405 [sic] of

the AIPA, four years after plaintiff filed his '431 application" and that § 154(b)(4) "does not

apply to previously filed applications").  Defendant's reading of the statute is selective and

incomplete – and it does not account for the presence of the italicized language.  Of course, a

statutory interpretation that renders a part of the statue superfluous is disfavored.  *See, e.g.,*

*Duncan v. Walker,* 533 U.S. at 174-175 (observing that this is a cardinal rule of statutory

construction).

Defendant's construction of § 4405(a) is dubious for a second reason as well.  statutes

that have a remedial purpose are to be liberally construed in favor of the intended beneficiaries.

*See, e.g., State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 53, 533 (1967) (remedial statutes

are to be liberally construed in favor of the beneficiary); *SEC v. C. M. Joiner Leasing Corp.*, 320

U.S. 344, 353 (1943) (same); *Fleisher Engineering & Construction Co. v. United States,* 311

U.S. 15, 18 (1940) (same). This is especially true for statutes that have implications for rights

that are of Constitutional dimension (i.e., rights under the Due Process and Takings Clauses and

rights under the Promotion of the Useful Arts Clause).

The USPTO has issued regulations that interpret § 4405(a), but they actually tend to

*undercut* Defendant's position. 37 C.F.R. § 1.702(f) addresses the effective date of the AIPA

legislation, and provides that "the provisions of this section and §§ 1.703 through 1.705 apply

only to original applications, except applications for a designed patent, filed on or after May 29,

2000, and all patents issued on such applications."

Notably, §§ 1.702 through 1.705 make no mention of judicial review. *Cf.* 37 C.F.R.

§§1.301 through 1.304 (setting out rules for bringing various civil actions). This omission from

§§ 1.702 through 1.705 may suggest that the USPTO views judicial review provided by §

154(b)(4) as *not* limited to applications filed on or after May 29, 2000 – a view that is not at all

surprising in light of the ambiguity of § 4405 and the rules of statutory construction that are

applicable in resolving that ambiguity. .

In addition, policy reasons suggest that § 4405(a) should not be read in the way that

Defendant suggests. It surely is very unlikely that Congress intended that the effective-date

provision of § 4405(a) should be read to provide for judicial review of the USPTO's term-

extension decisions only with respect to applications filed on or after May 29, 2000. After all,

term-extension decisions under former § 154(b) were rendered on applications filed after June 8,

1995. (Indeed, such a decision was rendered here. A0107 and A0006.) What reason could

- 14 -

Congress possibly have for limiting judicial review of term-extension decisions to applications filed on or after May 29, 2000?[8]

More likely, Congress intended that the last element of § 4405(a), upon which Defendant relies, apply only to certain *substantive rules for term extensions*, as set out in § 154(b) as amended by AIPA (and as discussed in our opening brief at pages 27-35). There simply was no reason for Congress to have provided for judicial review in the District Court for the District of Columbia for aggrieved applicants who filed their applications on or after May 29, 2000, but to deny judicial review in that Court to applicants who filed their applications before that date.

While Plaintiff acknowledges that the text of § 4405(a) is far from clear, Plaintiff submits that applicable rules of statutory construction and policy considerations indicate that the Court does have in fact have jurisdiction under § 154(b)(4).[9]

**B.  In any Event, Jurisdiction Exists under 28 U.S.C. §§ 1331 and 1338(a) and the Administrative Procedure Act.**  The Court need not reach the jurisdictional issue under § 4405, however, for subject-matter jurisdiction is plainly conferred by  28 U.S.C. §§ 1331 and 1338(a) and by §§ 702-706 of the Administrative Procedure Act (APA) (5 U.S.C.). *See, e.g., Star Fruits S.N.C. v. United States,* 393 F.3d 1277, 1281 (Fed. Cir. 2005) (reviewing, under the

---

[8]    An attempt to cutoff stale proceedings cannot have been the reason.  Under an application filed, say, on May *28*, 2000, the proceeding might very well be commenced before a similar proceeding commenced with respect to an application filed May 30, 2000.  Moreover, a six-month time limit for commencing proceedings is built into § 154(b)(4) – a time limit that Plaintiff has fully complied with.

