## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THOMAS D. SYKES,

     Plaintiff,

     v.                                                           Civil Action No. 06-829 (CKK)

JON W. DUDAS, Director of the United
States Patent and Trademark Office,

     Defendant.

## MEMORANDUM OPINION
(September 2, 2008)

In 1993, Plaintiff Thomas D. Sykes invented a computer mouse-pad that could be

mounted on a user's thigh.  After multiple patent applications and lengthy delays, the Patent and

Trademark Office ("PTO") granted Plaintiff a United States patent on November 8, 2005.  The

PTO also informed Plaintiff that he was entitled to certain adjustments lengthening his patent

term (i.e., the length of time that Plaintiff may exclude others from making, using, selling, or

offering for sale his invention throughout the United States) based on certain delays that occurred

during the patent's prosecution.  The instant lawsuit concerns Plaintiff's desire for a longer patent

term.  Defendant Jon W. Dudas, in his official capacity as Director of the United States Patent

and Trademark Office, has filed a [13] Motion to Dismiss, or in the alternative, Motion for

Summary Judgment.  Plaintiff, proceeding *pro se*, has filed a [17] Cross-Motion for Summary

Judgment.[1]  After a searching review of the parties' submissions, including the attachments

---

[1] Although Plaintiff is proceeding *pro se*, the Court notes that he is an attorney who has
described himself as

    a partner with a large law firm [that] practices tax law in Chicago, Illinois.  He is

thereto, applicable statutory authority, regulations, case law, and the administrative record, the

Court finds that Plaintiff's claims based on the American Inventors Protection Act are not

cognizable because the relevant provisions of that act–including its jurisdiction and venue

provision–are not retroactively applicable to Plaintiff's patent application.  The Court also finds

that it lacks jurisdiction over the remainder of Plaintiff's claims.  Accordingly, the Court shall

grant Defendant's Motion to Dismiss brought under Federal Rules of Civil Procedure 12(b)(1)

and 12(b)(6), as to Plaintiff's claims brought under the American Inventors Protection Act, shall

grant Defendant's Motion to Dismiss brought under Federal Rule of Civil Procedure 12(b)(1) as

to the remainder of Plaintiff's claims, shall deny-without-prejudice Defendant's Motion for

Summary Judgment, and deny-with-prejudice-in-part Plaintiff's Motion for Summary Judgment

as to Plaintiff's claims based on the American Inventors Protection Act, and deny-without-

prejudice-in-part Plaintiff's Motion for Summary Judgment as to the remainder of Plaintiff's

claims, for the reasons set forth below.

## I.  BACKGROUND

A.    *Statutory Background*

An inventor must file an application with the PTO to receive a United States patent.  35

---

admitted to the bars of the District of Columbia, Illinois, and Wisconsin, having
been admitted to those bars in 1998, 2002, and 1979, respectively.  He is currently
an active member of the bars of the District of Columbia and Illinois.  Plaintiff is
an active trial lawyer in the federal courts.  Currently, Plaintiff is lead counsel in a
multi-million dollar tax refund suit pending in the Eastern Division (Chicago) of
the United States District Court for the Northern District of Illinois.  Plaintiff is
currently admitted to both the general bar of that court and to its trial bar.

*See* Pl.'s Mot. for Leave to Use CM/ECF Filing System at 1-2.

U.S.C. § 111.  A patent excludes others from making, using, selling, or offering for sale an invention throughout the United States for a period of time, referred to as the "term" of the patent.  *Id.* §§ 154(a)(1), (2).  Prior to 1994, a patent's term was 17 years from the date of issuance.  *See* Act of March 2, 1861, ch. 88, § 16, 12 Stat. 246 (codified as amended at 35 U.S.C. § 154).  Because the patent term was not calculated from the date the inventor filed his or her patent application (but rather by the date of issuance), the term of the patent was unaffected by the amount of time that elapsed during prosecution of the patent.