[9]    Plaintiff would observe that § 154(b)(4) functions, as a practical matter, as a venue statute as well, as discussed in the part of the brief that follows.

APA, a challenge involving the Director's duties during the course of examination; jurisdiction found "under 28 U.S.C. § 1338(a)").

        **1. There was agency action and is a real controversy.**  Defendant argues that "the APA does not provide a cause of action because there is no agency action to challenge under plaintiff's 17-year term theory."  Further, Defendant argues that Plaintiff's "17-year term theory does not amount to a real controversy."  Deft. Opp. Mem. 4.

        Plaintiff has refuted this argument in his opening brief, at pages 23 through 26.  Again, the record shows that the USPTO Decision on Petition for Patent Term Adjustment, dated July 11, 2006, concluded that "[s]ince the above-identified application was filed after June 8, 1995, on May 22, 1996, it is not eligible for a 17-year patent term by the clear terms of the statute." A0008.  That Determination was not made by some low-level employee; rather, it was made by a Senior Legal Advisor, Office of Patent Legal Administration, Office of the Deputy Commissioner for Patent Examination Policy.  *Ibid.*  As part of the USPTO's file, that letter will be available to any member of the public – particularly to persons or entities who might be performing a due-diligence inquiry before negotiating for an assignment of or license to the '311 Patent.[10]

        The '311 Patent itself shows that the USPTO determined that Plaintiff is not entitled to a 17-year term.  That patent (attached to the Complaint as Exhibit 1), on its first page, contains the following "Notice":  "Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1139 days."  The USPTO has taken a position on the face of the

---

[10]  Obviously, the two critical elements in placing a value on a patent are (a) the scope of the claims provided by the grant and (b) the duration of the monopoly provided by the grant.

issued '311 Patent, for all the world to see, that a 20-year term, not a 17-year term, is applicable.[11]

If this high-visibility determination were not enough, the USPTO issued on August 12, 2004, with respect to Plaintiff's '311 patent, a "Determination of Patent Term Extension under 35 U.S.C. 154(b) (application filed after June 7, 1995 but prior to May 29, 2000)" A0107. This Determination was thus expressly keyed to the effective date of the Uruguay Agreements legislation – legislation that, the USPTO contends, gives Plaintiff a 20-year term and not a 17-year term. This Determination stated that "[a]ny patent to issue from the above-identified application will include an indication of the 1139 day extension on the front page [of the patent]." A0107. This Determination document, having concluded that Plaintiff was entitled to a 20-year term, as extended by 1139 days, *necessarily* determined that Plaintiff was not entitled to a 17-year term. Either a 20-year term or a 17-year term applies to a patent -- not both. Every determination that a 20-year term is to be adjusted by some number of days is necessarily a determination that a 17-year term is not available. The two determinations are inextricably intertwined.

**2. Defendant's Suggested "Remedy" Is Meritless.** Defendant argues that jurisdiction does not exist because that "like all patentees, if plaintiff is concerned with the contents of his patent, he can seek a reissue patent or a certificate of correction" and "[h]e has sought neither." Deft. Opp. Mem. 2.

----

[11]    The version of 35 U.S.C. § 154 that existed before the Uruguay Agreements legislation was enacted in late 1994 did not provide for any extension or adjustment of a term by 1139 days. Under that regime, the 17-year clock began to run from the day of the issuance of the patent, so there is no need to extend or adjust the term for delays that are attributable to the USPTO.

The suggestion is astonishingly disingenuous. Plaintiff spent about 9.5 years seeking a patent for a relatively simple (but definitely nonobvious) mechanical device before he was awarded a patent. The USPTO has already issued Determinations (A0006, A0107) that specifically address the 17-year term argument that was fully developed before the USPTO (at A0014 through A0036). Of course, the USPTO has filed extensive briefs before this Court attempting to demonstrate that Plaintiff's arguments for a 17-year term are meritless. The 17-year issue is fully developed and ripe for resolution by this Court.