Congress altered this scheme in 1994.  The Uruguay Round Agreements Act (the "GATT legislation"[2]) increased patent terms from 17 years to 20 years, but changed the calculation of the terms so that they ended on a date twenty years after the earliest effective *filing date* of the patent application (not from the date of issuance).  Pub. L. No. 103-465, § 532, 108 Stat. 4983 (1994) (codified as amended at 35 U.S.C. § 154).  As a result of these changes, patent terms were affected by the amount of time that elapsed during prosecution of a patent.  Accordingly, the GATT legislation also provided enumerated "term extensions" that could extend the term of a patent based on certain delays that might occur.  *Id.*

Congress amended this scheme again in 1999 with the American Inventors Protection Act ("AIPA").  Pub. L. No. 106-113, §§ 4402-4405, 113 Stat. 1501, 1501A (1999) (codified as amended at 35 U.S.C. § 154).  The AIPA provided additional grounds for term extensions that were not included in the GATT legislation.  *Id.* § 4402.  The AIPA also contained a jurisdiction and venue provision allowing aggrieved patent applicants to challenge the PTO's decisions

---

[2] Defendant refers to the Uruguay Round Agreements Act as "the GATT legislation" and indicates that patent practitioners do the same.  *See* Def.'s Mot. at 10 n.4.  For consistency, the Court shall use the same identifier.

related to patent term adjustments in the District of Columbia:

> [a]n Applicant dissatisfied with a determination made by the Director under paragraph (3) shall have a remedy by a civil action against the Director filed in the United States District Court for the District of Columbia within 180 days after the grant of the patent.

*Id.* § 4402(b)(4)(A) (codified as amendment at 154(b)(4)(A)).

The AIPA specified that the additional term extensions, the jurisdiction and venue provision, and other changes included in the Act, would take effect "on the date that is 6 months after the date of the enactment of this Act [which turned out to be May 29, 2000]." *Id.* § 4405. Of particular significance in this litigation, Section 4405(a) specifies that the patent term adjustments and the jurisdiction and venue provision in Section 4402 would *not* apply to previously filed patent applications:

> The amendments made by sections 4402 and 4404 shall take effect on the date that is 6 months after the date of the enactment of this Act and, except for a design patent application filed under chapter 16 of title 35, United States code, shall apply to any application filed on or after the date that is 6 months after the date of the enactment of this Act.

*Id.* § 4405(a).  In contrast, Section 4405(b)–the provision immediately following 4405(a)–specifies that changes in a different provision of the AIPA, Section 4403, *would* apply to previously filed applications:

> The amendments made by section 4403 . . . shall take effect on the date that is 6 months after the date of the enactment of this Act, and shall apply to all applications filed under section 111(a) of title 35, United States Code, on or after June 8, 1995 . . . .

*Id.* § 4405(b).

The AIPA amendments were codified in 35 U.S.C. § 154, and the PTO issued implementing regulations thereto.  *See* AIPA, § 4402(b)(3)(A) (requiring the PTO Director to

4

prescribe implementing regulations). The PTO specifically interpreted Section 4405(a) to apply

the changes in Section 4402 *prospectively* (i.e., applicable only to applications *filed* on or after

May 29, 2000). *See* 37 C.F.R. 1.702(f) ("[t]he provisions of this section . . . apply only to

original applications . . . filed on or after May 29, 2000, and patents issued on such

applications").

      B.    *Factual Background*

     Plaintiff initially filed an application for a United States utility patent on January 11,

1994, which was assigned number 08/180,202 (hereinafter, the '202 application).[3]  Pl.'s Stmt. ¶

3. The PTO determined that the '202 application described several species of inventions and

directed the Plaintiff to select one to pursue in the '202 application, and to file "divisional"

applications to pursue the others. Pl.'s Stmt. ¶ 4; Def.'s Resp. Stmt. ¶ 4. In response to the

PTO's directive, Plaintiff filed a divisional application on May 22, 1996, which was assigned

number 08/651,431 (hereinafter, the '431 application).[4]  Pl.'s Stmt. ¶ 5; Def.'s Resp. Stmt. ¶ 5.