**3. Summary.** There is very real agency action here, and a very real controversy. Accordingly, subject-matter jurisdiction was conferred by 28 U.S.C. §§ 1331 and 1338(a) and by §§ 702-706 of the APA. *See, e.g., Star Fruits S.N.C. v. United States,* 393 F.3d 1277, 1281 (Fed. Cir. 2005) (reviewing, under the APA, a challenge involving the Director's duties during the course of examination; jurisdiction found "under 28 U.S.C. § 1338(a)"). Defendant's arguments to the contrary are meritless.

## IV. Defendant's Improper-Venue Objection Is Meritless and, in Any Event, Was Waived.

Defendant now contends, for the first time, that "the District of Columbia is the wrong venue," even while it acknowledges that 35 U.S.C. § 154(b)(4) specifically provides for this Court to have jurisdiction and venue over challenges to term-extension decisions rendered by the USPTO. Deft. Opp. Mem. 6. Defendant contends that since jurisdiction, if it exists, must be predicated upon the APA (and not upon § 154(b)(4)), and since the USPTO's principal office is located in Alexandria, Virginia (not the District of Columbia), venue is proper only in the U.S. District Court for the Eastern District of Virginia.

First, § 154(b)(4), enacted in 1999, reflects a determination by Congress that venue for actions seeking a review of term-extension requests must take place in the District Court for the District of Columbia. That provision put this Court in the squarely business of addressing the term-extension disputes. This statute is very specific – both as to the type of dispute and as to the appropriate forum. General provisions as to venue must give way to this highly-specific statute.

Second, even if § 154(b)(4) does not establish venue in this Court, Defendant has waived its venue objection by filing a motion to dismiss for failure to state a claim (Document 13-1) but not joining with motion its purported improper-venue defense. Fed. R. Civ. P. 12(g), (h)(1).

Finally, if the Court somehow views the improper-venue defense as both viable and not waived, Plaintiff respectfully requests that the Court, in the interests of justice, transfer this case to the Eastern District of Virginia under the provisions of 28 U.S.C. § 1406(a).

### V.  Defendant's Refusal to Make the '202 File Part of the Administrative Record Requires, at a Minimum, that Adverse Evidentiary Inferences Be Drawn against Defendant

Defendant stubbornly refuses to file the entire administrative record. That is, Defendant has refused to file the portion of the record that was generated in the wake of the '202 Application, before the continuation was filed.

In paragraphs 11, 12, and 13 of the First Amended Complaint (Document 10), Plaintiff specifically identified USPTO Serial Nos. 08/180,202 and 08/651,431 as being part of the "whole record" in this case.

On October 13, 2006, Plaintiff served a document request that sought, in Request No. 1, the "whole record before the United States Patent and Trademark Office (USPTO) with respect

to the proceedings before the USPTO that led to or followed the issuance of U.S. Patent No. 6,962,311 B1, issued on November 8, 2005, including the record generated or kept with respect to Serial Nos. 08/180,202 and 08/651,431." In Request No. 2, Plaintiff sought, to the extent not produced in response to Request No. 1, "all files . . . generated or kept by the USPTO or its employees during its examination and consideration of USPTO Serial Nos. 08/180,202 and 08/651,431, including files and records generated or kept by the examiners or supervisors assigned to USPTO Serial Nos. 08/180,202 or 08/651,431." A copy of that document request is attached to the instant memorandum (page 23f).

Eleven days later, on October 24, 2006, Defendant responded with a short letter that refused to honor the request for production because it "is premature."[12] The letter stated that the Government intends to file a motion to dismiss or for summary judgment, and "[w]ith that filing, or in advance thereof, the government will filed the entire administrative file via ECF." A copy of the Department of Justice's letter is attached to the instant memorandum (page 23j).

That administrative record that Defendant filed in this matter (Document 12), however, did not and does not include serial no. 08/180,202 – commonly known as the "'202 file." Defendant admits that only the file pertaining to the '431 file was filed with the Court. Deft. Mem. 2. n.2 (Document 13-1).

On December 13, 2006, in Plaintiff's opening brief (Document 17-2), at note 1, Plaintiff noted that Defendant had filed only serial no. 08/651,431 – the file pertaining to the '431 application. Plaintiff further noted that "Defendant is not permitted to shield certain aspects of

---

[12] The discovery sought by Plaintiff was not premature. It was permissible under LCvR 26.2(a)(1).

the record from the Court." Plaintiff respectfully requested that the Court "order Defendant to file, forthwith, the record pertaining to the '202 Application." *Id. See also id.* at n.5.