---

    [3] As the Court previously advised the parties, *see* [4] Order at 1 (May 23, 2006), this
Court strictly adheres to the text of Local Civil Rule 56.1 when resolving motions for summary
judgment. *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (district courts need to
invoke Local Civil Rule 56.1 before applying it to the case). Although discretionary in the text
of the Local Civil Rule 56.1, in resolving the present motions, this Court "assumes that facts
identified by the moving party in its statement of material facts are admitted, unless such a fact is
controverted in the statement of genuine issues filed in opposition to the motion." LCvR 56.1.
Thus, in most instances the Court shall cite to Plaintiff's Statement of Material Facts ("Pl.'s
Stmt.") or Defendant's Statement of Material Facts ("Def.'s Stmt.") unless a statement is
contradicted by the opposing Party. Where a party objects to relevant aspects of an opposing
party's proffered material fact, the Court shall cite to Plaintiff's Response to Def.'s Stmt. ("Pl.'s
Resp. Stmt.") or Defendant's Response to Pl.'s Stmt. ("Def.'s Resp. Stmt."). The Court shall
also cite directly to the record, where appropriate, to provide additional information not covered
in either of the Parties' Statements.

    [4] The Parties dispute whether the '431 application was directed solely to the subject
matter described and claimed in the '202 application. *See* Pl.'s Stmt. ¶ 4; Def.'s Resp. Stmt. ¶ 4.

Plaintiff subsequently abandoned the '202 application. Pl.'s Stmt. ¶ 7.

On June 17, 1998, the PTO's examiner issued a final rejection on the majority of claims in the '431 application. *Id.* ¶ 9. Plaintiff filed a timely notice of appeal to the PTO's Board of Patent Appeal and Interferences, and on October 30, 2001, the Board issued a decision reversing the examiner and remanding the '431 application to the examiner. *Id.* ¶¶ 10-11, Def.'s Resp. Stmt. ¶ 10. Following a lengthy remand period, the PTO's examiner issued a notice of allowance on August 12, 2004. Pl.'s Stmt. ¶ 13. Attached to the notice was a document titled "Determination of Patent Term Extension under 35 U.S.C. 154(b) (application filed after June 7, 1995 but prior to May 29, 2000)," which stated that Plaintiff's patent term would be extended by 1,139 days to account for the delays associated with his patent prosecution. *Id.* ¶ 14.

On November 8, 2004, the PTO issued United States Patent No. 6,962,311 (the '311 patent). Pl.'s Stmt. ¶ 16. On November 10, 2005, Plaintiff submitted a petition, through counsel, seeking a longer term for his '311 patent.[5] Pl.'s Stmt. ¶ 19; Def.'s Resp. Stmt. ¶ 19. The Petition argued that the '311 patent should receive a 17-year term pursuant to the calculation of patent terms in place prior to enactment of the GATT legislation, or alternatively, should receive increased term extensions in place following enactment of the AIPA. *See* A.R. 14-36 (11/10/05 Petition). On July 11, 2006, the PTO responded to Plaintiff's petition with a written decision rejecting Plaintiff's contention that the '311 patent was entitled to a different term. Pl.'s Stmt. ¶ 21.

---

This dispute is immaterial for purposes of resolving the instant motions.

[5] Plaintiff filed an earlier petition that was dismissed because it was not accompanied by the required fees. *See* Pl.'s Stmt. ¶¶ 15, 18. Neither party suggests this earlier petition is material to resolving the instant motions.

6

C.     *Procedural Background*

Plaintiff filed a three-page, 12-paragraph Complaint on May 3, 2006.  The Complaint predicates the Court's jurisdiction on 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (patents), and 35 U.S.C. § 154(b)(4)(A) (the specific jurisdiction provision in Section 4402 of the AIPA).  The Complaint predicates venue exclusively on 35 U.S.C. 154(b)(4)(A) (the specific venue provision in Section 4402 of the AIPA).  The remainder of the Complaint is devoted to describing Plaintiff's "dissatisfaction" with the PTO's patent term adjustments made under the AIPA's amendments.  *See, e.g.*, Compl. ¶ 5 ("[t]his action is brought by Plaintiff pursuant to 35 U.S.C. § 154(b)(4)(A)"); *id.* ¶ 6 ("Plaintiff is dissatisfied with a determination made by the [PTO] under 35 U.S.C. §154(b)(3) and seeks a judgment changing the period of adjustment of the patent term of the Patent at Issue").  Attached to the Complaint is approximately 80 pages of material, including drawings, the PTO's patent term adjustment determination, and Plaintiff's November 10, 2005 petition, which Plaintiffs seeks to incorporate into his Complaint.  *Id.* ¶ 11 (alleging that the PTO's patent term adjustment determination was erroneous and unlawful "for the reasons appearing in the whole record").