Defendant has ignored Plaintiff's entreaties. It ignored the identification of the record specifically made in the First Amended Complaint. It declined to provide anything in response to Plaintiff's discovery request. It ignored the specific request made in Plaintiff's opening brief.

Moreover, Defendant has a duty to make the administrative record filed with the Court complete – and it has implicitly represented to the Court that the record is complete. (Document 12.) It also had a duty to respond to Plaintiff's discovery.

Defendant's refusal to produce the '202 file would appear to be sanctionable. There is no reasonable excuse for Defendant's obstinacy. At a minimum, the Court should draw adverse evidentiary inferences against Defendant. As stated in *McCormick's Handbook of the Law of Evidence*, § 272, p. 656 (1972) (footnotes omitted):

> Where it would be natural under the circumstances for a party to call a particular witness, or to take the stand himself as a witness, or voluntarily to produce documents or other objects in his possession as evidence, and he fails to do so, tradition has allowed his adversary to use this failure as the basis for invoking an adverse inference.

**VI. If Plaintiff Is Not Entitled to a 17-Year Term, He Is, in the Alternative, Entitled to Additional Adjustments to the 20-Year Term for the Egregious Delays Occurring Before the Examiner**

Plaintiff set out his views on this issue in detail in his opening brief, at pages 27-35, and he will not repeat them here.

One point raised by Defendant that does requires a response, however, is Defendant's contention that the USPTO's regulations, under 37 C.F.R. §§ 1.701 and 1.702, are valid "because

they do nothing more than control the manner in which the PTO extends and adjusts patent terms pursuant to 35 U.S.C. § 154." Deft. Opp. Mem. 18.

A regulation that does what Defendant says these two regulations do is a *substantive* regulation. The USPTO is not permitted to write substantive regulations. *See* 35 U.S.C. § 154(b)(3)(A) (1999) (providing that "The Director shall prescribe regulations *establishing procedures* for the application for and determination of patent term adjustments under this subsection").

Of course, nothing could be more substantive, and less procedural, than the length of a patent term. Accordingly, 37 C.F.R. §§ 1.701 and 1.702 are not entitled to deference to the extent that they establish rules that determine the term of a patent.

## CONCLUSION

Plaintiff's motion for summary judgment should be granted. That is, Plaintiff has demonstrated that he is entitled to a patent term of 17-years (running from the date of issuance) with respect to the '311 Patent because that Patent was granted in exchange for – and thus "result[ed] from" -- the disclosures made in his '202 Application, filed January 11, 2004. The transition rule found in 35 U.S.C. § 154(c)(1), which must be liberally construed in Plaintiff's favor, entitles Plaintiff to a 17-year term for his '311 patent.

In the alternative, if Plaintiff is held not to be entitled to a 17-year term, the egregiously delayed '311 Patent should have a 20-year term extended by 1798 days.

Respectfully submitted,

___/s/___*Thomas D. Sykes*_____
THOMAS D. SYKES, Pro Se
239 Surrey Lane
Lake Forest, IL  60045
Tel:  (312) 984-7530
Fax:  (312) 984-7700
Email:  tsykes@mwe.com
DC Bar No. 461071

Dated:  January 25, 2007



# UNDERSTANDING INTELLECTUAL PROPERTY LAW

by

**DONALD S. CHISUM**

and

**MICHAEL A. JACOBS**

LEGAL TEXT SERIES

1992

 **Matthew Bender**

**Times Mirror Books**

—23a—

and designating various claims in A, B and C's applications as corresponding to the count.[428]

[b]  **Continuation Applications—Improvements.** An application filed during the pendency of a prior application can gain the benefit of the prior application's filing date if it meets Section 120's four conditions: disclosure continuity, cross-referencing, copendency, and inventorship.[429] The benefit of an earlier application's filing date may serve to avoid prior art references or statutory bars[430] or establish invention priority in an interference.[431]