Plaintiff filed a First Amended Complaint on November 8, 2006, which is materially identical to the original Complaint except for an additional allegation concerning the PTO's denial of his petition for a patent term adjustment on July 11, 2006.  *See* First Amend. Compl. ¶¶ 10.  The First Amended Complaint also appears to rely on the materials attached to the original Complaint.  *Id.* ¶ 13 (alleging that the PTO's decision regarding Plaintiff's petition was erroneous and unlawful "for the reasons set out in the Petition and the exhibits thereto, and for reasons appearing in the whole record").  The First Amended Complaint did not add any

additional bases for the Court's jurisdiction or venue in the District of Columbia.  *Id.* ¶¶ 3-5.

Defendant filed a Motion to Dismiss or, in the alternative, for summary judgment, on November 15, 2006.  In addition to a host of other arguments, the Motion argues that the First Amended Complaint should be dismissed for lack of subject matter jurisdiction because the AIPA's jurisdiction and venue provision is not retroactively applicable to Plaintiff's patent application, and it therefore cannot confer jurisdiction over Plaintiff's claims.  *See* Def.'s Mot. at 18 ("because AIPA § 4402 [] adds the provision for bringing a civil action in this Court to review the AIPA adjustments, this Court lacks jurisdiction to hear the merits of this case"); *id.* at 19 ("plaintiff asks this Court to issue an order directing the PTO to give the '311 patent a 17-year term . . . Since the only jurisdiction plaintiff cites in his complaint is the AIPA . . . and since that statute does not apply to his patent, this Court has no jurisdiction over plaintiff's request for a 17-year term").

Plaintiff opposed Defendant's Motion and filed a Cross-Motion for Summary Judgment on December 13, 2006.  In his Motion, Plaintiff asserts claims that are not only based on the amendments created by the AIPA, but also asserts that he is entitled to a 17-year patent term based on Section 154 as it existed before the enactment of the GATT legislation.  Pl.'s Mot. at 4-35.  Plaintiff also argues that the AIPA amendments provide jurisdiction over his claims because they apply retroactively to his patent application.  *Id.* at 23.  Finally, Plaintiff argues that if the AIPA amendments "somehow do[] not give the Court jurisdiction over [other] element[s] of this case, then surely 28 U.S.C. §§ 1331 and 1338(a) (the other jurisdictional statutes cited in paragraph 3 of the First Amended Complaint) do."  *Id.* at 26.  The parties completed their briefing when Defendant filed an Opposition on January 10, 2007, and Plaintiff filed a Reply on

January 25, 2007.

## III.  LEGAL STANDARDS

Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, is brought under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56, and Plaintiff's Motion is brought under Federal Rule of Civil Procedure 56.  The Court sets out the three legal standards below.

### A.     Rule 12(b)(1)

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule 12(b)(1).  In so doing, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  *See also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, however, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence.  *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

### B.     Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain

9

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  While the court must construe the Complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Moreover, the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).  The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

C.    *Rule 56*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, the moving party "bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant

11

bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III.  DISCUSSION

The Court must initially consider whether it has jurisdiction over Plaintiff's Complaint. *See* Fed. R. Civ. P. 12(h)(3) ("[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").  Plaintiff's First Amended Complaint asserts three bases for jurisdiction: 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (patents), and 35 U.S.C. § 154(b)(4) (PTO determinations).  The first two statutes do not create proper subject matter jurisdiction in this case because they do not themselves create the substantive causes of action on which Plaintiff may bring suit.  *See Mead Corp. v. United States*, 490 F. Supp. 405, 407 (D.D.C. 1980) (". . . section 1331 does not in itself create substantive rights or causes of action . . . but only confers jurisdiction on the district courts to hear certain cases that are supported by an independently created substantive cause of action.  The same proposition applies to section[] 1338 (patents) . . . ."), *aff'd* 652 F.2d 1050, 1053 (D.C. Cir. 1980) ("[w]e agree with the district court that none of these [statutes] provides an independent basis of federal jurisdiction").  For example, in *Hallmark Cards v. Lehman*, the plaintiff sought to have the Court review the PTO's decision to issue Certificates of Correction, relying on 28 U.S.C. § 1338(a) to confer subject matter jurisdiction.  959 F. Supp. 539, 542 (D.D.C. 1997).  The Court dismissed plaintiff's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), holding that "[w]hile § 1338(a) grants to federal district courts exclusive

jurisdiction over civil actions 'arising under' any federal statute relating to patents, that section does not create any right of civil action in the first instance." *Id.*