[i]  *Types.* A continuation application carries forward identically a prior application's disclosure. It may be used to secure further examination if some or all claims are under final rejection and the applicant does not wish to pursue an appeal or wishes to add or amend claims.[432]

A continuation-in-part ("CIP") application repeats a substantial part of a prior application and adds new matter. A CIP may be used to add improvements developed after a prior application's filing date or to overcome insufficient disclosure problems.[433] A CIP application (or patent issuing thereon) may have two effective filing dates, one for originally disclosed material and one for new matter.[434] Claims dependent upon the new matter are entitled only to the later CIP filing date.[435]

---

[428] *See* § 2D[5][h][i].

[429] 35 U.S.C. § 120. *See generally* D. Chisum, Patents § 13.01 *et seq.*
Section 120 provides:

> "An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, or as provided by section 363 of this title, which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application."

[430] *See* § 2C[5][b][ii].

[431] *See* § 2D[5].

[432] *See* §§ 2D[1] and 2D[1][d].

[433] *E.g.,* Paperless Accounting, Inc. v. Bay Area Rapid Transit Sys., 804 F.2d 659, 663, 231 U.S.P.Q. 649, 652 (Fed. Cir. 1986), *cert. denied*, 480 U.S. 933 (1987) ("Law and policy liberally authorize the filing of [CIP] applications for a number of reasons, whether to enlarge the disclosure to include new technological information, thereby providing the public with knowledge of recent developments or improvements; or to enable more extensive prosecution or improved draftsmanship of specification or claims; or to provide a vehicle for prosecution of non-elected claims.").

[434] Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 221 U.S.P.Q. 97 (Fed. Cir. 1984).

[435] *In re* Kyser, 588 F.2d 303, 200 U.S.P.Q. 211 (CCPA 1978); *In re* Scheiber, 587 F.2d 59, 199 U.S.P.Q. 782 (CCPA 1978).
In *Scheiber,* the parent application disclosed a particular compound (X). The CIP application added further disclosure necessary to support a claim to a generic class of compounds that included X. The CIP was not entitled to the parent application's filing date to avoid an intervening reference disclosing X.

(Matthew Bender & Co., Inc.)    (Pub.886)

When a continuation or CIP application is entitled to the benefit of a prior application, the latter is commonly referred to as a "parent" application. In a chain of applications, there may be a remote grandparent application, great grandparent, etc. In *Henriksen*,[436] the CCPA held there is no limit to the number of applications chained together provided Section 120's requirements are met.

A design patent application can gain a prior utility patent application's filing date if it meets Section 120's requirements.[437]

[ii]  *Disclosure Continuity—Acquiescence.*  To meet Section 120's disclosure continuity condition, an application must be for an invention disclosed in the prior application as required by Section 112, first paragraph.[438] The prior application's disclosure must support claims added or amended in a continuation or CIP application, "support" meaning compliance with the enablement, description, and, possibly, best mode requirements.[439]

If a prior application does not disclose a practical use for the claimed invention, a CIP application adding such use cannot gain the prior application's filing date.[440]

If a CIP's added disclosure makes explicit what was inherent in the parent application, and if a person of ordinary skill in the art would necessarily equate the added matter with the parent's disclosure, the CIP can retain the parent's filing date.[441]

If an inventor files a CIP adding new matter after a PTO examiner rejected parent application claims for insufficient disclosure, the acquiescence doctrine may bar the inventor from later arguing that the claims are in fact entitled to the benefit of the parent application filing date. For example, in *Pennwalt*,[442] the court held filing a

---

[436] *In re Henriksen*, 399 F.2d 253, 158 U.S.P.Q. 224 (CCPA 1968).

[437] Racing Strollers Inc. v. TRI Industries Inc., 878 F.2d 1418, 11 U.S.P.Q.2d 1300 (Fed. Cir. 1989).

[438] 35 U.S.C. § 120. The CIP or continuation's claims need not have been asserted in a prior application if the disclosures of the prior application adequately support those claims. Kangaroos U.S.A., Inc. v. Caldor, Inc., 778 F.2d 1571, 228 U.S.P.Q. 32 (Fed. Cir. 1985).