Even if those statutes allowed the Court to properly exercise jurisdiction in this case (which they do not), Defendant correctly observes that neither 28 U.S.C. § 1331 (federal question) nor 28 U.S.C. § 1338(a) (patents) contains a waiver of the government's sovereign immunity from suit. *See* Def.'s Opp'n at 4 (citing *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) *and Turton v. United States*, 212 F.2d 354, 355 (6th Cir. 1954)). Plaintiff fails to argue otherwise. Accordingly, in the present case, the Court's jurisdiction depends entirely on the only other statute identified by Plaintiff's First Amended Complaint – the jurisdiction and venue provision in 35 U.S.C. § 154, as amended by the AIPA. *See* 35 U.S.C. § 154(b)(4). Because the Court finds that this provision became effective on May 29, 2000, and that Congress did not make it retroactively applicable to Plaintiff's patent applications filed on January 11, 1994 (the '202 application) or on June 17, 1998 (the '431 application), the Court finds that Plaintiff has failed to assert a proper basis for the Court's exercise of jurisdiction in this case.[6]

As described above, the jurisdiction and venue provision in 35 U.S.C. § 154(b)(4) has its

---

[6] Defendant also moves to dismiss Plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failing to set forth a short and plain statement of his claims. *See* Def.'s Mot. at 16-18. The Court declines to decide Defendant's Motion on this basis because the asserted grounds for jurisdiction are clear on the face of the First Amended Complaint, and Plaintiff has sufficiently pled his claim challenging the PTO's patent term determination under 35 U.S.C. § 154(b)(4). The Court does not reach the issue of whether Plaintiff sufficiently pled any of the other claims asserted in his Motion for Summary Judgment, including those related to the GATT legislation, because the Court finds that it lacks jurisdiction to entertain those claims (even if they were sufficiently pled). Similarly, Plaintiff argues that Defendant improperly failed to produce the Administrative Record pertaining to his '202 application. *See* Pl.'s Mot. at 2 n.1; Pl.'s Reply at 19-21. The Court does not reach this issue because the jurisdictional issues that are dispositive in this case are unaffected by any issues related to Plaintiff's '202 application.

origins in Section 4402 of the AIPA:

> [a]n Applicant dissatisfied with a determination made by the Director under
> paragraph (3) shall have a remedy by a civil action against the Director filed in the
> United States District Court for the District of Columbia within 180 days after the
> grant of the patent.

AIPA, § 4402(b)(4)(A) (codified as 35 U.S.C. § 154(b)(4)(A), as amended).  Section 4405 of the

AIPA provides that this provision would become effective six months following enactment of the

AIPA (May 29, 2000) subject to the following:

> [t]he amendments made by sections 4402 and 4404 shall take effect on the date
> that is 6 months after the date of the enactment of this Act and, except for a design
> patent application filed under chapter 16 of title 35, United States code, shall
> apply to any application filed on or after the date that is 6 months after the date of
> the enactment of this Act [which is May 29, 2000].

AIPA, § 4405(a).

Defendant argues that Plaintiff cannot rely on the jurisdiction and venue provision in

Section 4402 of the AIPA because 4405(a) specifies that it only applies to applications filed after

May 29, 2000.  *See* Def.'s Mot. at 18-20.  Plaintiff, in contrast, argues that the PTO has misread

Section 4405(a) of the AIPA.  *See* Pl.'s Mot. at 27-33.  According to Plaintiff, the text in Section

4405(a) must be read in the disjunctive, giving separate effect to the portion of the text relating to

the "effective" date of the amendments, and the portion relating to their "applicability."  *Id.* at 29.