[439] *See* §§ 2D[3][a], [b], and [c]. As to whether the parent application's best mode disclosure must be updated when filing a continuation or CIP, see § 2D[3][c][ix].

[440] *In re Hafner*, 410 F.2d 1403, 161 U.S.P.Q. 783 (CCPA 1969). *See* § 2C[2].

If the parent discloses one utility, a CIP is entitled to the parent's filing date even though the CIP discloses a different utility, provided the two utilities are not factually inconsistent. *In re Kirchner*, 305 F.2d 897, 134 U.S.P.Q. 324 (CCPA 1962).

[441] Wagoner v. Barger, 463 F.2d 1377, 175 U.S.P.Q. 85 (CCPA 1972).

[442] Pennwalt Corp. v. Akzona, Inc., 740 F.2d 1573, 222 U.S.P.Q. 833 (Fed. Cir. 1984). *See also* Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 221 U.S.P.Q. 97 (Fed. Cir. 1984).

*Compare* Paperless Accounting, Inc. v. Bay Area Rapid Transit Sys., 804 F.2d 659, 231 U.S.P.Q. 649 (Fed. Cir. 1986), *cert. denied*, 480 U.S. 933 (1987); State Industries, Inc. v. A.O. Smith Corp., 751 F.2d 1226, 224 U.S.P.Q. 418 (Fed. Cir. 1985) (filing a CIP creates no presumption that the parent does not support the CIP claims when the CIP filing is not in response to a PTO rejection).

In *Paperless Accounting*, the court held the filing of a continuation-in-part application that added text to the parent application's specification was not a binding admission that the parent did not support the CIP claims when the examiner withdrew a previous Section 112 rejection

CIP after an examiner rejected claims as lacking support constituted *prima facie* acquiescence in the rejection and barred the patentee from later claiming the benefit of the parent application's filing date. The patentee offered no evidence to rebut the *prima facie* case, for example, by showing that the CIP was for the purpose of adding later improvements.

[*iii*]    *Cross References.* To meet Section 102's cross reference condition, an application must contain, or be amended before issue to contain, "a specific reference to the earlier filed application."[443] The cross reference enables persons searching PTO records to determine a patent's effective filing date.[444]

The cross reference should include all immediate and remote applications the applicant wishes to rely on.[445] Consider the following example:

1. A files application M.

2. A files application N and abandons M.

3. A files application O and abandons N.

O should refer to M and N; N should refer to M.[446]

A reissue application may be used to add a cross-reference.[447]

[*iv*]    *Copendency.* To meet Section 120's copendency condition, an application must be filed prior to abandonment, patenting, or termination of proceedings on the prior application.[448] For a chain of applications M, N, and O, N must be filed during the pendency of M, and O during the pendency of N.[449]

[*v*]    *Inventorship.* To meet Section 120's inventorship condition, an application's claimed subject matter must be by an inventor named in the prior application.[450]

---

of the parent claims carried forward to the CIP. The applicant did not acquiesce in the examiner's initial Section 112 rejection in the parent prosecution because the rejection, not forming the basis of the final rejection, could not have been appealed. "[T]he mere filing of a continuation-in-part with additional matter or revised claims is not of itself an admission that the matter is 'new' or that the original application was legally insufficient to support the claims." 804 F.2d at 664, 231 U.S.P.Q. at 652.

[443] 35 U.S.C. § 120.

The reference should provide the following: (1) the prior application's serial number; (2) the prior application's filing date; and (3) the applications' relationship (e.g. continuation, continuation-in-part, divisional). 37 C.F.R. § 1.78(a).

[444] Sampson v. Ampex Corp., 463 F.2d 1042, 174 U.S.P.Q. 417 (2d Cir. 1972).

[445] Hovlid v. Asari, 305 F.2d 747, 134 U.S.P.Q. 162 (9th Cir. 1962).

[446] Clover Club Foods Co. v. Gottschalk, 178 U.S.P.Q. 505 (C.D. Calif. 1973).

[447] Sticker Industrial Supply Corp. v. Blaw-Knox Co., 321 F. Supp. 876, 167 U.S.P.Q. 442 (N.D. Ill. 1970).