Thus, Plaintiff reads the following underlined section as separate from the rest of the provision:

> <u>The amendments made by sections 4402 and 4404 shall take effect on the date
> that is 6 months after the date of the enactment of this Act</u> and, except for a design
> patent application filed under chapter 16 of title 35, United States Code, shall
> apply to any application filed on or after the date that is 6 months after the date of
> the enactment of this Act

Plaintiff's confusing explanation is that the underlined portion made the jurisdiction and venue

provision in Section 4402, along with other provisions in the AIPA, effective May 29, 2000 as to all patent applications whenever filed.  Separately, the non-underlined portion made other provisions in the AIPA–those that relate to the pendency of applications– applicable to applications filed on or after May 29, 2000.  *Id.* at 31 ("[i]n Plaintiff's view, the statute provides for all of the various guarantees and adjustments provided by the Term Guarantee legislation to be effective upon the a [sic] date that was six months after enactment – except for those guarantees and adjustments that focus upon the pendency of the application").  Plaintiff explains that "there was a good reason for Congress to distinguish, in § 4405(a), between the guarantees and adjustments in the Term Guarantee legislation that were keyed to the *filing date of the application* – and those that were not.  It is this distinction that § 4405(a) appears to recognize."  *Id.* at 32.

Among the problems with Plaintiff's interpretation of Section 4405(a) is that the distinction drawn by Plaintiff is nowhere to be found in the text of the statute.  Instead, the statute states in no uncertain terms that the amendments in Sections 4402 and 4404 would become effective on May 29, 2000, and that the amendments would apply only to applications filed on or after that date.  This interpretation is confirmed by reading Section 4405(b)–the section immediately following Section 4405(a)–which specifies the *same* effective date for other amendments, but expressly applies those amendments *retroactively*:

> The amendments made by section 4403 . . . shall take effect on the date that is 6 months after the date of the enactment of this Act, and shall apply to all applications filed under section 111(a) of title 35, United States Code, on or after June 8, 1995 . . . .

AIPA, § 4405(b).  Plaintiff's interpretation fails to explain why Congress would choose to make

some but not all amendments retroactive within Section 4405(a), and then use different language

to make other amendments retroactive in Section 4405(b).  The only logical reading of these

provisions is that Section 4405(a) applies certain amendment prospectively, and Section 4405(b)

applies others retroactively.  *See Motion Picture Ass'n of Am. v. FCC*, 309 F.3d 796, 801 (D.C.

Cir. 2002) (describing the principle that "'individual sections of a single statute should be

construed together'") (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972)).  The

Court also notes that Defendant raised the implications of Section 4405(b) in its Motion and

Opposition to Plaintiff's Motion, and that Plaintiff failed to respond entirely.  In this district,

when a party responds to some but not all arguments raised on a Motion for Summary Judgment,

a court may fairly view the unacknowledged arguments as conceded.  *See Hodes v. United States*

*Dep't of Housing & Urban Devel.*, 532 F. Supp. 2d 108, 117 (D.D.C. 2007) ("[a] Party that fails

to refute an opposing party's argument on Summary Judgment may be found to have conceded

the point") (Kollar-Kotelly, J.) (citing *Speaks v. D.C.*, Civ. A. No. 03-1963, 2006 U.S. Dist.

LEXIS 16776 at *12 n.1 (D.D.C. Apr. 6, 2006)).

Plaintiff argues that Defendant's interpretation of Section 4405(a) creates superfluous text

because Congress could have written that AIPA's changes would "apply to any application filed

on or after [May 29, 2000] – and stopped there."  Pl.'s Mot. at 30.  The Court agrees with

Defendant that Plaintiff has confused "applicability" with "effectiveness."  *See* Def.'s Opp'n at

16.  Section 4405(a) establishes the effective date of the identified amendments (May 29, 2000),

and then it identifies the class of patent applications to which those amendments apply (patent

applications filed on or after May 29, 2000).  If Congress had set an effective date without

specifying the applicability of the amendments, it would have been entirely unclear as to which

16

patent applications were affected by the AIPA amendments. By including the applicability language, Congress clarified that the provisions identified in Section 4405(a) would apply only to those patent applications filed after May 29, 2000. Similarly, had Congress specified that Section 4402 applied only to patent applications filed after May 29, 2000, but failed to specify when the amendments became effective, there would have been considerable uncertainty as to when patent applicants and the PTO could rely on the amendments. For example, Section 4402 requires "[t]he Director [to] prescribe regulations establishing procedures for the application for and determination of patent term adjustments under this subsection." AIPA, §4402(b)(3)(A). Without a specified effective date, the Director would have been left without a date by which to prescribe its regulations. In short, there is no portion of Section 4405(a) that becomes superfluous by reading the provision together as a whole.