[448] 35 U.S.C. § 120. Patenting is the issue date. Abandonment may occur by failure to prosecute, express statement, or failure to pay the issue fee. Termination of proceedings may occur upon final rejection of all claims in an application and exhaustion of any appeal right. *See* §§ 2D[1] and 2D[1][a][iii].

[449] Lemelson v. TRW, Inc., 760 F.2d 1254, 225 U.S.P.Q. 697 (Fed. Cir. 1985).

[450] 35 U.S.C. § 120; 37 C.F.R. § 1.78(a).

Before a 1984 amendment, a subsequent application's claims had to be by the same inventor or inventors as the prior application. Consider the following example:

> 1. A, B and C jointly file application M, disclosing X, Y and Z and claiming X.
>
> 2. A and B jointly file CIP application N, disclosing X, Y and Z and claiming Y.
>
> 3. A files CIP application O, disclosing X, Y, and Z and claiming Z.

Before 1984, the claims in applications N and O could not gain the benefit of M's filing date unless there was an error in the original inventorship entity designation.[451] After 1984, the N and O applications could gain the benefit of M's filing date provided that (1) the named inventors are in fact inventors of the subject matter claimed in that application and (2) there was adequate disclosure support for the claims in the prior application.

### [5]    Interferences—Priority—Invention Date.

An interference proceeding's purpose is to resolve the question of invention priority when more than one person seeks a patent claiming substantially the same invention.[452] Interferences are complex proceedings that use unique procedures.[453]

The following sections focus on the substantive rules for determining an invention date.[454] Interference practice and procedure are covered only briefly.[455]

### [a]    Priority Rules—First to Invent. The following rules govern the determination of invention priority.

> (1)   Presumptively, the first inventor is the one who first reduces the invention to practice. Filing a patent application adequately disclosing the invention is a constructive reduction to practice,[456] so the invention date can not be later than the filing date (unless the application is later completely

---

[451] *In re* Schmidt, 293 F.2d 274, 130 U.S.P.Q. 404 (CCPA 1961).

[452] 35 U.S.C. § 135.

[453] The standard reference work on interference practice is Rivise & Caesar, Interference Law and Practice (1943).

Interference practice was substantially revised in 1985. Under prior law, a Board of Patent Interferences had jurisdiction over issues of priority of invention. That Board could decide only invention priority issues and disputed issues "ancillary" to priority. That Board could not decide patentability issues, which were considered to be within the expertise of the regular examiners. *See, e.g.,* Case v. CPC International, Inc., 730 F.2d 745, 221 U.S.P.Q. 196 (Fed. Cir. 1984), *cert. denied,* 469 U.S. 872, 224 U.S.P.Q. 736 (1984). A 1984 statutory amendment merged the Board of Appeals and the Board of Patent Interferences into a new Board of Patent Appeals and Interferences with jurisdiction to decide both patentability and priority issues.

A set of new rules, effective for interferences declared on or after February 11, 1985, have been adopted by the PTO. 37 C.F.R. § 1.601-688.

[454] The same rules govern the determination of what constitutes prior art for patentability purposes. *See* § 2C[5][f].

[455] *See* § 2D[5][h].

[456] *See* § 2D[5][d].

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS D. SYKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 06-829 (CKK) |
| | ) |
| JON W. DUDAS, IN HIS OFFICIAL | ) |
| CAPACITY AS DIRECTOR OF THE | ) |
| UNITED STATES PATENT AND | ) |
| TRADEMARK OFFICE, AN AGENCY IN | ) |
| THE UNITED STATES DEPARTMENT | ) |
| OF COMMERCE, | ) |
| | ) |
| Defendant. | ) |

## Plaintiff's Request for Production of Documents

Pursuant to Rules 26 and 34, Federal Rules of Civil Procedure, plaintiff requests that

defendant produce and permit it to inspect and copy the documents (as that word is defined by

Rule 34) and records described below that are in the possession, custody, or control of defendant

in his official capacity, including (but not limited to) any responsive documents or records that

are in the possession, custody, or control of the United States Patent and Trademark Office.