In addition to the implausibility of Plaintiff's interpretation, Defendant's interpretation is entitled to deference. "When faced with a problem of statutory construction, [a court must] show [] great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16 (1965). In the present matter, the PTO's Director is charged with administering 35 U.S.C. § 154. *See* 35 U.S.C. § 154(b)(3)(A) ("[t]he Director shall prescribe regulations establishing procedures for the application for and determination of patent term adjustments under this subsection"); 35 U.S.C. § 2(b) (authorizing the PTO to issue rules that govern the proceedings before it). The Court is persuaded that the PTO's interpretation of AIPA § 4405(a), as reflected in its implementing regulation at 35 C.F.R. 1.702, is correct, and at a minimum, entirely reasonable. Plaintiff attempts to overcome the deference owed to Defendant's interpretation by arguing that its implementing regulations

17

establish rules that are "inconsistent with law" that purport to "control the term of an [sic] Plaintiff's patent coverage," whereas the PTO is only authorized to implement regulations that relate to "the conduct of proceedings" before the PTO. Pl.'s Mot. at 29-30 (citing 35 U.S.C. § 2(b)(2)(A)). Not only does Plaintiff's argument ignore the provision that specifically authorizes the PTO Director to issue regulations implementing Section 4402, *see* 35 U.S.C. § 154(b)(3)(A), Plaintiff's argument also simply assumes his conclusion. That is, because Plaintiff has not offered any persuasive reason as to why the PTO's interpretation of AIPA § 4405(a) is incorrect, Plaintiff has failed to show that the PTO's implementing regulations are inconsistent with the statute it has been charged with implementing.

Similarly, Plaintiff argues that the AIPA "is obviously remedial," and that such statutes "are to be liberally construed to achieve their remedial purposes." Pl.'s Mot. at 28. This rule of construction is not favored in this Circuit. *East Bay Mun. Util. Dist. v. United States Dep't of Commerce*, 142 F.3d 479, 484 (D.C. Cir. 1998) ("[w]e have recently expressed our general doubts about the canon that 'remedial statutes are to be construed liberally' since virtually any statute is remedial in some respect"). In any event, this rule of construction is also inapplicable where, as here, the language of the relevant statute is not ambiguous. *Ball, Ball & Brosamer, Inc. v. Reich*, 24 F.3d 1447, 1452 (D.C. Cir. 1994) (discussing the defendant's argument that an act should be broadly construed to accomplish its remedial purpose and explaining that "[n]one of this offers any justification for ignoring the clear language of the Act").

Finally, Plaintiff argues that "[t]he delays experienced by Plaintiff . . . are egregious . . . [and] [i]t is inconceivable that Congress intended that investors in these circumstances should not have the benefit of this remedial legislation." Pl.'s Mot. at 33. Plaintiff's individual

18

experiences, however difficult, cannot change the otherwise clear language of a statute, and Plaintiff's unsupported assertions about what Congress hoped to achieve cannot override clear statutory language, as Congress's "intent" can be found in the unambiguous text of the AIPA. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (where the language of a statute is plain and coherent, "the language [of the statute] expresses Congress' intent"). Accordingly, the Court finds that Congress did not make the jurisdiction and venue provision in AIPA § 4402 retroactively applicable to Plaintiff's patent applications; because the AIPA thus forms the basis for Plaintiff's claims thereunder and also the Court's basis for exercising jurisdiction, the Court shall dismiss Plaintiff's claims under the AIPA pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Without a basis for exercising jurisdiction in this case, the Court cannot reach the merits of Plaintiff's remaining claims (those that do not relate to the AIPA amendments).[7] The Court notes that Plaintiff may be able to bring a Complaint pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq.*, which Defendant raises in its Opposition and Plaintiff appears to acknowledge in Reply. *See* Pl.'s Reply at 15 (arguing that "subject matter jurisdiction is plainly conferred by 28 U.S.C. §§ 1331 and 1338(a) and by §§ 702-706 of the [APA]"). Plaintiff, however, did not assert a cause of action under APA in his original Complaint or his First Amended Complaint. Even if the Court were to grant leave to Plaintiff at this late stage to amend his First Amended Complaint to add a claim under the APA (which Plaintiff has not