This production shall occur at a time and place to be agreed upon by the parties or, absent

an agreement, at McDermott Will & Emery LLP, 227 W. Monroe St., Chicago, IL  60606 on

November 17, 2006 at 10 a.m.  Defendant is requested to serve, within the period specified by

Rule 34(b), a written response specifying its position on production of the documents and

records described.  The response shall state, with respect to each item or category, that inspection

and related activities shall be permitted as requested, unless the request is objected to, in which

event the reasons for the objection shall be specified.  The documents and records produced shall

be organized and labeled to correspond to the request to which they are responsive, and, so

organized and labeled, the documents shall be produced as they are kept in the usual course of business, to the extent possible.

If defendant withholds any requested document or record by claiming that it is privileged or subject to protection as trial preparation material, defendant shall comply with the requirements of Rule 26(b)(5).

The documents and records to be so produced are as follows:

REQUEST NO. 1.  The whole record before the United States Patent and Trademark Office (USPTO) with respect to the proceedings before the USPTO that led to or followed the issuance of U.S. Patent No. 6,962,311 B1, issued on November 8, 2005, including the record generated or kept with respect to Serial Nos. 08/180,202 and 08/651,431.

DEFENDANT'S RESPONSE:

REQUEST NO. 2.  To the extent not produced in response to Request No. 1, all files and records (including electronic files and records) generated or kept by the USPTO or its employees during its examination and consideration of USPTO Serial Nos. 08/180,202 and 08/651,431 (respecting applicant Thomas D. Sykes), including files and records generated or kept by the examiners or supervisors assigned to USPTO Serial Nos. 08/180,202 or 08/651,431.

DEFENDANT'S RESPONSE:

_/s/_____

THOMAS D. SYKES, Pro Se
239 Surrey Lane
Lake Forest, IL  60045
Tel:  (312) 984-7530
Fax:  (312) 984-7700
Email:  tsykes@mwe.com
DC Bar No. 461071

Dated:  October 13, 2006

- 23h -

- 3 -

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the attached document was mailed on

this 13th day of October, 2006, via first-class mail, postage prepaid, to the following addressee:

> Karen L. Melnik
> Assistant U.S. Attorney
> United States Attorneys Office
> Civil Division
> 555 4th Street, N.W., Rm E-4112
> Washington, DC 20530

> /s/
> _____
> Thomas D. Sykes, Pro Se
> 239 Surrey Lane
> Lake Forest, IL 60045
> Tel: (312) 984-7530
> Fax: (312) 984-7700
> Email: tsykes@mwe.com



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

Thomas D. Sykes                                          October 24, 2006
239 Surrey Lane
Lake Forest, IL 60045

Re: <u>Thomas D. Sykes v. Jon W. Dudas, Director USPTO</u>
Civil Action No. 06cv829 (CKK)

Dear Mr. Sykes:

     I write this letter in response to your Request for Production of Documents, faxed to
me on October 13, 2006.  It is the government's position that your discovery request is
premature.  However, the government intends to file a motion to dismiss, or in the alternative, for
summary judgment.  With that filing, or in advance thereof, the government will file the entire
adminstrative record via ECF.

     If you have any questions, you may contact me at (202) 307-0338.

                                        Sincerely,

                                        JEFFREY A . TAYLOR
                                        UNITED STATES ATTORNEY

                              By:      _____
                                        Karen L. Melnik
                                        Assistant United States Attorney
                                        555 4th Street, N.W. Rm. E 4112
                                        Washington, D.C. 20530

- 23 -

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that the foregoing document has, this 25th day of January

2007, been made upon the following by electronic filing and through the Court's electronic

notification system:

> Karen L. Melnik, D.C. Bar No. 436452
> Assistant U.S. Attorney
> United States Attorney's Office
> Civil Division
> 555 Fourth Street, N.W., Rm 4-4112
> Washington, D.C.  307-0338
> (202) 307-0338


>     /s/   *Thomas D. Sykes*
> THOMAS D. SYKES, Pro Se
> 239 Surrey Lane
> Lake Forest, IL  60045
> Tel:  (312) 984-7530
> Fax:  (312) 984-7700
> Email:  tsykes@mwe.com
> DC Bar No. 461071