---

[7] Accordingly, the Court expresses no view as to merits of Plaintiff's claims seeking a 17-year patent term under 35 U.S.C. § 154 as it existed prior to the enactment of the GATT legislation, *see* Pl.'s Mot. at 6-27, nor Defendant's argument that the imposition of a 20-year patent term cannot be considered agency action, *see* Def.'s Mot. at 20.

requested), Defendant correctly explains in its Opposition that venue would appropriately lie in

the Eastern District of Virginia, and not in this District. *See* 35 U.S.C. § 1 ("The [PTO] shall be

deemed, for purposes of venue in civil actions, to be a resident of the district in which its

principal office is located, except where jurisdiction is otherwise provided by law."); *Boundy v.*

*United States Patent & Trademark Office*, Civ. A. No. 01-879, 2002 WL 32166534 *1-*3

(D.D.C. Oct. 2, 2002) (Kollar-Kotelly, J.) (explaining that the PTO's principal office is located in

the Eastern District of Virginia and transferring the case to that district pursuant to 28 U.S.C. §

1404(a)). Plaintiff's Reply suggests that any improper venue arguments have been waived

because Defendant did not raise them initially, but that is factually and legally incorrect.

Defendant could not have raised a venue defense to a claim that Plaintiff did not assert; such an

argument would have constituted a mere platitude. Further, courts in this district have

recognized that venue defenses may be asserted even on summary judgment if venue was not

previously at issue. *See, e.g.*, *Jones v. Prince George's County, Maryland*, Civ. A. No. 00-2902,

2004 U.S. Dist. LEXIS 7339 at *35-*38 (D.D.C. Mar. 22, 2004) (transferring case based on

venue because, following a partial resolution of the parties' summary judgment motions, "it is

now clear that this district is not a proper venue for plaintiff's remaining claims").

Finally, Plaintiff requests, in Reply, that "if the Court somehow views the improper-

venue defense as both viable and not waived, Plaintiff respectfully requests that the Court, in the

interests of justice, transfer this case to the Eastern District of Virginia under the provisions of 28

U.S.C. § 1406(a)." Pl.'s Reply at 19. The Court shall decline this request for three reasons.

First, Plaintiff has not moved to amend his First Amended Complaint, and as it is presently

composed, Plaintiff asserts no claim under the APA that would warrant transferring the case.

20

Second, Plaintiff has made no attempt to show that transfer would be appropriate under the

private and public interest considerations that underlie such transfer determinations.  *See*

*Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000).  Third, Plaintiff has made no

showing that he would suffer any prejudice by having to file his Complaint in a different district

rather than having it transferred by the Court.  Accordingly, the Court shall dismiss Plaintiff's

remaining claims for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).

### IV.  CONCLUSION

For the reasons set forth above, the Court shall grant Defendant's Motion to Dismiss

brought under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), as to Plaintiff's claims

brought under the American Inventors Protection Act, shall grant Defendant's Motion to Dismiss

brought under Federal Rule of Civil Procedure 12(b)(1) as to the remainder of Plaintiff's claims,

shall deny-without-prejudice Defendant's Motion for Summary Judgment, and shall deny-with-

prejudice-in-part Plaintiff's Motion for Summary Judgment as to Plaintiff's claims based on the

American Inventors Protection Act, and deny-without-prejudice-in-part Plaintiff's Motion for

Summary Judgment as to the remainder of Plaintiff's claims.  An appropriate Order accompanies

this Memorandum Opinion.


Date: September 2, 2008


                                                    */s/*_____
                                                    COLLEEN KOLLAR-KOTELLY
                                                    United States District Judge


21